## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DISABILITY SUPPORT ALLIANCE,
on behalf of its members; and ERIC
WONG,

                            Plaintiffs,

v.

HEARTWOOD ENTERPRISES, LLC,

                            Defendant.

Civil No. 15-cv-529 PAM/FLN

**DEFENDANT'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

---

Defendant Heartwood Enterprises, LLC ("Defendant" or "Heartwood") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## <u>INTRODUCTION</u>

The purpose of the Americans with Disabilities Act ("ADA") is to promote reasonable access to places of public accommodation for the disabled and, where reasonable, to remove architectural barriers that exist at places of public accommodation. It is not to punish small businesses that cannot feasibly remove all architectural barriers that inhibit access or to create a windfall for attorneys.

This action is one of more than 120 lawsuits filed by attorney Paul Hansmeier on behalf of Eric Wong ("Wong") and/or the Disability Support Alliance ("DSA") (collectively, "Plaintiffs") or its members. In each of these lawsuits, the allegations are substantially the same: Plaintiffs contend they attempted to visit a business, the business was inaccessible for some reason, Plaintiffs would like to return "someday" but for the

inaccessibility, the inaccessibility can be easily remedied, and therefore the ADA and Minnesota Human Rights Act ("MHRA") have been violated. But, rather than work with the businesses to improve accessibility for disabled individuals, Plaintiffs use the threat of legal action to extort settlement payments.

This case is no different. Here, although Wong has never made an appointment to see any of Heartwood's tenants (who are all "appointment only"), he alleges that he travelled to Heartwood's property, that it was inaccessible to him, and that he would like to return but for the inaccessibility. Once contacted by Plaintiffs about the alleged lack of disability access, Heartwood promptly determined that removal of the alleged architectural barriers was not readily achievable, but continued to ensure that disability access was made available, just as it always has. Yet Plaintiffs continue to pursue this litigation.

Plaintiffs' action is not only vexatious, it is without legal merit. First, Plaintiffs' action should be dismissed because they cannot demonstrate an injury in fact and therefore lack standing. Second, Heartwood is entitled to summary judgment on Plaintiffs' claims because the removal of architectural barriers is not readily achievable, and, thus, there has been no violation of the ADA or MHRA. Third, Plaintiffs' action should be dismissed because the injunctive relief they seek was always available and, thus, there has never been an ADA violation. Finally, Plaintiffs' claim for civil damages under the MHRA should be dismissed because Plaintiffs can present no evidence of a bias offense. For all of these reasons, the Court should grant summary judgment to Heartwood and dismiss Plaintiffs' Complaint in its entirety.

## STATEMENT OF UNDISPUTED FACTS

**I.    The Heartwood Office Building At 889 Grand Avenue.**

Defendant Heartwood Enterprises, LLC owns and operates an office building located at 889 Grand Avenue, St. Paul, Minnesota ("Heartwood Offices").  (Declaration of William Bluhm ("Bluhm Decl.") ¶ 3).  Defendant rents out office space to third-parties, none of which is named in this lawsuit.  (*Id.* ¶ 4)  Defendant does not provide any goods or services in the traditional sense; rather, it is a "landlord."  (*Id.*)

Heartwood Offices was built as a residence in 1910; it was converted from a house to an office building sometime before 1990, though much of the original floor plan remains.  (*Id.* ¶ 5)  Heartwood Offices is zoned B-2C—a unique zoning classification created just for Grand Avenue in an effort to preserve the street's historic charm.  *See* The City of St. Paul, *Property info and Permits by Address*, https://www.stpaulonestop.com (last visited Dec. 3, 2015).  In the 1980s, much of Grand Avenue was rezoned B2, meaning that community businesses could operate in the historic houses on the street; however, that zoning designation permitted owners to build to the edges of their lots, without regard for the character of the street.  Biloine Whiting Young & David Lanegran, *Grand Avenue: The Renaissance of an Urban Street* 139 (1996).  Following public outcry over an unsightly addition to a house near Heartwood Offices, the City enacted B-2C zoning so that "[b]usinesses could still be moved into the houses, but the houses could not be changed in any significant way on the outside."  *Id.* at 140-42.  This designation has enabled Grand Avenue to maintain its historic charm and prominence as one of the most fashionable commercial streets in St. Paul.  *See id.*; Grand

Avenue Business Association, https://www.grandave.com/about-us (last visited Nov. 16, 2015).

Heartwood Offices consists of three floors of office spaces. (Bluhm Decl. ¶ 6). There are three offices on the main level, but no bathroom facilities. (*Id.* ¶ 7) Offices 101 and 102 are rented to Dr. Mark Larkins, a neurosurgeon, who uses one space as his personal office, and the other as storage space. (*Id.*) Office 103 was previously rented by Dr. Jeffrey Raich, a mental health professional who ran his therapy business "Being" out of Office 103; it is presently occupied by Omari Brow Studio, a business that provides eyebrow waxing and shaping services by appointment only. (*Id.* ¶ 8)

The second level contains four office spaces and one full bathroom. (*Id.* ¶ 9) Office 201 is occupied by Grand Avenue Wedding Officiants; Office 202 is occupied by Dr. Benita Dieperink, a psychiatrist; Office 203 is occupied by Christopher Donahue, a mental health counselor; and Office 204 is occupied by the Law Offices of Christine Sand. (*Id.*) The second floor is accessible only by stairs. (*Id.*)

The basement level houses only one tenant space and single toilet room that does not include a sink. (*Id.* ¶ 11) The basement space was previously rented by Give Me Some Skin Spa, but has been vacant since September 2015. (*Id.*) This space is accessible only by stairs. (*Id.*)

All of the tenants of Heartwood Offices are appointment-only businesses. (*Id.* ¶ 12; Ex. A) Because all of the businesses located in the building are appointment-only, the doors to the premises are kept locked; only patrons of the businesses who have scheduled appointments are granted entry. (*Id.*) When a patron arrives at Heartwood

Offices for a previously-scheduled appointment, the individual enters the front door into a secure entry vestibule, where he or she presses a button on the intercom system to alert the business that he or she is outside. (*Id.* ¶ 13) Upon confirming that the individual at the intercom has an appointment, the business can then "buzz" the patron in through the locked interior door. (*Id.*) Individuals who do not have appointments are not allowed access. (*Id.*)

Heartwood Offices does not have any off-street parking available for patrons. (*Id.* ¶ 14) Instead, all patrons must park on the street or in a nearby public parking lot or ramp. (*Id.*)

## II. Despite Never Making An Appointment With Any Heartwood Offices Tenant, Wong Sues Heartwood.

Wong alleges that he travelled to Heartwood Offices on December 3, 2014, in order to "evaluate the services of mental health professionals who are tenants of the Heartwood Offices building for the purpose of a DSA member services initiative." (Declaration of Joseph Windler ("Windler Decl."), Ex. A ("Interrog. Answer No. __") at Interrog. Answer No. 3)[1] Wong did not travel to the Heartwood Offices to receive goods or services from any specific tenant, but rather attempted to enter Heartwood Offices in order to learn about Dr. Jeffrey Raich's therapy practice "Being." (Windler Decl. Ex. B

---

[1] The DSA's stated purpose of "protect[ing] the rights of people with disabilities and to improve their lives" is specious at best, as the DSA carries out its purpose by receiving notice of buildings that are allegedly not accessible from third-parties and then members of the DSA travel to such buildings for the sole purpose of confirming inaccessibility, sending a demand letter, and initiating a lawsuit. (Windler Decl. Ex. B at 36:10-39:13) In other words, "but for" learning from some unnamed third-party that the Heartwood Offices was allegedly inaccessible, neither Wong nor the DSA would have any interest or reason to attempt to access the Heartwood Offices.

("Wong Dep."), 59:5-60:7)[2]  But prior to this alleged visit, Wong never made an appointment with—nor even contacted—any tenant of Heartwood Offices.  (Windler Decl. Ex. A at Interrog. Answer No. 4)

Wong never contacted the tenants at Heartwood Offices before bringing this action, and except for a pre-litigation demand letter, has not contacted them since. (Windler Decl. Ex. B at 57:25-58:12; Windler Decl. Ex. A at Interrog. Answer No. 4)[3] Wong never attempted to enter Heartwood Offices; rather, he was a passenger in a car that parked outside of the Heartwood Offices.  (Windler Decl. Ex. B at 56:11-58:3; Windler Decl. Ex. A at Interrog. Answer No. 3)

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████.  (Windler Decl. Ex. B at ████████) None of the tenants of the Heartwood Offices specialize in providing mental health services to individuals with disabilities.  (Bluhm Decl. ¶ 10)

Although he had not made the appointment required to visit any of Heartwood's tenants, on December 5, 2014, Wong sent a letter to Heartwood asserting that Heartwood

---

[2] While Wong testified that he was interested in learning about two Heartwood tenants, Being and Dr. Jeffrey Raich, as "Being" is simply the name of Dr. Raich's therapy business, Wong really only was interested in visiting one tenant—Dr. Jeffrey Raich. Further, Wong could not remember if he had ever heard of Dr. Raich or "Being" prior to travelling to Heartwood Offices. (Windler Decl. Ex. B at 59:5-16)

[3] Dr. Jeffrey Raich is no longer is a tenant of the Heartwood Offices. As a result, regardless of whether Heartwood removes any architectural barrier cited by Wong, Wong cannot visit Dr. Raich at the Heartwood Offices. Without the likelihood of visiting Heartwood in the future, Wong's claim fails.

Offices was inaccessible in violation of the ADA.[4]  (Bluhm Decl. ¶ 15; Windler Decl. Ex. A at Interrog. Answer No. 4)  This letter was the first (and only) time Heartwood has ever received notice that a disabled patron desired to visit a tenant of Heartwood Offices. (Bluhm Decl. ¶¶ 16-17)  After receiving Wong's letter, Heartwood promptly began analyzing options for remedying the purported architectural barriers.  (*Id.* ¶ 18)  Without any further contact from Wong, Plaintiffs commenced this action on January 23, 2015. (*Id.* ¶ 19; Windler Decl. Ex. A at Interrog. Answer No. 4; *see* Notice of Removal, Ex. A [ECF No. 1]; Windler Decl. Ex. B at 57:25-58:12)

## III.   Because Removal Of The Architectural Barriers At Heartwood Offices Is Not Readily Achievable, Heartwood Offers An Alternate Location.

Soon after receiving Wong's letter, Heartwood contacted several contractors to provide estimates for installing a wheelchair-accessible ramp at Heartwood Offices. (Bluhm Decl. ¶ 20)  Heartwood received bids from three businesses.  (*Id.* ¶ 20 & Exs. B-D).  These bids ranged from $11,987 to $22,621, with an average estimated cost of approximately $16,000.  (Bluhm Decl. Exs. B-D)  All of these bids would require additional costs, including, but not limited to, proper footings for the proposed ramps and providing an accessible route to the ramps, and none of the bids addressed potential variances or approvals required by the City, so the true costs of adding a ramp would be much higher than the bids suggest.  (Declaration of Julee Quarve-Peterson ("JQP Decl."), ¶ 5)  Heartwood's expert, Julee Quarve-Peterson, estimated that assuming the necessary

---

[4] Since the purpose of the ADA is to limit unfair discrimination, there can be no unfair discrimination if there was no discrimination in the first place.  In allegedly being unable to gain access to Heartwood Offices, Wong was in precisely the same situation as a non-disabled person without an appointment.

approvals could be obtained, an exterior accessible route from the back of Heartwood Offices to the main entrance would cost approximately $35,000.   (*Id.* at ¶ 6)   If Heartwood attempted to install a compliant exterior accessible route from the front sidewalk to the main entrance, it would need to be at least 114 feet long to address the nearly 44-inch rise from the city sidewalk to the main entrance at the Heartwood Offices located at 889 Grand Ave.   (*Id.*)   This would require the ramp to zig-zag over the entire front yard of Heartwood Offices because there is not sufficient room in the front yard to have a "straight-on" ramp and would cost in excess of $100,000.   (*Id.* & Ex. B)

Not only are these estimates much too expensive for Heartwood—a business that has lost money in each of the last six years—but even if Heartwood constructed an accessible walkway outside the building, its tenant spaces (the goods/services) at Heartwood Offices would still be inaccessible.   (*See* JQP Decl. ¶ 7; Bluhm Decl. ¶ 21) The entry vestibule is much too small to allow wheelchair access.   (*See* JQP Decl. ¶ 7) Further, internal doorways are too narrow, there are no toilet facilities on the main level, and no elevator to access the other two levels (the second level is the only level that houses mental health professionals).   (*Id.*)   To make the entire building compliant so that Wong could access the mental health professionals[5] would require a substantial renovation of all of the interior spaces and potential addition, including adding an elevator—a project that would necessitate moving plumbing, wiring, and access points on

---

[5] Again, as Dr. Jeffrey Raich is no longer a tenant of Heartwood Offices, Wong cannot visit Dr. Raich at the Heartwood Offices in the future—regardless of the removal of any alleged architectural barriers.

each floor and would reduce leasable space.  (*Id.*)  To make the entire building accessible could cost more than \$300,000.[6]  (*Id.*)

Given the costs associated with making Heartwood Offices fully accessible, and the costs, futility, and aesthetics-altering nature of adding a ramp, Heartwood determined that removal of architectural barriers was not readily achievable.  (Bluhm Decl.  ¶ 23)  Instead, Heartwood makes an alternative location available for use by all of its tenants who may see disabled patrons; this alternative space has been available for several years.  (*Id.* ¶ 24)   The alternative location is located approximately three blocks away from Heartwood Offices at 1145 Grand Avenue.  (*Id.* ¶ 24)  It is a fully-accessible space, with designated off-street parking, an exterior accessible route, including a compliant ramp, accessible main entry, and accessible toilet facilities.  (*Id.* ¶ 24; JQP Decl. ¶ 8)  If a disabled patron calls a Heartwood Offices tenant to make an appointment, the tenant advises the patron regarding the accessible location.[7]  (Bluhm Decl. ¶ 24)  This was true even before Wong attempted to visit Heartwood Offices.   (*Id.*)   In addition, a sign outside of Heartwood Offices informs patrons that disabled access is available at 1145 Grand Avenue.  (*Id.*)

---

[6] These estimates do not include operational costs, which would also be prohibitively high.  If Heartwood Offices embarked on such radical renovations, it would likely have to close for an extended period of time, meaning it would lose substantial rental revenue and its tenants would likely lose significant business and/or would incur costs to relocate.  (Bluhm Decl.  ¶ 28)

[7] To date, no patron has ever requested disabled access.  (Bluhm Decl. ¶ 25)

## ARGUMENT

### I.    Summary Judgment Standard.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is only genuine if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Therefore, the nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).  Summary judgment is "an integral part of the Federal Rules as a whole, which are 'designed to secure the just, speedy and inexpensive determination of every action.'"  *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp.*, 477 U.S. 317 at 327).

### II.    The ADA.

The ADA was enacted in 1990 to address discrimination against persons with disabilities in a number of areas, including in places of public accommodation.  *See* 42 U.S.C. §§ 12101(a)(3), 12182(a); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-

75 (2001) (discussing the history and purpose of the ADA). While Congress aspired to remedy discrimination against disabled individuals through the ADA, it also recognized that its mandates may be difficult, if not outright impossible, for existing businesses to implement. Thus, for purposes of the statute, "discrimination" includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable;" or, if removal is not readily achievable, "failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv)-(v).

"The term 'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The ADA includes a number of individualized factors to consider in determining whether a specific accommodation is "readily achievable" for a given business, including:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Colorado Cross Disability v. Hermanson Family L.P. I*, 264 F.3d 999, 1002 (10th Cir. 2001) (citing 42 U.S.C. § 12181(9)(A)-(D)). Therefore, in order to demonstrate a

violation of the ADA, a plaintiff must show that architectural barriers exist, and that their removal (or an alternative), after considering all of the relevant factors, is readily achievable for the defendant business.  *Id.*  The mere existence of an architectural barrier does not automatically constitute a violation of the ADA.  As will be discussed below, there was not a violation of the ADA in this case.

## III.    The Action Should Be Dismissed Because Plaintiffs Lack Standing.

The Court need not even address the merits of Plaintiffs' ADA claims because Plaintiffs lack standing to bring this action.  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Plaintiffs bear the burden of establishing standing to litigate their claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "At the summary judgment stage," a plaintiff must make "a factual showing of perceptible harm."  *Id.* at 567.  A plaintiff's "standing is determined as of the date suit is filed." *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000) (citing *Lujan*, 504 U.S. at 569 n.4).  Because "the 'requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness),'" subsequent attempts "to bolster standing are futile" and summary judgment is appropriate.  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)).

Standing requires a demonstration of three elements: (1) an "injury in fact" that is "concrete and particularized," not "conjectural" or "hypothetical"; (2) the injury must have been caused by the defendant's action; and (3) the injury must be capable of being

redressed. *Lujan*, 504 U.S. at 560 (citations omitted). When a plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Here, Plaintiffs' claims fail because Wong cannot show any injury in fact.[8]

To demonstrate an injury in fact for the purposes of both his ADA and MHRA claims, Wong must show that he attempted to access Heartwood Offices or, if such an attempt would be "futile" due to "known barriers that the owner has no intention of remedying," then he "must ***at least*** prove knowledge of the barriers ***and*** that [he] would visit the building in the imminent future but for those barriers." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (emphasis added); *and see Somers v. City of Minneapolis*, 245 F.3d 782, 788 (8th Cir. 2001) ("Claims under the MHRA are analyzed the same as claims under the ADA." (citing *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 574 (8th Cir. 2000))). A non-specific allegation of future intentions to return is not

---

[8] DSA's alleged standing is wholly dependent upon its members' standing. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ("[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.") Here, no members of the DSA have standing to maintain this suit. Of its members, only Wong asserts a desire to visit the Heartwood Offices, so only Wong could potentially have standing. (Windler Decl. <u>Ex. A</u> at Interrog. Answer No. 3) However, as discussed herein, Wong does not have standing. Further, because "any finding of an ADA violation requires proof as to each individual claimant." DSA does not have standing to pursue a cause of action against Heartwood. *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F.Supp.2d 1353, 1364 (S.D. Fla. 2001) (internal quotation omitted) (holding that plaintiff, a nonprofit corporation, the mission of which was to "combat discrimination" and which had instituted over 200 Title III lawsuits, did not have standing to pursue claims on its behalf, even if its president had standing to pursue claims in his individual capacity).

sufficient to establish injury in fact.  *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the someday will be—do not support a finding of the 'actual or imminent' injury that our cases require.")

Here, Wong cannot demonstrate either (1) that he visited the Defendant's building and was unable to access it ***because of*** known architectural barriers that Defendant had no intention of remedying, or (2) that he intends to return to Heartwood Offices in the future.  Wong asserts only that on a single occasion, an individual drove him to Heartwood Offices and that he did not see an accessible entrance.  (Compl. ¶¶ 12-14; Windler Decl. Ex. A at Interrog. Answer No. 3; Windler Decl. Ex. B at 57:17-21).  He does not contend that he attempted to gain entry by making an appointment with one of the tenants of Heartwood Offices, let alone actually getting out of the car during the one time he travelled to Heartwood Offices, and indeed, he did not.  By his own admission, Wong's ***only*** contact with Defendant or any of its tenants was a letter sent to Defendant on December 5, 2014—two days after Wong allegedly visited Heartwood Offices. (Windler Decl. Ex. A at Interrog. Answer No. 4)

Further, Wong cannot prove that he was denied access ***because of*** any architectural barrier, because all of the tenants in Heartwood Offices are appointment-only, and in fact, no individual who appeared at Heartwood Offices unannounced would have been able to gain entry.  (Bluhm Decl. ¶¶ 12-13)  Because all of the businesses located in the building are appointment-only businesses, the doors to the premises are kept locked and only patrons of the businesses who have scheduled appointments are

14

granted entry. (*Id.*) Wong has never made, nor has he ever attempted to make, an appointment at any one of the businesses in Defendant's building. (*See* Windler Decl. Ex. A at Interrog. Answer No. 4; Windler Decl. Ex. B at 57:25-58:12) Wong contends that he wanted to "evaluate the services of mental health professionals who are tenants of the Heartwood Offices building for the purpose of a Disability Support Alliance member services initiative." (Windler Decl. Ex. A at Interrog. Answer No. 3) But he never contacted any tenant of Heartwood Offices prior to bringing this action (nor has he contacted them since). (Windler Decl. Ex. A at Interrog. Answer No. 4; Windler Decl. Ex. B at 57:25-58:12)

Moreover, because Wong never contacted Defendant or any of its tenants, he cannot show that Defendant had no intention of remedying any alleged barriers. Had Wong bothered to contact any of Defendant's tenants or Defendant before attempting to visit, Defendant and/or the tenant would have worked to ensure that Wong could gain access to the tenant he wanted to see. (Bluhm Decl. ¶ 26) Before this lawsuit, no disabled patron had ever notified Defendant or any of its tenants that he or she would like to make an appointment with a tenant of Heartwood Offices. (Bluhm Decl. ¶ 25) After Wong notified Defendant that he desired to access the building, Defendant promptly pursued options for removing the purported barriers. (Bluhm Decl. ¶ 20) In any event, Heartwood Offices has always provided an alternate, fully-accessible location three blocks from Heartwood Offices and, thus, was never in violation of the ADA. *See* 42 U.S.C. § 12182(b)(2)(A)(v). Wong therefore cannot demonstrate that he visited the Heartwood Offices and was prevented from accessing businesses within the building due

to architectural barriers that Defendant had no intention of remedying. Rather, he was treated the same as every other non-disabled patron: without an appointment, he could not enter the building. Because Wong's access was not denied as a result of his disability, he did not suffer an injury in fact. *See Rickmyer v. Jungers*, Civil No. 14-CV-614 (SRN/SER), 2015 WL 412859, *5 (D. Minn. Jan. 30, 2015) (holding that plaintiff failed to plead actionable violations of the ADA or MHRA where access was denied for reasons other than disabled status); *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1366 (S.D. Fla. 2001) (noting that the ADA does not require that disabled guests have greater access than non-disabled guests). As a result, he lacks standing to pursue his complaint.

Nor can Wong demonstrate that he intends to return to Heartwood Offices in the near future. Like the *Lujan* plaintiffs, Wong's lack of concrete plans is fatal to his standing here. As previously stated, in order to prevail on his claims, Wong must prove that he would visit Heartwood Offices in the imminent future if the architectural barriers were removed. *Steger*, 228 F.3d at 892. Wong cannot show that he has any definite plans to return to Heartwood Offices, and his non-specific allegation that he would like to return at some point is legally insufficient to defeat summary judgment. *See Lujan*, 504 U.S. at 564. Wong has never attempted to patronize any of the businesses in Heartwood Offices and has no plans to do so in the future, as evidenced by the fact that he has never made or attempted to make an appointment with any of the businesses. (Windler Decl. Ex. A at Interrog. Answer Nos. 3-4). Visiting any of the businesses in Heartwood Offices requires that Wong schedule an appointment. (Bluhm Decl. ¶¶ 12-13) He may

not show up spontaneously and access the services of any of the businesses in Defendant's building. He must have advance and concrete plans. Wong has admitted that since his initial visit, he never again attempted to visit Heartwood Offices and has **never** made an appointment to visit **any** of Defendant's tenants. (Windler Decl. Ex. A at Interrog. Answer Nos. 3-4; Windler Decl. Ex. B at 57:25-58:12) Indeed, if Wong had attempted to make an appointment to visit Heartwood Offices, he would have received the access he allegedly desires at the alternative location. Further, as Dr. Raich is no longer a tenant of Heartwood Offices, Wong cannot access his services at Heartwood Offices. As a result, Wong's claim is moot

In addition, "[c]ourts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return." *Steelman v. Rib Crib No. 18*, No. 11-3433-CV-S-RED, 2012 WL 4026686, at *4 (W.D. Mo. Sept. 12, 2012) (quoting *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005)); *see also Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (strongly criticizing the serial litigation strategy employed by the plaintiff and his counsel and noting that the plaintiff had filed 54 separate lawsuits and that it was "implausible" he would return to all of the business he sued). Wong or other members of the DSA, represented by attorney Paul Hansmeier in each action, have sued approximately 120 small businesses for purported ADA violations.[9] *Minneapolis Lawyer Facing Ethics Complaint Over Porn Suits*, Minneapolis Star-Tribune, November 17, 2015, available at:

---

[9] Indeed, Wong cannot even remember how many lawsuits he has initiated. (Windler Decl. Ex. B at 8:16-20; 16:3-9)

http://www.startribune.com/trustee-says-minneapolis-lawyer-s-bankruptcy-filed-in-bad-faith/350624281/.  This number is likely smaller than the actual number of lawsuits they have commenced or threatened; a favorite tactic is to serve a settlement demand along with a complaint, so that some lawsuits are never filed and therefore are not recorded. (Windler Decl. Ex. B at 36:10-39:13 9:15-10:16)  This abusive serial litigation strongly cuts against a finding that Wong intends to return to Heartwood Offices.  Because Wong does not have any plans to return, there is no threat of imminent future harm, and he therefore does not have standing.  Consequently, Plaintiffs' action should be dismissed.

## IV.    Plaintiffs' ADA And MHRA Claims Fail Because Removal Of Architectural Barriers Is Not Readily Achievable.

As Heartwood Offices was built decades prior to the enactment of the ADA, it is an "existing facility" for ADA purposes.  42 U.S.C. § 12182(b)(2)(A)(iv).  "A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense."  28 C.F.R. § 36.304(a); 42 U.S.C. § 12181(9).  To determine whether removal is readily achievable, factors to consider include:

(A) the nature and cost of the action needed under this chapter;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9). "Similarly, the MHRA looks at the cost, nature of needed alteration, available resources, and other analogous factors to determine whether a place of public accommodation can readily make 'reasonable accommodation' for disabled persons." *Wong v. Muddy Pig, Inc.*, No. 14-3334 (RHK/TNL), 2015 WL 225231 (D. Minn. Jan. 16, 2015) (citing Minn. Stat. § 363A.11, subd. 1(2)). Plaintiffs' claims under the ADA and MHRA are subject to a similar analysis. *See id.*

"Plaintiff must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable." *Colorado Cross Disability*, 264 F.3d at 1002-03; *see also Speciner v. Nationsbank, N.A.*, 215 F. Supp. 2d 622, 632 (D. Md. 2002) (following *Colorado Cross Disability*). Plaintiffs "must make a sufficient showing that barrier removal is readily achievable to avoid summary judgment and meet their burden of production." *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1226 (N. D. Ga. 2005), *affirmed* 452 F.3d 1269 (11th Cir. 2006); *Moore v. Robinson Oil Corp.*, 588 Fed. Appx. 528, 530 (9th Cir. 2014) (holding that plaintiff's expert's conclusory testimony, without necessary detail, did not meet plaintiff's burden of production that proposed removal of architectural barrier was readily achievable).

Whether a modification is readily achievable must be determined on a case-by-case basis. *Id.* A requested modification that is "unreasonably expensive and aesthetically destructive" is not readily achievable. *Speciner*, 215 F. Supp. 2d at 631. Similarly, "[b]arrier removal is not 'readily achievable' if it would threaten or destroy the historic significance of the Building." *Id.* at 630 (*quoting* ADA Title III DOJ Technical Assistance Manual § III-4.4200). "Cost and economic and operational impact are driving criteria in determining if removal [of an architectural barrier] can be readily achieved." *Gathright-Dietrich*, 435 F. Supp. 2d at 1227. Thus, in order to carry their burden, Plaintiffs "must present evidence of: (1) a specific design to remove the barriers alleged; (2) the cost of removal or the proposed remedy; and (3) the effect on the finances and operation of the facility." *Id.*

In *Gathright-Dietrich*, a group of disabled persons brought suit against an historic theater alleging a number of architectural barriers in violation of the ADA. 452 F.3d at 1272. In affirming the district court's conclusion that the plaintiffs had failed to meet their burden of proof in demonstrating that removal of the architectural barriers was readily achievable, the Eleventh Circuit noted that although the plaintiffs had submitted three proposals, such proposals were not sufficient because they "were non-specific, conceptual proposals that did not provide any detailed cost analysis." *Id.* at 1274. The Court pointed out that the plaintiffs did not provide evidence on the effects that their proposals may have on the theater, economically or operationally, nor did they provide expert testimony to address engineering or structural concerns. *Id.* at 1274-75. Further, the plaintiffs did not show that their proposals were inexpensive, "fail[ing] to produce a

financial expert to link the estimated costs of their proposals with [the theater's] ability to pay for them, [and] fail[ing] to take even the rudimentary steps of formulating what those estimated costs might be or providing any evidence of [the theater's] financial position and ability to pay those costs." *Id.* at 1275.

Similarly, in *Colorado Cross Disability*, the plaintiff failed to show that a requested accommodation was readily achievable where Plaintiff presented only speculative conceptual designs, rather than a specific readily-achievable design that considered evidence of the likelihood of city approval for modification of a historical building or precise costs estimates. *Colorado Cross Disability*, 264 F.3d at 1009. Because the "Plaintiff failed to present sufficient evidence that removal of the architectural barrier is readily achievable," the Court of Appeals affirmed the District Court's grant of judgment on the pleadings to the defendant. *Id*.

Plaintiffs in the instant case likewise fail to present evidence that their proposed barrier removal—*i.e*, construction of a generic ramp—is readily achievable. Plaintiffs present no specific plans, no specific costs estimates, no evidence regarding the probability of city approval, no evidence to address engineering or structural concerns, and no evidence regarding Defendant's financial position or the potential effects on Defendant's and its tenants' operations. Plaintiffs therefore fail to carry their burden of production and fail to show that removal of the architectural barriers is readily achievable.

Even if Plaintiffs had presented sufficient evidence to transfer the burden of persuasion to Defendant, Defendant has presented an abundance of evidence

demonstrating that removal of the architectural barriers is <u>not</u> readily achievable.  Unlike Plaintiffs, Defendant engaged several contractors to provide detailed cost estimates and enlisted an expert to opine on whether the proposed changes were readily achievable.  As the evidence undisputedly shows, Plaintiffs' requested modifications are not readily achievable.    In fact, to install an acceptable ramp would cost approximately $35,000 from the rear of Heartwood Offices and over $100,000 to install a compliant ramp from the front sidewalk, and would still not make Heartwood Offices accessible to Wong due to the internal structure of the building.  (JQP Decl. ¶¶ 6-7)  Making the entire building accessible could cost more than $300,000, not including the operational costs related to lost rental revenue and lost business.  (*Id.*)  These costs are not feasible for a small business like Heartwood, that has not even made a profit in the last six years.  (Bluhm Decl.   ¶ 21).  Because it is beyond dispute that removal of architectural barriers at Heartwood Offices is not readily achievable, Heartwood is entitled to summary judgment on Plaintiffs' claims. *See Moore*, 588 Fed. Appx. At 529-30 (holding that where defendant provided evidence that removal of an architectural barrier "was a significant, costly endeavor," such removal was not readily achievable); *Concorde Gaming Corp.*, 158 F. Supp. 2d at 1365 (holding that an installation of a $200,000 elevator in a cruise ship, which would require the ship to be dry-docked during installation, was "extremely difficult and expensive" and, therefore, "not readily achievable").

**V.**    **Plaintiffs' ADA And MHRA Claims Are Moot Because Defendant Voluntarily Provided A Reasonable Accommodation.**

"A plaintiff must have standing throughout the life of a case, not just at the beginning. . . . [o]therwise, the case becomes moot." *Sawczyn*, 8 F. Supp. 3d at 1113.  To establish that an ADA claim has become moot, a defendant must show that it voluntarily fixed the non-compliance and that it will remain compliant.  *Id*. at 1113-14.  Defendant's uncontradicted evidence shows that it is compliant and will remain so.

Where "barrier removal is not readily achievable, the public accommodation shall not fail to make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods," which can include "(3) Relocating activities to accessible locations."  28 C.F.R. § 36.305(a), (b)(3).  There is no dispute that to the extent installing an entrance ramp is not readily achievable, "making services available at an alternative accessible location with corresponding signage to notify potential patrons of an available alternative location" renders a defendant compliant with the ADA.  (Windler Decl. Ex. A at Interrog. Answer Nos. 2-3)

As discussed immediately above, barrier removal at Heartwood Offices is not readily achievable.  However, the tenants in Heartwood Offices are making, and always have made, their services available at an alternate, accessible location.  Defendant owns a second building, less than one-half mile from Heartwood Offices, that has a fully-accessible office space that is furnished and ready for use by any of it tenants.  (Bluhm Decl. ¶ 24)  Should any disabled person make an appointment with a tenant of Heartwood Offices, that tenant will meet with the disabled person in the accessible space.  (Bluhm

23

Decl. ¶ 26)  In addition, Heartwood Offices bears ADA-compliant signage indicating the location of the alternate accessible space.  (Bluhm Decl. ¶ 24)  Heartwood Offices has made, and will continue to make, this space available for its tenants into the foreseeable future. (Bluhm Decl. ¶ 24.  Because Wong has achieved the injunctive relief he sought, his claim is now moot.  *See Moore*, 588 Fed. Appx. at 530-31 (stating that "[a] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim" and holding that the defendant's removal of architectural barriers after commencement of the action mooted plaintiff's ADA claims (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011));  *Rickmyer v. Jungers*, Civil No. 14-CV-614 (SRN/SER), 2015 WL 412859, *7 (D. Minn. Jan. 30, 2015) (plaintiff's request for injunctive relief under ADA was moot where alleged plaintiff was able to access property in question during pendency of lawsuit and plaintiff gained the access he requested).

Lastly, the one tenant that Wong was interested in accessing, Dr. Raich, is no longer a tenant of the Heartwood Offices.  As a result, Wong is not being denied access to Dr. Raich as a result of any architectural barrier that exists at Heartwood Offices. Further, there is not a risk of Wong visiting Dr. Raich at Heartwood Offices in the future. As a result, Plaintiffs' claims are moot.

## VI.    Plaintiffs' Bias Offense Claim Fails Because There Is No Evidence That Defendant Committed A Crime Or Intended To Discriminate Against Plaintiffs.

Plaintiffs' claim for civil damages under Minn. Stat. § 611A.79 cannot survive summary judgment because Plaintiffs fail to present any evidence that Defendant's

alleged actions were motivated by bias against disabled persons. Minnesota Statute § 611A.79 provides that "[a] person who is damaged by a bias offense has a civil cause of action against the person who committed the offense." Minn. Stat. § 611A.79, subd. 2. A "bias offense" is defined as "conduct that would constitute a crime and was committed ***because of*** the victim's or another's actual or perceived . . . disability as defined in section 363A.03 . . . ." Minn. Stat. § 611A.79, subd. 1 (emphasis added). The burden of proof on a claim for damages under this statute is the preponderance of the evidence. Minn. Stat. § 611A.79, subd. 3.

To prevail on their claim for damages, Plaintiffs therefore must demonstrate two elements by a preponderance of the evidence: (1) that the Defendant committed a crime; and (2) that the alleged crime was committed ***because of*** Plaintiffs' disability. Plaintiffs' claim fails because they cannot demonstrate either element.

First, Defendant did not a commit any crime. Plaintiffs contend that Defendant committed an unfair discriminatory act, which is a misdemeanor. (Compl. ¶¶ 51, 53 (citing Minn. Stat. §§ 363A.11, .30)) The MHRA provides:

> It is an unfair discriminatory practice:
>
> (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . disability . . . ; or
>
> (2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person. . . .

Minn. Stat. § 363A.11, subd. 1(a).  As discussed above, Plaintiff Wong was never denied access to Heartwood Offices or the services of its tenants ***because of*** his disability.  ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

(Windler Decl. <u>Ex. A</u> at Interrog. Answer Nos. 3-4; Windler Decl. <u>Ex. B</u> at ██████; 57:25-58:12)    Further, Heartwood Offices did not fail to make a reasonable accommodation—Wong never requested any accommodation prior to having his attorney send a demand letter.    In short, Wong has presented no evidence demonstrating that Defendant committed an unfair discriminatory act.

Second, Defendant did not intend to discriminate against disabled persons. (Bluhm Decl. ¶ 27)    Plaintiffs have presented zero evidence demonstrating that Defendant intended to discriminate against Wong because he is disabled, and indeed, there is none.  Because Plaintiffs cannot show that Defendant acted out of animus toward Wong because of his disability, they cannot show that Defendant committed a bias offense and their claims for civil damages must be dismissed.  *See Seivers v. City of Minneapolis*, Civ. No. 09-816 (DSD/SER), 2011 WL 284486, at *5 (D. Minn. Jan. 25, 2011) (dismissing plaintiff's claim under Minn. Stat. § 611A.79 on summary judgment because plaintiff presented no evidence that defendants acted because of plaintiff's race).

## <u>CONCLUSION</u>

Plaintiffs' action is nothing more than a thinly-veiled attempt to extort a pay-out from Defendant.  Plaintiffs suffered no injury in fact, and therefore lack standing to bring their claims.  There has been no violation of the ADA or MHRA because removal of

26

architectural barriers is not readily achievable, and, in any event, an alternative accommodation is available.  Plaintiffs' action is moot because they received the injunctive relief they sought.  And finally, Plaintiffs' claim for civil damages under the MHRA fails because there is no evidence of a bias offense.   For any one of these reasons, Defendant respectfully requests that this Court grant Defendant's Motion for Summary Judgment.

Dated:  December 8, 2015

WINTHROP & WEINSTINE, P.A.


By: s/ Joseph M. Windler
       Joseph M. Windler, #387758

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
Telephone: (612) 604-6400
Email: jwindler@winthrop.com

*Attorneys for Heartwood Enterprises, LLC*

10598184v8