## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DISABILITY SUPPORT
ALLIANCE, on behalf of its members; and
ERIC WONG,

     *Plaintiffs*,

v.

HEARTWOOD ENTERPRISES, LLC,

     *Defendant*.

Case No. 0:15-cv-0529-PAM-FLN

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Paul R. Hansmeier (Minn. Bar 387795)
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801
*Counsel for Plaintiffs*

December 29, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 4

    I.    Plaintiff Eric Wong ................................................................................ 4

    II.   Plaintiff Disability Support Alliance. .................................................. 6

    III.  Defendant Heartwood Enterprises, LLC. ........................................... 6

ARGUMENT .................................................................................................... 7

    I.    Legal Standards. ................................................................................... 8

        A.   Standard Of Review. ..................................................................... 8

        B.   Title III of the Americans With Disabilities Act. ......................... 9

        C.   Minnesota Human Rights Act. ................................................... 11

        D.   Minnesota Statute 611A.79. ....................................................... 12

    II.   Plaintiffs Have Standing To Assert Their Claims In This Case, Including Standing To Seek Injunctive Relief. ................................... 12

        A.   Plaintiffs Have Suffered An Injury In Fact. ............................... 13

        B.   Plaintiffs' Injury Is Fairly Traceable To Heartwood's Challenged Action. ....................................................................................... 19

        C.   A Favorable Judicial Decision Will Prevent Or Redress Plaintiffs' Injury. ....................................................................................... 19

        D.   Plaintiffs Have Standing To Seek Injunctive Relief. .................. 19

        E.   Plaintiffs' Claims Are Not Moot. ............................................... 24

           1.  Alternate Location. .............................................................. 24

           2.  Heartwood's Termination Of Dr. Raich's Lease. ................. 25

    III.  Heartwood Is Liable For Violations Of The ADA and MHRA .......... 25

A.   Plaintiffs Are Persons With Disabilities. .................................................... 25

B.   Heartwood Is A Public Accommodation. .................................................. 26

C.   Heartwood Has Failed To Remove Architectural Barriers Affecting Wong's Disability Even Though Removal Is Readily Achievable. ........... 27

   1.   Inaccessible Entrance. ............................................................ 29

   2.   Inaccessible Door Hardware. .................................................. 33

   3.   Doorway Threshold. .............................................................. 33

   4.   Step At The Public Sidewalk. ................................................. 34

   5.   Excessive Sidewalk Cross-Slope. .......................................... 35

   6.   Alternate Measures. .............................................................. 35

   7.   Heartwood's "All or Nothing" Defense Is Unavailing. ......................... 37

IV.   There Is No Genuine Issue Of Material Fact Regarding Plaintiffs' Claim Under Minnesota Statutes 611A.79 .................................................................... 38

A.   Heartwood Committed A Crime. .............................................................. 38

B.   Heartwood's Crime Was Committed "Because Of" Plaintiffs' Disability. ................................................................................................ 39

V.   The Court Is Within Its Discretion To Enter Judgment In Plaintiffs' Favor ....... 42

CONCLUSION ........................................................................................... 43

## MEMORANDUM

Defendant Heartwood Enterprises, LLC ("Heartwood"), has filed a motion for summary judgment with respect to each of the claims in Plaintiffs' complaint. Heartwood's motion should be denied in its entirety. Further, the Court is within its discretion to enter judgment in Plaintiffs' favor.

## PRELIMINARY STATEMENT

Heartwood owns four commercial office buildings on Grand Avenue in Saint Paul, Minnesota, and one multi-unit residential building, all of which were purchased in the past seven years for an aggregate amount of 2.22 million dollars. This case concerns Heartwood's office building located at 889 Grand Avenue (the "889 Grand Building"). Heartwood purchased the 889 Grand Building in 2008 for $685,000. Since that time, Heartwood has performed an estimated $40,955 of work on the property. Yet, to the present day, the only way for the public to access the 889 Grand Building is via paths of travel that are totally and completely inaccessible to people who use wheelchairs for mobility.

The law is clear: Heartwood has an affirmative obligation to remove architectural barriers at the building to the extent that doing so is readily achievable. But, as is described herein, Heartwood has apparently failed to engage in *any* barrier removal at the 889 Grand Building—even barrier removal that is easy and simple to perform and is beyond any reasonable dispute. Thus, this is not a case where Heartwood has made a good faith effort to remove barriers at the 889 Grand Building, but perhaps overlooked

one or two elements during that effort; this is a case where Heartwood has failed to take a single step towards complying with state and federal access laws.

Heartwood's primary excuse for failing to engage in barrier removal is that there is an alternative "accessible" building located approximately one-half mile away from the 889 Grand Avenue Building. Yet, the availability of an alternative location does not excuse Heartwood from its affirmative obligation to perform readily achievable barrier removal at the 889 Grand Avenue Building. Further, Heartwood's alternative proposed location has its own ADA-compliance issues.

As a result of Heartwood's discrimination, Wong is unable to access the services provided by the tenants of the 889 Grand Building. He is also isolated from others who visit the 889 Grand Building. In hearings preceding the ADA's passage, the National Council on Disability cited this harm:

> The survey results dealing with social life and leisure experiences paint a sobering picture of an isolated and secluded population of individuals with disabilities. The large majority of people with disabilities do not go to movies, do not go to the theater, do not go to see musical performances, and do not go to sports events. A substantial minority of persons with disabilities never go to a restaurant, never go to a grocery store, and never go to a church or synagogue * * * The extent of non-participation of individuals with disabilities in social and recreational activities is alarming.

S. Rep. No. 116, 101st Cong., 1st Sess. 10-11 (1989).

Compliance with the Americans With Disabilities Act is straightforward. The Attorney General has promulgated accessibility guidelines that "are as precise as they are thorough." *Chapman v. Pier 1 Imports (US) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

Businesses that operate within these guidelines are immune from suit; businesses that violate these guidelines have literally no defense on the merits.

Naturally, Heartwood tries to paint a very different picture of this litigation, demeaning it as "vexatious" and "abusive," and insinuating that Plaintiffs' sole motivation for bringing this suit was to "create a windfall" for their attorney.[1] These deflections omit a critical fact: prior to bringing this suit, Plaintiffs provided Heartwood with an opportunity to voluntarily bring itself into compliance with accessibility laws without paying Plaintiffs a single penny. Had Heartwood voluntarily addressed its accessibility violations—as several other businesses have done in response to similar requests—this lawsuit would never have been filed.

Heartwood's deflections are not a basis for summary judgment. Nor are the arguments presented in Heartwood's memorandum of law. Heartwood's arguments are

---

[1] Heartwood's *ad hominem* attacks are typical defense tactics. *See, e.g.*, *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 958–59 (C.D. Ca. 2009) ("These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA . . . . Inasmuch as defendant seems to suggest that plaintiff's meritorious claim is annoying, difficult for business, or otherwise objectionable, that is an argument for the legislature, not the courts . . . . The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law. As the Ninth Circuit has noted in the context of ADA litigation, 'for the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.'") (internal citations omitted).

- 3 -

inconsistent with the plain language of the Americans With Disabilities Act ("ADA") and the substantial body of case law that has interpreted the ADA since its enactment.

Instead of obeying its obligations under state and federal laws, Heartwood has invested in a motion for summary judgment that does not withstand superficial scrutiny. Heartwood would be much better served by engaging with Plaintiffs to achieve a constructive resolution. Indeed, for what it presumably cost Heartwood to pay its attorney to prepare its lengthy summary judgment motion, Heartwood could very well have remediated the architectural barriers giving rise to this lawsuit.

Heartwood's motion for summary judgment should be denied in its entirety.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.  **Plaintiff Eric Wong.**

Plaintiff Eric Wong is, and at all times relevant hereto has been, a resident of the city of Minneapolis, in the State of Minnesota, and has lived approximately 9.0 miles away from 889 Grand Building. Wong Declaration, ¶ 2. Wong is, and all times relevant hereto has been, legally disabled. Wong Declaration, ¶ 3. Wong suffers from Ehlers-Danlos syndrome, a rare and disabling genetic condition typified by joint instability and chronic musculoskeletal pain. Wong Declaration, ¶ 4-5. He suffers frequent subluxations (partial dislocations) of his shoulders, elbows, hips, and knees. Wong Declaration, ¶ 4-5. He is substantially limited in performing several major life activities, including but not limited to walking, standing and gripping. Wong Declaration, ¶ 5.

Postural orthostatic hypertension, a condition related to Ehlers-Danlos syndrome, can cause Wong to lose consciousness while performing tasks that require him to be

upright. Wong Declaration, ¶ 6. Wong has been declared legally disabled by an administrative law judge of the United States Social Security Administration. Wong Declaration, ¶ 7. Wong's medical condition requires him to use a wheelchair for mobility when traveling outside his home. Wong Declaration, ¶ 7.

Wong visited the 889 Grand Building on December 3, 2014. Wong Declaration, ¶ 8. When he visited he encountered a building with an approximately seven-inch step separating the public sidewalk from the private sidewalk leading to the main entrance. Wong Declaration, ¶ 8. He further encountered a main entrance with four steps of approximately seven inches per step. Wong Declaration, ¶ 8. Wong is unable to traverse steps in his wheelchair. Wong Declaration, ¶ 8. 889 Grand Building does not have any accessible entrances. Wong Declaration, ¶ 9. Nor was there any signage indicating the availability of an accessible entrance or an alternate accessible location. Wong Declaration, ¶ 9. Accordingly, Wong was unable to navigate to the main entrance of the 889 Grand Building. Wong Declaration, ¶ 9.

Since the date of his original visit, Wong has returned to the 889 Grand Building to attempt to access its accommodations. Wong Declaration, ¶ 10. Wong plans to return to the 889 Grand Building when he learns that it has made improvements by way of removing discriminatory barriers. Wong Declaration, ¶ 11. Wong originally visited the 889 Grand Building to visit Dr. Raich. Wong Declaration, ¶ 12. He has since revisited the Grand Avenue area on multiple occasions. Wong Declaration, ¶ 12. Wong has an extremely strong interest in revisiting the 889 Grand Building once it attempts to bring itself into compliance with the law. Wong Declaration, ¶ 13. Wong is deterred from

visiting the 889 Grand Building until it does, as Wong has no interest in voluntarily

subjecting himself to discrimination any further until Heartwood brings the 889 Grand

Building into conformity with the law. Wong Declaration, ¶ 14-15.

## II.    **Plaintiff Disability Support Alliance.**

Plaintiff Disability Support Alliance is a Minnesota nonprofit corporation. Wong

Declaration, ¶ 16. Its members are people with disabilities. Wong Declaration, ¶ 16. Its

mission is to eliminate discrimination on the basis of disability. Wong Declaration, ¶ 16.

Wong is a member of the Disability Support Alliance. Wong Declaration, ¶ 16.

## III.    **Defendant Heartwood Enterprises, LLC.**

Defendant Heartwood Enterprises, LLC owns five buildings on Grand Avenue in

Saint Paul, Minnesota. Four of these buildings are commercial office buildings. One of

these buildings is a multi-unit residential building. These buildings were purchased

between 2008 and 2012 for an aggregate purchase price of $2,224,150.00. Declaration of

Paul Hansmeier, Exhibit A.

Heartwood purchased the 889 Grand Building in 2008 for $685,000.  Declaration

of Paul Hansmeier, Exhibit A. Since that time, Heartwood has performed an estimated

$40,955 of work on the property, none of which relates to ADA compliance. Declaration

of Paul Hansmeier, Exhibit B. The tenants of the 889 Grand Building include a

psychiatrist, a neurosurgeon and a mental health counselor. Declaration of William

Bluhm.

The 889 Grand Building is associated the following architectural features: a seven-

inch step on the path of travel from the public sidewalk to the private sidewalk at the

Heartwood premises; a sidewalk connecting the front of the building with the back of the building with cross-slopes exceeding 1:48; an entrance with four steps of seven inches each that are not ramped; a doorway with a threshold of 1.5 inches; and the main entrance door handle is a circular "twist" handle. Declaration of Peter Hansmeier, Exhibit A.

The sign that Heartwood installed after the initiation of this ligation is not reasonably visible from the sidewalk. Declaration of Peter Hansmeier, Exhibit B. The costs of remedying the barriers described in the foregoing paragraph are set forth in Exhibit C to the Declaration of Peter Hansmeier.

On June 12, 2014, Heartwood received a building permit for the 889 Grand Building for exterior work valued by the state at $10,000. Declaration of Paul Hansmeier, Exhibit B. On June 3, 2014, Heartwood received a building permit to perform remodeling work at its multi-unit residential property located at 715 Grand Avenue; the value of this work was $9,660.00. Declaration of Paul Hansmeier, Exhibit C. More recently, on July 27, 2015, Heartwood received approval to conduct remodeling work on its property located at 1123 Grand Avenue in an amount valued at $13,000. Declaration of Paul Hansmeier, Exhibit D.

## ARGUMENT

Plaintiffs must ultimately carry their burden of proof on four points: (1) Plaintiffs have standing to bring this action, including standing to seek injunctive relief; (2) Wong has a disability within the meaning of the ADA; (3) Heartwood owns, leases, or operates a place of public accommodation; and (4) Heartwood discriminated against Wong within the meaning of the ADA. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 446, 447 (8th

Cir. 2013); *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008); *Molski v. MJ Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Only two of these points are at issue in this case. Heartwood challenges Plaintiffs' standing, including their standing to seek injunctive relief, and challenges whether it discriminated against Plaintiffs.

## I.  **Legal Standards.**

### A.  **Standard Of Review.**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact that the movant is entitled to judgment as a matter of law." *See Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). After adequate time for discovery, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Federal Rule of Civil Procedure 56(f) provides that a court may, after giving notice and a reasonable time to respond, grant summary judgment for a nonmovant.

**B.**    **Title III of the Americans With Disabilities Act.**

Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, prohibits discrimination in public accommodations, and gives specific guidance to that end. *See id.* § 12182. For example, the law orders businesses "to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.* § 12182(b)(2)(A)(iii). Businesses may derogate from this rule only if compliance would cause an undue burden. Further, to flesh out the statute's commands, the law authorized the Attorney General to craft regulations and set standards. *Id.* § 12186(b). The Attorney General's standards must accord with suggestions from the Architectural and Transportation Barriers Compliance Board (the "Access Board"), a body of expert appointees created by the Rehabilitation Act of 1973 § 502, 29 U.S.C. § 792(a). *Id.* § 12186(c).

The Attorney General released the first ADA standards in 1991 and retooled them effective March 15, 2011. *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 Fed. Reg. 56,236, 56,237−38 (Dep't of Justice Sept. 15, 2010). The latest set, called the 2010 Standards, was adopted from the Access Board's 2004 ADA Accessibility Guidelines. *See id.;* 36 C.F.R. pt. 1191 app. D ("2010 ADAAG"). The 2010 ADAAG prescribe a variety of architectural and technical rules for public accommodations. These standards aim to ensure the safety of people with disabilities in entering and exiting a parked vehicle at public accommodations. Those who do not comply may fall subject to an injunction, or in suit brought by the Attorney General, to monetary damages or civil penalties. *See* 42 U.S.C. § 12188(a), (b)(2).

For existing public accommodations which were designed and constructed for first occupancy prior to January 26, 1992, unlawful discrimination results from, among other things, a defendant's "failure to remove architectural barriers" where such removal is "readily achievable." 42 U.S.C.§ 12182(b)(2)(A)(iv).

To recover on a claim for discrimination under the ADA, a plaintiff must prove: (1) he or she is disabled within the meaning of the statute; (2) defendant is a private entity that owns, leases (or leases to), or operates a place of public accommodation; and (3) the plaintiff was denied public accommodation on account of his or her disability. *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446, 447 (8th Cir. 2013). The third element is satisfied when there is a violation of applicable accessibility standards. *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).

The Title III accessibility standards come in three broad categories: the "new construction" provisions, which apply to public accommodations constructed after January 26, 1992; the "alteration" provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and the "readily achievable" provisions, which apply to unaltered portions of buildings constructed before January 26, 1992. *See Moeller v. Taco Bell Corp.,* 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011). Because the Heartwood building was constructed long before January 26, 1992, rendering it an "existing" facility under the ADA, the "new construction" provisions are inapplicable here.

The ADA Accessibility Guidelines address whether an architectural element prohibits full and equal access to individuals with disabilities. *See Moeller,* 816 F. Supp.

2d at 848. In existing but unaltered buildings, architectural barriers must be removed where it is "readily achievable" to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The removal of barriers is "readily achievable" when it is "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). If a public accommodation demonstrates that the removal of an architectural barrier is *not* readily achievable, it nonetheless discriminates against person with disabilities if it fails "to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." *Id.* § 12812(b)(2)(A)(v).

### C.    Minnesota Human Rights Act.

Long before Congress passed the ADA, Minnesota enacted statutes to prohibit discrimination on the basis of disability at the state level. The MHRA prohibits discrimination on the basis of disability in the full and equal access to the services, facilities, and advantages of public accommodation. Although the MHRA overlaps substantially with the ADA, the Minnesota legislature has afforded persons with disabilities additional protections and remedies not provided under federal law. Unlike the ADA, which only provides for attorneys' fees and injunctive relief, the MHRA allows plaintiffs to recover damages and seek a civil penalty payable to the State of Minnesota. A violation of the MHRA's public accommodation provisions, *i.e.* the provisions at issue in this case, is also a misdemeanor.

While the remedies available under the MHRA are greater than those available under the ADA, the two statutes are generally interpreted coextensively when determining liability. ADA claims and MHRA claims interpreted to be co-extensive. *See,*

*e.g., Laumeyer v. Melrose Dairy Proteins, LLC*, No. 04-cv-2678-DWF-RLE, p. 6 n.1 (D. Minn. Sept. 13, 2005) (citing *Fenny v. Dakota, Minn. & Eastern R.R. Co.*, 327 F.3d 707, 711 n.5 (8th Cir. 2003); and *Roberts v. KinderCare Learning Ctrs., Inc.*, 86 F.3d 844, 846 n.2 (8th Cir. 1996)).

### D.   Minnesota Statute 611A.79.

Minnesota Statute 611A.79 provides victims of "bias offenses" with civil remedies which include a minimum statutory damage of $500 per offense as well as punitive damages. A bias offense is conduct that constitutes a crime and was committed "because of" the victim's or another's "actual or perceived … disability…." Minn. Stat. 611A.79 subd. 1.

### II.   Plaintiffs Have Standing To Assert Their Claims In This Case, Including Standing To Seek Injunctive Relief.

Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, a plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Only the first element is at issue in this case.

An injury-in-fact is a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). The plaintiff

must show that he or she "sustained or is immediately in danger of sustaining some direct injury as a result of the challenged conduct and [that] the injury or threat of injury [is] both real and immediate...." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "It is well established that the 'actual or threated injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014); *see also Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013) (same). "The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) (quoting *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

The burden faced by Plaintiffs changes over the course of litigation. As the *Lujan* Court explained:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Lujan*, 504 U.S. at 561 (internal citation and quotation marks omitted).

A.    **Plaintiffs Have Suffered An Injury In Fact.**

Plaintiffs have suffered an injury in fact that is concrete and particularized and actual or imminent. The injury in fact in this case is Heartwood's violation of Plaintiffs' protected legal interests under Section 11 of the MHRA and Title III of the ADA. Both statutes protect Plaintiffs from experiencing discrimination at public accommodations. An individual with a disability, "suffers an injury once he has 'become aware of discriminatory conditions existing at a public accommodation … and is thereby deterred from visiting or patronizing that accommodation.'" *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) (citing *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000)).

Plaintiffs experienced discrimination as a result of encountering discriminatory architectural barriers at the 889 Grand Building affecting their disabilities. Plaintiffs are deterred from visiting or patronizing the 889 Grand Building until the barriers are removed. Plaintiffs have thus suffered an injury in fact.

Plaintiffs' injury is concrete and particularized. The "concrete and particularized" requirement "preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome…." There is no issue of fact that the injury in this case is concrete and particularized. Plaintiffs encountered discriminatory barriers at Heartwood's premises affecting their disabilities, and thus experienced a violation of their personal, protected interests. The barriers described in Section III.C, *infra*, all affect Plaintiffs' disability for the reasons set forth therein. Plaintiffs' injury is concrete and particularized.

Plaintiffs' injury is also actual or imminent. With respect to Plaintiffs' claims for damages, Plaintiffs' claims are "actual" because harm arose as a result of the discrimination Plaintiffs encountered on their December 3, 2014, visit to the 889 Grand Building. With respect to Plaintiffs claims for injunctive relief, Plaintiffs' claims are actual, as Plaintiffs are experiencing ongoing deterrence as a result of the discrimination they experienced during their December 3, 2014 visit to the 889 Grand Building. Plaintiffs' injury is actual.

Heartwood challenges the injury in fact element of Plaintiffs' standing. Heartwood's argument is that Plaintiffs could not have suffered an injury in fact because Wong never made an appointment with an 889 Grand Building tenant prior to bringing suit. Heartwood fails to cite a single case holding that the lack of an appointment at an "appointment only" public accommodation precludes an ADA plaintiff from suffering an injury in fact.

There is an easy explanation for Heartwood's failure to cite a single case in support of its position. Heartwood's affirmative obligation to remove architectural barriers at its premises is independent of whether Plaintiffs made an appointment prior to visiting. Plaintiffs' protected interest under the law is to be free from discrimination at public accommodations. If a public accommodation, such as Heartwood, fails to engage in readily achievable barrier removal and deterrence results, then a person with a disability experiences discrimination and has suffered an injury in fact.

Heartwood's position would impermissibly shift the burden on persons with disabilities to contact public accommodations prior to their visit "to ensure that [they]

could gain access to the tenant [they] want to see." The law does not require this, and for good reason. It would be degrading and humiliating to require persons with disabilities to call ahead to determine, for example, whether they are going to be able to use the bathroom whenever they want to visit a public accommodation. Further, by requiring persons with disabilities to call ahead and essentially negotiate access with public accommodations, there would be a strong incentive for public accommodations to do nothing until they were so contacted. Finally, the Court should be particularly reluctant to effectively read a "notice" requirement into the ADA, when every Congress since the ADA's passage has been presented with and has rejected bills that would impose a notice requirement.

Another problem with Heartwood's "appointment" argument is that the Americans With Disabilities Act expressly negates any requirement that a person with a disability engage in a "futile gesture" to establish the existence of discriminatory conditions, provided that such person has "actual notice" that a person or organization covered by Title III of the ADA does not intend to comply with its provisions. 42 U.S.C. § 12188(a).

Contrary to Heartwood's apparent understanding, the "actual notice" requirement is satisfied if a plaintiff has "encountered discrimination" or "learned of the alleged violations through expert findings or personal observation." *Resnick v. Magical Cruise Co., Ltd.,* 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001) (citing *Steger v. Franco*, 228 F.3d 889, 892 (8th Cir. 2000)); *Parr v. L & L Drive-Inn Rest.,* 96 F. Supp. 2d 1065, 1081 (D. Haw. 2000). Nothing about the "actual notice" test requires a plaintiff to communicate with a public accommodation to ask the public accommodation whether it

intends to comply with the ADA, as Heartwood appears to believe. The court's decision in *Resnick* illustrates the proper application of the "actual notice" test.

In *Resnick*, the plaintiffs sued a cruise ship company for violations of Title III of the ADA. The plaintiffs did not visit the cruise ship prior to bringing suit, but asserted that viewing pictures of the cruise ship posted on the defendant's website was sufficient to satisfy the "actual notice" requirement in 42 U.S.C. § 12188(a)(1). The district court disagreed, holding that the pictures posted on the website did not provide plaintiffs with sufficient knowledge of current or imminent discrimination because the pictures on the website did not purport to accurately represent the cruise ship's features. Thus, per *Resnick* and the authority cited therein, the 42 U.S.C. § 12188(a)(1) "actual notice" inquiry focuses on whether the information a plaintiff has obtained in lieu of visiting a public accommodation is sufficiently reliable to serve as an adequate substitute to personally encountering discrimination.

Applied to the facts of this case, the "futile gesture" provision of Title III of the ADA independently rebuts Heartwood's contention that Plaintiffs' injury in fact is in any way related to whether Wong made an appointment at the 889 Grand Building. In this case, Wong personally encountered discriminatory barriers at the 889 Grand Building and, as a result, suffered ongoing deterrence. Whether or not Wong made an appointment, he was not going to be able to enter the 889 Grand Building due to discriminatory architectural barriers. The law appropriately does not shelter defendants, such as Heartwood, from suit based on such formalities as whether an ADA plaintiff made an appointment prior to bringing suit. If barriers exist, if a plaintiff has personally

- 17 -

encountered those barriers, and if a plaintiff is thereby deterred from visiting or patronizing that accommodation, that is enough. *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1136-37 (9th Cir. 2002). Plaintiffs' injury in fact is unrelated to whether Wong made an appointment to visit the 889 Grand Building.

Heartwood cites two cases in support of its "appointment" argument: *Rickmyer v. Jungers*, No. 14-cv-614 (D. Minn. Jan. 30, 2015); and *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1366 (S.D. Fla. 2001). Neither case supports Heartwood's argument. In *Rickmyer*, the court dismissed a complaint where the complaint failed to "link Defendants' conduct with Plaintiff's disability." In this case, Plaintiffs have established a link between the architectural barriers at Heartwood Offices and Wong's Ehlers-Danlos syndrome, which substantially limits his ability to walk. The *Rickmyer* case does not support Heartwood's "appointment" argument.

In the *Access Now* case, the court rejected an argument the "unavailability of accessible seats for a sold-out game constitutes discrimination," on the grounds that "disabled patrons are [not] entitled to a benefit that exceeds that available to the general public." *Access Now, Inc.*, 161 F. Supp. at 1367. In this case, Plaintiffs are not asking for a benefit that exceeds that available to the general public; for example, Plaintiffs are not demanding access to Heartwood's premises outside of ordinary business hours. Plaintiffs' demand is that Heartwood remove discriminatory barriers at the 889 Grand Building. The *Access Now* case does not support Heartwood's "appointment" argument.

Plaintiffs have met their burden of proof of demonstrating an injury in fact because they have sufficiently demonstrated personal knowledge of unlawful

architectural barriers at the Heartwood Offices affecting Wong's disability and consequent deterrence.

**B.**    **Plaintiffs' Injury Is Fairly Traceable To Heartwood's Challenged Action.**

This element of standing is not at issue in this case. This case plainly centers on Plaintiffs' challenge to Heartwood's failure to remove discriminatory architectural barriers at the 889 Grand Building. This element of standing is firmly established.

**C.**    **A Favorable Judicial Decision Will Prevent Or Redress Plaintiffs' Injury.**

This element of standing is not at issue in this case. If the Court enters judgment in Plaintiffs' favor, then Heartwood will be required to discriminatory architectural barriers and compensate Plaintiffs for the damages they incurred. This element of standing is firmly established.

**D.**    **Plaintiffs Have Standing To Seek Injunctive Relief.**

The relief available to Plaintiffs with respect to their ADA claim is limited to injunctive relief. Accordingly, with respect to Plaintiffs' ADA claim, Plaintiffs must demonstrate a "real and immediate threat of future injury by the defendant." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101−02 (1983)). In the context of the ADA, Plaintiffs' showing of a future injury, "does not depend upon how many attempts [they have] made to overcome a discriminatory barrier, but, rather, upon whether the barrier remains in place." *Dudley,* 333 F.3d at 305.

Plaintiffs can prove future injury by demonstrating ongoing deterrence. As the First Circuit observed:

> [T]he proposition that [defendant] advances—that a disabled person must subject himself to repeated instances of discrimination in order to invoke the remedial framework of Title III of the ADA—turns the language of section 12188(a)(1) on its head. The futile gesture doctrine is designed to protect a disabled plaintiff from having to shoulder an undue evidentiary burden. Yet, [defendant's] rendition of that provision converts it into one that creates such a burden. We do not believe that establishing a private right of action under Title III requires a plaintiff to perform such heroic measures.

*Dudley*, 333 F.3d 299. *See also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) ("[U]nder the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury. So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."); *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014) (recognizing, but not reaching, the plaintiff's deterrence basis for standing).

An initial point bears mentioning: Heartwood's memorandum fails to address a key distinction between Wong's ADA and MHRA claims. With respect to Wong's ADA claim, Wong's remedies are limited to injunctive relief. The same is not true for Wong's MHRA claim. Under the MHRA, Wong may also seek damages and a civil penalty payable to the State of Minnesota. Wong is doing so in this case. "Intent to return" or "deterrence" are not elements of standing for damages claims. Thus, Wong's MHRA

- 20 -

claim—and, by extension, Wong's 611A.79 claim—is invulnerable to an attack on Wong's standing to seek injunctive relief; at the very most, only Wong's ADA claim is vulnerable to Defendant's challenge.

Focusing specifically on Plaintiffs' ADA claim, Wong has submitted evidence sufficient to establish the requisite ongoing deterrence. Wong has submitted evidence in the form of his declaration and his deposition testimony demonstrating that he personally visited the 889 Grand Avenue Building, that he experienced discriminatory architectural barriers affecting his Ehlers-Danlos syndrome, that he has travelled to Grand Avenue on several instances over the past year, and that he is currently deterred from visiting or patronizing the 889 Grand Building as a result of his experience on December 3, 2015. Wong has further provided evidence of his intent to return once Heartwood removes discriminatory barriers. His basis for returning is that he wants to ensure that the 889 Grand Building has brought itself into compliance with the law. Wong's evidence readily establishes Plaintiffs' standing to seek injunctive relief.

Heartwood's attacks on Plaintiffs' standing to seek injunctive relief are largely irrelevant to the governing legal standard. First, Heartwood's reliance on *Lujan*'s requirement of concrete plans to return completely glosses over Wong's "deterrence" basis for standing. The "deterrence" basis for standing to seek injunctive relief was not available to the plaintiffs in *Lujan*. Further, the circumstances presented in *Lujan* involved a case where the plaintiffs, American organizations dedicated to wildlife conservation, were speculating over plans to travel to Egypt to view the endangered Nile crocodile, or to Sri Lanka to view the Asian elephant and the leopard. The Court quite

naturally held these plaintiffs to a more demanding burden of proof to determine the veracity of the plaintiffs' intent to return. This case involves a commercial building that is nine miles Wong's residence, which is on a street, Grand Avenue, that Wong visit on a reasonably regular basis.

Heartwood also attacks Wong's status as a serial litigant. Every federal appellate court and the overwhelming majority of federal district courts to address the issue has held that serial litigant status is either irrelevant to or actually supports standing to seek injunctive relief. *See Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (holding that "testers" have standing to sue under Title III); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-34 (11th Cir. 2013) (same); *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 129–30 (4th Cir. 2012) (same); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) ("For the ADA to yield its promise of equal access for the disabled, it may indeed by necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.").[2]

_____

[2] *See also Access For The Disabled, Inc. v. First Resort, Inc.*, 2012 WL 2917915, *2–3 (M.D. Fla. July 17, 2012); *Segal v. Rickey's Restaurant and Lounge, Inc.*, 2012 WL 2393769 *4–5 (S.D. Fla. June 25, 2012) ("Plaintiff is not stripped of standing by virtue of the number of lawsuits he has filed"); *Harty v. Burlington Coat Factory of Pennsylvania, L.L.C.*, 2011 WL 2415169, *8 (E.D. Pa. June 16, 2011); *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *7 (D.N.J. Oct. 30, 2006) (holding that plaintiff's serial litigant status made his claim of intent to return to the defendants' premises more credible, not less); *Betancourt v. Federated Department Stores*, 732 F.Supp.2d 693, 710

The fact that Heartwood has terminated Dr. Raich's lease also does not materially bear on Wong's standing to seek injunctive relief. Wong has testified unambiguously that he intends to return to the 889 Grand Building "as soon as they become accessible." Wong Dep. 58:13-16. When Wong originally visited he did so for the purpose of visiting Dr. Raich. Wong's intention to return, however, is rooted in the fact that he wants to protect his rights under the law. Wong passionately believes that his "rights as an equal individual in this society have been violated" by Heartwood. Wong Dep. 69:20-21. He intends to continue pursuing Heartwood until it stops violating his rights, and nothing in the law prevents him from doing so. Whether or not Dr. Raich continues to practice at that particular building has nothing to do with Wong's primary continuing interest in the 889 Heartwood Building. 0The law on this point is quite clear: Wong has continuing standing to pursue removal of architectural barriers even if his only reason for doing so is to eliminate discrimination that he encountered. *See, e.g., Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (rejecting district court's "bona fide" patron requirement and holding that pure ADA tester had standing to pursue injunctive relief). Wong lives in relatively close proximity to the 889 Heartwood Building, travels in the vicinity with reasonable frequency, and Heartwood has done

_____

(W.D. Tex. 2010) ( "A disabled tester who experiences the discrimination prohibited by the ADA has standing to seek relief"); *Kittok v. Leslie's Poolmart, Inc.,* 687 F.Supp.2d 953 (C.D. Ca. 2009) (same); *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership*, 1997 WL 33471623 (D. Colo. 1997).

nothing to remedy the barriers giving rise to this suit. As a result, "there is a 100 percent likelihood that Plaintiff … will suffer the alleged injury when he returns to the [building]." *Id.* at 1337.

### E.    Plaintiffs' Claims Are Not Moot.

Heartwood asserts that Plaintiffs' claims are moot because Heartwood provides a "fully accessible" alternative location for 889 Grand Building tenants to meet their clients and because Dr. Raich is no longer a tenant at the 889 Grand Building. Both of these arguments fail.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 626 (1979). "As a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Id.* "The burden of demonstrating mootness is a heavy one." *Id.*

#### 1.    Alternate Location.

Heartwood's provision of an alternate location does not moot Plaintiffs' claims. First, Plaintiffs continue to seek the relief demanded in their complaint, *i.e.* removal of architectural barriers at the 889 Grand Building. The use of an alternative method is only acceptable where barrier removal is not "readily achievable." So long as there remains a live controversy over whether Heartwood has adequately removed architectural barriers at the 889 Grand Building, Plaintiffs' claims are not moot. Second, Heartwood's alternate location is associated with its own architectural barriers. For example, the parking violates several independent ADAAG provisions. So long as the alternate location to

which Heartwood would send people with disabilities is associated with discriminatory barriers, Plaintiffs' claims are not moot.

### 2.    Heartwood's Termination Of Dr. Raich's Lease.

Heartwood's termination of Dr. Raich's lease does not eliminate Wong's demand that Heartwood stop discriminating against him. Nothing about Dr. Raich's departure bears on whether Wong continues to have a legally cognizable interest in the outcome of this case—unless, of course, Dr. Raich took the discriminatory architectural barriers with him when he left.

## III.    Heartwood Is Liable For Violations Of The ADA and MHRA

There is no genuine issue of material fact that (A) Plaintiffs are persons with disabilities; (B) Heartwood is a public accommodation; and (C) Heartwood failed to remove architectural barriers where removal was readily achievable.

### A.    Plaintiffs Are Persons With Disabilities.

The first substantive element of Plaintiffs' MHRA and ADA claims is that Plaintiffs are persons with disabilities. Under the ADA and MHRA, an individual is considered to have a disability if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. Wong's Ehlers-Danlos syndrome is a permanent genetic condition that substantially limits his ability to walk, work, perform manual tasks and to care for himself. All of these activities are considered "major life activities" under the ADA. *See* 42 U.S.C. § 12101.

Wong has been determined to be "disabled" by the United States Social Security Administration. This determination requires a finding from an administrative law judge that Wong "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than ten months." 42 U.S.C. § 1382c. "Working" is considered a "major life activity" under the ADA. 42 U.S.C. § 12102.  Plaintiffs satisfy the first element of their claims.

### B.    Heartwood Is A Public Accommodation.

The second element of Plaintiffs' MHRA and ADA claims is that Heartwood is a public accommodation. As defined in Title III, the term "public accommodation" includes, *inter alia*, "[P]rofessional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F). Heartwood's tenants include a psychiatrist, a neurosurgeon and a mental health counselor, all of which are quintessential public accommodations.

As the landlord who owns the building from which these tenants operate, Heartwood is also a defined as a public accommodation. *See* 28 C.F.R. § 36.201(b) ("Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part."). *See also Botosan v. McNally Realty, et al.*, 216 F.3d 827, 832 (9th Cir. 2000) ("The express terms of the ADA hold a landlord liable for noncompliance"). Plaintiffs satisfy the second element of their ADA claim.

### C.   Heartwood Has Failed To Remove Architectural Barriers Affecting Wong's Disability Even Though Removal Is Readily Achievable.

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. 42 U.S.C. § 12182(a). Under Title III of the ADA, "discrimination" specifically includes "failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). The ADA further sets out several factors to be considered in determining whether removal of architectural barriers is readily achievable:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.* § 12181(9)(A)-(D); *see also Colorado Cross Disability Coalition v. Hermanson Family Ltd.,* 264 F.3d 999, 1002 (2001).

Plaintiffs bear the initial burden of showing that barrier removal is readily achievable. Plaintiffs meet this burden by articulating a plausible proposal for barrier removal, "the costs of which, facially, do not clearly exceed its benefits." *Roberts v.*

*Royal Atlantic Corp.*, 542 F.3d 363, 373 (2nd Cir. 2008). "Neither the estimates nor the plaintiff's showing are required to be exact or detailed, for the defendant many counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would exceed the benefits." *Id.*

Once a plaintiff meets its burden of demonstrating a *prima facie* case for "readily achievable" barrier removal the burden of persuasion shifts to the defendant; ultimately, the argument that barrier removal is not "readily achievable" is an affirmative defense for which defendant bears the burden of proof. *See, e.g., Wong v. Muddy Pig, Inc.*, No. 14-cv-3334 (RHK/TNL) (D. Minn. Jan. 16, 2015) (collecting cases).

The U.S. Department of Justice has elaborated on the statutory standard of "readily achievable." The ADAAG provides a list of "modest measures that may be taken to remove barriers and that are likely to be readily achievable." 28 C.F.R. Pt. 36, App. B at 647 (2000). The regulations provide:

> Examples of steps to remove barriers include, but are not limited to, the following actions—(1) Installing ramps; (2) Making curb cuts in sidewalks and entrances; (3) Repositioning shelves; (4) Rearranging tables, chairs, vending machines, display racks, and other furniture; (5) Repositioning telephones….

28 C.F.R. § 36.304(b) (emphasis added).

When an entity demonstrates that the removal of an architectural barrier is not readily achievable, it nonetheless discriminates against persons with disabilities if it fails "to make such goods, services, facilities, privileges, advantages, or accommodations

available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

The barriers alleged in this case and identified in Plaintiffs' complaint relate to the ability of a person who uses a wheelchair for mobility to enter the 889 Grand Building, *i.e.* path of travel barriers. The inaccessible elements of the path of travel at the 889 Grand Building include: (1) there is no accessible public entrance for wheelchair users; (2) there is no accessible path of travel from the public sidewalk to a public entrance; (3) there is an excessive change in level at the doorway of the public entrance; (4) the sidewalk providing access from the front of the 889 Grand Avenue Building to the back of the building features an excessive cross slop; (5) the public entrances feature inaccessible door hardware. Removal of these barriers is readily achievable.

## 1.    **Inaccessible Entrance.**

The first architectural barrier at Heartwood's premises is the lack of an accessible entrance. Heartwood's main entrance features four steps, each of which is seven inches in height. There is no ramped path of travel to the porch at the top of the steps. These conditions constitute a barrier because they violate ADAAG 206.2.1, which requires an accessible route from a public sidewalk to an accessible entrance. This barrier affects Plaintiffs' disability because Wong's Ehlers-Danlos syndrome prevents him from traversing steps.

Remediating this ramp is readily achievable. Federal law suggests that installing a ramp is a presumptively readily achievable modification. 28 C.F.R. § 36.304(b)(1). Heartwood received several bids for the installation of a ramp which, when contrasted

with Ms. Quarve-Peterson's $35,000 cost estimate, create a genuine issue of material fact as to what the actual cost of the ramp will be.

For example, Heartwood received a bid from an experienced and reputable local ramp contractor, Beyond Barriers Minneapolis, LLC. The bid included all of the materials and labor necessary for constructing a ramp at the 889 Grand Building, including the installation of a concrete landing, the installation of footings, and modifying the existing premises to accommodate the ramp. Beyond Barriers' bid was $11,987.00. This amount is slightly higher than what Plaintiffs expected based on past experience, but it is within the realm of reasonableness under the circumstances. The proposed ramp, as outlined specifically in the bid, is acceptable to Plaintiffs.

In contrast, Ms. Quarve-Peterson's declaration states that the actual cost of installing *any* ramp at the 889 Grand Building is $35,000. This absurd markup is justified by reference to the need to install "proper footings" and an accessible path of travel." Yet, the Beyond Barriers' bid expressly includes frost footings and a concrete pad at the bottom of the ramp. It appears that Ms. Quarve-Peterson may have overlooked these features of the Beyond Barriers' bid when she was preparing her declaration. Alternatively, Ms. Quarve-Peterson's declaration may be factoring in additional barrier removal measures that Plaintiffs are not actually demanding in this case. Ultimately, however, we are left to guess as to Ms. Quarve-Peterson's thinking because she does not specifically account for the facially implausible 300% increase in installation costs. Again, Plaintiffs are agreeable to the $11,987.00 proposed bid by Beyond Barriers.

- 30 -

Plaintiffs are not seeking the unspecified features contemplated in Ms. Quarve-Peterson's $35,000 ramp.[3]

Heartwood raises a concern that it may not be able to obtain a variance from the City of Saint Paul, or that it may receive an objection from the Grand Avenue Neighborhood Association. This argument is strikingly similar to an argument that was rejected by the court in *Kreisler v. Second Avenue Diner Corp.*, No. 10-cv-7592 (RJS) (S.D.N.Y. Sept. 10, 2012). In *Kreisler*, the defendant argued that New York City ordinances would not permit the construction of a permanent ramp that interfered with a public sidewalk. The court rejected the argument because Defendants never attempted to obtain approval for a permanent ramp, and provided only generalized objections regarding the regulations, just as Heartwood has done here. Just as in *Kreisler*, it is *possible* that City authorities would not permit Heartwood to build a ramp, Heartwood provides no explanation as to why it should be excused from trying. Further, just as in

---

[3] The undersigned has encountered Ms. Quarve-Peterson in several cases. She has consistently opined that her clients are in full compliance with the ADA, and her clients have consistently had judgments entered against them. For example, in *Wong v. China Express*, a case venued in Hennepin County District Court, Ms. Quarve-Peterson opined that her clients were in full compliance with the ADA. Her clients had summary judgment entered against them. Ms. Quarve-Peterson also represented a business, Chatterbox Enterprises, Inc., in *Wong v. Chatterbox Enterprises, Inc.*, also venued in Hennepin County District Court. Chatterbox had judgment entered against it at trial. Finally, Ms. Quarve-Peterson represented another client and opined that installing a ramp was not readily achievable due to permitting and related issues. Her client ultimately agreed to install a ramp. Because her client voluntarily elected to do the right thing, the undersigned would like to respect that client's privacy.

*Kreisler*, a "causal inspection" of business along Grand Avenue suggests ramps are permitted with some frequency

Heartwood has the financial capacity to install an $11,987.00 ramp. Over the past seven years, Heartwood has accumulated real estate assets for an aggregate purchase price of $2.2 million. At these properties, Heartwood has applied for and received building permits valued at over $60,000. For example, on June 12, 2014, Heartwood received a building permit for the 889 Grand Building for exterior work valued by the state at $10,000. On June 3, 2014, Heartwood received a building permit to perform remodeling work at its multi-unit residential property located at 715 Grand Avenue; the value of this work was $9,660.00. More recently, on July 27, 2015, Heartwood received approval to conduct remodeling work on its property located at 1123 Grand Avenue in an amount valued at $13,000. Based on these expenditures, there nothing to suggest that an outlay of $11,987.00 would not be readily achievable for Heartwood to make.

Further, businesses, like Heartwood, with less than $1,000,000 in total revenue or with thirty or fewer full-time employees can receive a tax credit for 50% of eligible access expenditures in a year over $250 and up to $10,250, with a maximum credit of $5,000. 28 U.S.C. § 44. Alternatively, or above the first $10,250, a business may deduct expenses of barrier removal up to $15,000. *Id.* § 190; *see id.* § 44(d)(7). Accordingly, the tax benefits that would be available to Heartwood would significantly defray the costs of those improvements.

If the Court finds that as a matter of law a permanent ramp is not readily achievable, it must next consider whether a portable ramp is readily achievable. "Portable

ramps should be used … only when installation of a permanent ramp is not readily achievable." 28 U.S.C. § 304(e). Heartwood could purchase an acceptable portable ramp for $549.95. The ramp would not strictly comply with the requirements of the ADAAG, but it would also not threaten Plaintiffs' health or safety.

The Court should find that as a matter of law installing the ramp proposed by Beyond Barriers is readily achievable. In the alternative, the Court should find that there is a genuine issue of material fact regarding the actual cost of permanent ramp installation. Finally, failing the first two measures, the Court should find that Heartwood must purchase and deploy a portable ramp.

### 2.    <u>Inaccessible Door Hardware.</u>

The second architectural barrier at Heartwood's premises is the "twist" doorknob at the building's main entrance. ADAAG 404.2.5 provides that manually operated controls, including doorknobs, must comply with ADAAG 309. ADAAG 309.4 provides that operable parts, doorknobs included, must be operable with one hand and not require, *inter alia*, twisting of the wrist. This is a barrier that affects Wong's Ehlers-Danlos syndrome, which makes it difficult for Wong to grasp and manipulate objects, including "twist" doorknobs. For example, Wong has difficultly grasping a pen and writing.

Removal of this barrier is readily achievable. Heartwood can replace the "twist" doorknob with a lever-style door handle. The cost of such a door handle is $31.87.

### 3.    <u>Doorway Threshold.</u>

Once an individual gets up the four steps and onto the porch associated with the 889 Grand Building's main entrance, there is an impermissible threshold at the doorway.

ADAAG 404.2.5 provides that thresholds, if provided at doorways, shall by ½ inch high maximum. The doorway threshold is actually 1.5 inches. Indeed, one of the ramp bids obtained by Heartwood on February 24, 2015, *i.e.* the bid from AmRamp, specifically identified this issue: "These layouts DO NOT address the issue of the existing 1 1/2" bump outside the front door, which does not meet ADA requirements." (emphasis in the original).

Removal of this barrier is readily achievable. Heartwood need only purchase and install a threshold reduction mat. These mats are available from Home Depot and cost approximately $96.97.

### 4.    Step At The Public Sidewalk.

The path of travel from the public sidewalk to the 889 Grand Building premises features a single, unramped concrete step that is approximately four inches in height. ADAAG 206.2.1, which pertains to site arrival points, requires the presence of at least one accessible route within the site from public streets and sidewalks, and public transportation stops. The existing concrete step is impassible by a person who uses a wheelchair. This barrier affects Wong's disability because Wong's Ehlers-Danlos syndrome requires Wong to use a wheelchair for mobility.

Removal of this barrier is readily achievable. Heartwood must replace the step with a permanent curb ramp. The ramp will be inexpensive because there is a relatively modest threshold, which means that there will be no requirements for handrails, edge protection or a landing. The estimated cost of such a ramp, depending on site conditions and time of year, is $1,000 to $2,300, inclusive of labor.

If the Court finds that as a matter of law a permanent ramp is not readily achievable, it must next consider whether a portable ramp is readily achievable. "Portable ramps should be used … only when installation of a permanent ramp is not readily achievable." 28 U.S.C. § 304(e). Heartwood could purchase an acceptable portable ramp for $169.

### 5. Excessive Sidewalk Cross-Slope.

Several points along the sidewalk that provides access from the front of the 889 Heartwood Building to the rear of the building feature an excessive cross-slope. ADAAG 403.3 provides that the cross slope of walking surfaces shall not be steeper than 1:48. A cross slope is the slope that is perpendicular to the path of travel, and an excessive cross slope causes a person using a wheelchair, such as Wong, to veer off in the direction of the slope.

Removal of the barrier is readily achievable. Heartwood can hire a "mud-jacking" specialist to level out the concrete slabs comprising the sidewalk. A typical bid for this sort of work is $60/slab, with a minimum of $240. Plaintiffs estimate that Heartwood could complete the work for $420.

### 6. Alternate Measures.

If Heartwood demonstrates that the removal of an architectural barriers is not readily achievable, it nonetheless discriminates against persons with disabilities if it fails "to make such goods, services, facilities, privileges, advantages, or accommodations available through alternate measures if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v). The DOJ has explicitly recognized that relocating activities to an

- 35 -

accessible location is the sort of measure that can satisfy an existing facility's "alternative method" obligations under the statutes. *See* 28 C.F.R. § 36.035(b).

Here, the evidence does not indicate that Heartwood actually offers such a service—even though the burden of proof rests with Heartwood. While William Blumh's declaration indicates that Heartwood offers its tenants an accessible alternate location, Blumh's testimony and other facts do not indicate that Heartwood offers the service in a manner that is sufficiently consistent and reliable to constitute an "alternative method" under the statute.

As an initial matter, when Wong visited on December 3, 2015, there was no signage indicating the availability of an alternate accessible location. After Plaintiffs sued Heartwood, then Heartwood installed a sign. However, the current location and positioning of the sign makes the sign invisible to persons in wheelchairs on the public sidewalk. Heartwood's website now indicates that "disabled access is available," but does not elaborate any further. A survey of the websites of 889 Grand Building tenants reveals no mention of an alternative accessible location.

Blumh's declaration supports a finding that Heartwood could implement an alternative location strategy in a more consistent and reliable manner. According to Blumh, Wong's December 5, 2014 letter is the "only time Heartwood has ever received notice that a disabled patron desired to visit a tenant of Heartwood Offices." It is not clear what point Bluhm was attempting to make with that statement, but the fact that no other person with a disability has ever even tried to access the building is strongly suggestive

of major "room for improvement" with respect to Heartwood's alternate location strategy.

As an aside, Heartwood's alternate location is not ADA compliant. By way of a single example, its parking lot violates the ADA. It contains zero van accessible parking spaces and the signage is too low.

### 7.    Heartwood's "All or Nothing" Defense Is Unavailing.

Heartwood's primary defense is that making its "entire building accessible could cost more than $300,000, not including the operational costs related to lost rental revenue and lost business." This argument pays short shrift to the sometimes imperfect realities of access law compliance. If entities were required to provide people with disabilities access to their premises only when they could do so in a manner fully and wholly compliant with federal regulations, the ADA's scope would be unduly circumscribed. The argument also ignores the fact that Plaintiffs are not demanding that Heartwood, for example, install an elevator at its premises. All Plaintiffs are asking for is removal of the barriers outlined above.

The U.S. Department of Justice plainly does not require all-or-nothing compliance with its regulations. *See, e.g.,* Title III Technical Assistance Manual ("TAM") § 4.4300 (where full compliance with federal accessibility standards is not readily achievable, "barrier removal measures may be taken that do not fully comply with the standards, so long as the measures do not pose a significant risk to the health or safety of individuals with disabilities or others."). The DOJ was offering an interpretation of its own regulations. As such, these comments are accorded "substantial" deference. *See Miller v.*

- 37 -

*California Speedway Corp.,* 536 F.3d 1020, 1028 (9th Cir. 2008) ("The Justice Department's interpretation of its own regulations ... must... be given substantial deference and will be disregarded only if plainly erroneous or inconsistent with the regulation.") (quotation marks, citations, and alterations omitted).

Heartwood has made literally no effort to show that its existing premises would "pose a significant risk to the health or safety of individuals with disabilities or others." Certainly, the absence of certain accessible elements, such as a ground floor bathroom, would pose an inconvenience to visitors to the 889 Grand Building. But the mere possibility of an inconvenience is a far cry from a "significant risk to the health or safety" of Plaintiffs or others that Heartwood must show to avoid engaging in barrier removal.

## IV.   There Is No Genuine Issue Of Material Fact Regarding Plaintiffs' Claim Under Minnesota Statutes 611A.79.

A violation of Section 11 of the MHRA, *i.e.* the provision that parallels the ADA, is a misdemeanor. Minn. Stat. § 363A.30, Subd. 4. Minnesota Statutes Section 611A.79 provides bias offense victims with a civil remedy for the harm they suffered. Minn. Stat. § 611A.79. In relevant part the elements of the civil cause of action are: (a) conduct that constitutes a crime; and (b) the crime was committed "because of" Plaintiffs' disability. *Id.*, subd. 1.

### A.   Heartwood Committed A Crime.

Heartwood's failure to engage in readily achievable barrier removal constitutes a crime. Heartwood does not contest that, should Plaintiffs establish Heartwood's MHRA liability, then Plaintiffs would also establish the "crime" element of their 611A.79 claim.

Instead, Heartwood repeats the arguments it raised earlier in its brief regarding liability under the ADA and MHRA. Heartwood's arguments should be rejected for the same reasons stated above.

One point bears emphasizing. Heartwood's citation to the MHRA appears to confuse the provision under which Plaintiffs are proceeding. Heartwood is apparently under the misimpression that Plaintiffs are proceeding under Section 363A.11 Subd. 1 of the MHRA. That is inaccurate. Plaintiffs charge Heartwood with violations of Section 363A.11, Subd. 3(4), *i.e.* failure to remove architectural barriers where removal is readily achievable.

### B.    Heartwood's Crime Was Committed "Because Of" Plaintiffs' Disability.

Heartwood's challenge to the second element of Plaintiffs' claim rests on its assumption Plaintiffs are required to prove animus in order to prove that Heartwood's crime was committed "because of" Plaintiffs' disability. Yet, proof of animus is a sufficient, but not necessary, showing with respect to this element. For example, in *Seivers v. City of Minneapolis*, No. 09-816 (DSD/SER) (D. Minn. Jan. 25, 2011), the district court entered summary judgment in favor of the defendants where plaintiff produced no evidence to "support[] an inference that the officers acted out of racial animus, *and* there [was] no evidence to show that the officers acted 'because of' Seiver's race." *Id.* (emphasis added). As the *Seivers* decision makes clear, a plaintiff can prove the "because of" element by demonstrating animus, or a plaintiff can resort to other evidence to draw a link between a defendant's crime and a plaintiff's protected status.

Here, Heartwood cannot plausibly claim the absence of a link between Plaintiffs' status as a person with a disability and the crime it committed. After all, if Plaintiffs did not have disabilities, or if Heartwood's barrier removal violations did not affect Plaintiffs' disabilities, then no crime could have been committed. Heartwood's crime was committed "because of" Plaintiffs' disabilities.

The phrase "because of" appears frequently in antidiscrimination statutes. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 575 U.S. ___ (2015). Indeed, the phrase appears in the Minnesota Human Rights Act, *e.g.,* Minn. Stat. § 363A.11, Subd. 1 (defining discrimination as denying the full and equal enjoyment of a public accommodation *because of* a person's protected status) (emphasis added), as well as in the ADA, *e.g.,* 42 U.S.C. § 12112(a) (making it unlawful for an employer to discriminate against a qualified individual with a disability because of the disability of such individual).

The "because of" language in the ADA, and by extension the MHRA[4], encompasses not only disparate-treatment claims, but also disparate-impact claims. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) ("Both disparate-treatment and

---

[4] ADA claims and MHRA claims interpreted to be co-extensive. *See, e.g., Laumeyer v. Melrose Dairy Proteins, LLC*, No. 04-cv-2678-DWF-RLE, p. 6 n.1 (D. Minn. Sept. 13, 2005) (citing *Fenny v. Dakota, Minn. & Eastern R.R. Co.*, 327 F.3d 707, 711 n.5 (8th Cir. 2003); and *Roberts v. KinderCare Learning Ctrs.*, *Inc.*, 86 F.3d 844, 846 n.2 (8th Cir. 1996)).

disparate-impact claims are cognizable under the ADA"). Further, the ADA and MHRA

outlaw not only intentional discrimination, but also the discriminatory effects of, "benign

neglect, apathy, and indifference." *See Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp.

2d 1065, 1084 (D. Hawaii 2000). *See also Association for Disabled Americans, Inc. v.

Concorde Gaming Corp.*, 158 F. Supp. 2d 1353, 1361 (S.D. Fla. 2001) ("Title III's

concept of discrimination extends to some forms of de facto discrimination").[5]

Heartwood's suggestion that the "because of" language in Section 611A.79

requires discriminatory intent would lead to an odd result. It would be unusual to

interpret the "because of" language in Section 11 of the Minnesota Human Rights Act to

have a different meaning than the "because of" language in Section 611A.79. Under

Minnesota Human Rights Act, to the extent it is interpreted co-extensively with the ADA,

a "[p]laintiff need not show that the defendant was motived by a desire to discriminate

---

[5] *See, e.g., Lentini v. California Center for the Arts,* 370 F.3d 837, 846-47 (9th Cir. 2004); *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 2d 1353 (S.D. Fla. 2001) (Title III applies not just to intentional exclusions, but "also extends to some forms of de facto discrimination*"); Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159, 1169 (D. Or. 1998); *Dunlap v. Association of Bay Area Governments*, 996 F. Supp. 962, 965-966 (N.D. Cal. 1998) ("Plaintiff need not show that the defendant was motivated by a desire to discriminate against disabled persons ... Rather, the plaintiff need only show that she is an individual with a disability and that *because of* her disability she was denied participation in or the benefit of a service provided by the theater.") (emphasis added); *U.S. v. Morvant*, 898 F. Supp. 1157, 1163 n.7 (E.D. La. 1995); *Emery v Caravan of Dreams*, 879 F. Supp. 640, 643 (N.D. Tex. 1995), aff'd without opinion sub nom *Emery v. Dreams Spirits, Inc.*, 85 F.3d 622 (5th Cir. 1996) (unnecessary for a Title III plaintiff to prove discriminatory intent to establish a violation of the ADA).

against disabled persons … Rather, the plaintiff need only show that she is an individual

with a disability and that *because of* her disability she was denied participation in or the

benefit of service provided by the theater." *Dunlap*, 996 F. Supp. at 965-966 (emphasis

added).

By interpreting Section 611A.79 to require discriminatory intent, a court would be

ignoring the broad range of scenarios where benign neglect, apathy, and indifference

threaten the safety and well-being of people with disabilities. In other words, the harm

that flows from a violation of the MHRA's public accommodation provisions flows

regardless of whether a public accommodation possessed discriminatory intent.

Whether Heartwood harbors ill will towards people with disabilities is not the

question. The ADA, MHRA and Section 611A.79 outlaw not only intentional

discrimination, but also the "benign neglect, apathy, and indifference" demonstrated in

this case. *Parr*, 96 F. Supp. 2d at 1084 (D. Hawaii 2000).

## V.    <u>The Court Is Within Its Discretion To Enter Judgment In Plaintiffs' Favor.</u>

Federal Rule of Civil Procedure 56(f) allows the Court enter judgment, in whole or

in part, to the nonmoving party, *i.e.* Plaintiffs, provided that the Court provide Heartwood

with notice of its intention to do so and Heartwood an opportunity to be heard.

In this case, there may or may not be issues of fact regarding Heartwood's barrier

removal obligations. However, there can be no issue of fact that Heartwood is liable for

violating the ADA and MHRA. Heartwood has refused to engage in the most basic

barrier removal measures identified by Plaintiffs, by Heartwood's experts, and even by

contractors who submitted bids for the ramp. In other words, while there may be a factual

question of *what* Heartwood is required to do, there can be no question that Heartwood is obligated to do more than it is currently doing. Entry of judgment with respect to the issue of liability will focus the parties' attention on reaching a constructive resolution in this case and will avoid needless consumption of the scarce resources of this Court and counsel.

## CONCLUSION

Heartwood's motion for summary judgment should be denied in its entirety and judgment should be entered in Plaintiffs' favor, at least with respect to liability.

DATED:  December 29, 2015         /s/ Paul R. Hansmeier
                                  Paul R. Hansmeier (MN Bar # 387795)
                                  CLASS JUSTICE PLLC
                                  100 South Fifth Street, Suite 1900
                                  Minneapolis, MN 55402
                                  E-mail: mail@classjustice.org
                                  Phone: (612) 326-9801
                                  *Counsel for Plaintiffs*