UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and ERIC WONG,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEARTWOOD ENTERPRISES, LLC,<br><br>*Defendant*. | Case No. 0:15-cv-0529-PAM-FLN |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF PETER HANSMEIER**

Plaintiffs Disability Support Alliance and Eric Wong (collectively, "Plaintiffs") respectfully oppose Defendant Heartwood Enterprises, LLC's ("Heartwood") Motion to Strike the Declaration of Peter Hansmeier. (the "Hansmeier Declaration").

**ARGUMENT**

Heartwood challenges the Hansmeier Declaration on the grounds that the declarant, Peter Hansmeier, was not identified in Plaintiffs' initial disclosures. Heartwood also objects to the documents attached as Exhibit C to the Hansmeier Declaration on the grounds of hearsay and because the documents were not produced during discovery. All of these arguments fail for the reasons set forth below.

I. **The Hansmeier Declaration Is Admissible.**

Federal Rule of Civil Procedure 26 requires a party to disclose "the name . . . of each individual <u>likely to have discoverable information</u>–along with the subject of that

information–that the disclosing party may use to support its claims or defenses, unless the use would solely be for impeachment[.]" (emphasis added).

In this case, Peter Hansmeier's declaration is being used solely to authenticate documents that, in large part, were produced to Heartwood during formal discovery. For example, the site inspection photographs and the sign-related photographs attached to the Hansmeier declaration were produced to Heartwood during formal discovery. (Declaration of Paul Hansmeier dated January 21, 2016, ¶ 2). Hansmeier's declaration does not contain testimony regarding the site conditions at Heartwood, does not contain testimony about Eric Wong's experiences at Heartwood, and does not contain any other testimony. Thus, Hansmeier is not an individual "likely to have discoverable information" who must be disclosed pursuant to Rule 26.

Because Hansmeier is not an individual who has discoverable information that Plaintiffs are using to support their claims or defenses, Plaintiffs were under no obligation to disclose Hansmeier's identity in their initial disclosures. Again, Hansmeier did not witness the transactions or occurrences giving rise to this suit or do anything else other than take photographs during Plaintiffs' site inspection of the Heartwood premises, and these photographs were produced to Heartwood during formal discovery.

Heartwood's motion is remarkably similar to that which was denied in *Arthur Leonard v. PNC Bank, NA*, No. 11-cv-11815 (D. Mass). In the *Arthur Leonard* case, the court held that an affiant who was not disclosed in initial disclosures could nevertheless authenticate documents produced during discovery. Memorandum of Decision and Order on Plaintiff's Motion to Strike, *Leonard v. PNC Bank, NA*, No. 11-cv-11815 (D. Mass

Feb. 3, 2014). In denying a motion to strike, the court reasoned that a person whose sole role is to authenticate third-party documents does not meet the definition of a person who must be disclosed in connection with initial disclosures.

Hansmeier's role in this case is not materially different than that of Heartwood's counsel, Joseph Windler. Mr. Windler has submitted at least three declarations in this case. *See* Declaration of Joseph Windler at ECF No 19; Supplemental Declaration of Joseph Windler at ECF No. 34; and Declaration of Joseph Windler at ECF No. 38. Yet, Windler was not identified in Heartwood's initial disclosures or other discovery in this case. Just as with Hansmeier, Windler's sole role in this case has been to authenticate documents. If Heartwood actually believed that Windler is a person who must have been disclosed, then it is unusual that Heartwood failed to identify Windler in its initial disclosures.

A second problem with Heartwood's attack on Plaintiffs' "failure" to disclose Hansmeier as a witness is that any "failure" was harmless. A failure to disclose a witness or evidence is allowed if the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Any "failure" to disclose Hansmeier as a potential witness was harmless. Hansmeier did not witness the action or occurrence giving rise to the claim. Further, Hansmeier did not have any information in his custody or control at the close of discovery that was not provided to Heartwood.

It is worth mentioning that Heartwood was on actual notice of Hansmeier's participation in Plaintiffs' site inspection. Heartwood's counsel was present at the site inspection and appears in many of the photographs taken by Hansmeier. (Declaration of

3

Paul Hansmeier dated January 21, 2016, ¶ 3). Moreover, one or more people that were disclosed on the potential witness list had equal access and ability to authenticate the documents in Exhibits A and B to the Hansmeier Declaration. For example, Angela Van Den Hemel was also at the site inspection and could, to this day, authenticate the documents in Exhibits A and B to the Hansmeier declaration. In addition, both Ms. Van Den Hemel and Mr. Wong are capable of performing Google searches, and therefore could have found and authenticated the documents in Exhibit C to the Hansmeier Declaration.

To the extent that Heartwood challenges the Hansmeier Declaration on the grounds that it is not sufficient for expert testimony, Plaintiffs are not holding out Hansmeier as an expert witness. It is within the competence of a lay person to authenticate documents.

## II. The Documents Attached To Exhibit C To The Hansmeier Declaration Are Admissible.

Heartwood contends that the documents presented in Exhibit C to the Hansmeier Declaration should be stricken because they were not produced during discovery. Yet, it was Heartwood's Summary Judgment Motion that brought the issues addressed by these documents into play: Heartwood's motion asserts that it would cost $300,000 to bring the 889 Grand Ave Heartwood property into conformity with the ADA.

By asserting that ADA-compliance would cost $300,000, Heartwood itself brought all of the other ADA violations at the Heartwood premises into issue. Plaintiffs are fully entitled to rebut Heartwood's position by noting the existence of barriers whose

removal is readily achievable. The documents in Exhibit C simply support what is common sense–that the price of replacing such building elements as a doorknob is exponentially less than the cost of full remediation.

Moreover, it is clear that there was not prejudice to Heartwood as Heartwood was on actual notice of the additional issues by virtue of the site inspection performed by their expert witness, and by the receipt of contractor bids which specifically identified the issues.

Further, Plaintiffs' "failure" to produce the contents of Exhibit C to the Hansmeier Declaration during discovery was both substantially justified, and harmless.  The need for the contents of Exhibit C did not arise until Defendant made the legal argument that Defendant was not required to make any changes to their premises if full compliance with the ADAAG was not readily achievable. Plaintiffs had no reason to investigate the cost of fixes in addition or in alternative to a permanent ramp until Heartwood attempted to justify its failure to install said ramp with the assertion that it was unnecessary to put in the ramp because full compliance was not readily achievable.

Further, Heartwood asserted they hired an expert in Ms. Quarve-Peterson to identify all of the violations of the ADAAG present. Accordingly, Heartwood should have been aware that, for example, the door hardware was not in compliance.  Moreover, several of the documents, such as the screen shots of the price of an ADA complaint door handle for sale at Home Depot are used to demonstrate what is common sense – the cost of such an item is very small.  It would take Heartwood's counsel 5 seconds to conduct a similar Google search to determine whether the Documents in Exhibit C accurately

reflect the marketplace for such items as door handles. For at least these reasons, Plaintiffs' failure to disclose the documents in Exhibit C was both justified and harmless.

Heartwood also attacks the documents in Exhibit C to the Hansmeier declaration on the grounds of hearsay. Plaintiffs disagree. Heartwood's position appears to be that website printouts are never admissible under Fed. Rs. Evid. 801(c), 802. This is simply not true.[1] Whether or not a website printout is admissible evidence depends upon what the nature of the website and its contents, what it is being presented for, and how it is authenticated. *See, e.g. Specht v. Google inc.*, 747 F.3d 929 (7th Cir. 2014) (at the district court level some website printouts where admissible, while others were not); *Tienda v. State* 358 SW 3d 633 (Tx. Ct. of Crim. App. 2012) (wherein printouts of MySpace profiles where admitted to evidence in the district court); *Sublet v. State*, *Harris v. State* and *Monge-Martinez v. State*, MD Court of Appeals 2014 (consolidated case Nos. 42, 59 and 60 of September Terms 2014) (wherein the determination of whether printouts of social media sites admissibility comes down to whether they printouts are properly

---

[1] The cases cited by Heartwood do not support the conclusion Heartwood would like this Court to reach. In *FTC v. Medical Biller Network, Inc.*, the ruling that the document was inadmissible hearsay did not link that ruling directly to the fact that it was a printout, but rather that it contained "graphs of salary data for medical biller in the United States" and ruled that it was "inadmissible hearsay to show that medical billers in fact earned those salaries." 543 F. Supp. 2d 283, 302 (S.D. N.Y. 2008). In *Jackson v. Hartford Life & Accident Ins. Co.*, the court did not state that the website printouts were hearsay <u>because</u> it was a website printout. With respect to the *In re Katz Patent Litigation* order cited by Defendant, Plaintiff was unable to find any order or filing entered in the case on May 1, 2009. Further, the Order on Motion for Summary Judgment (Dated August 13, 2009) does not include the language quoted by Heartwood. Therefore, Plaintiffs are unable to determine the accuracy of Heartwood's characterization of the ruling. Regardless, it appears based on these cases and the cases cited by Plaintiffs, that the determination of whether a website printout is hearsay boils down to what is in the printout and what it is being submitted as evidence of, just like any other document.

authenticated). "The 'type and quantum' of evidence necessary to authenticate a web page will always depend on context." *US v. Vayner*, 769 F.3d 125, 133 (2nd Cir. 2014).

Heartwood blanketly asserts that the website printouts lack authentication and foundation under Fed. R. Evid. 602. The context of each of the Documents in Exhibit C differs, and therefore, whether any given document is properly authenticated is best evaluated on a document-by-document basis. Each of the documents includes the web address and date the web page printout was retrieved. The Hansmeier Declaration states the website printouts "are true and correct copies of websites containing estimates for barrier removal at the 889 Grand Building." This is enough to establish a *prima facie* case that the printouts are what they purport to be—true and correct copies of what was on the various websites on the date of retrieval.

### A. Concrete Solutions

The first page of Exhibit C is a screen shot from a webpage called "concrete solutions." It includes a concrete estimating list with the prices being advertised for various concrete work by the individual running the page. Accordingly, the information in the screenshot is a market quotation that is generally relied upon by the public. The screenshot is being presented as evidence of a market quote. Therefore, the screenshots fall within Fed. R. Ev. 803(17) exception to hearsay. Further, the Hansmeier Declaration is sufficient to authenticate the web printout as a true and correct copy of the marketing material displayed on the Concrete Solutions website.

### B. Discount Ramps

The second page of Exhibit C includes screenshots from a webpage called Discount Ramps. It is clear from the website screenshots that the ramp is displayed along with a price quote for the purchase of the ramp. A person in the general public interested in purchasing such a ramp would rely upon the presented price. The screenshots are being presented as evidence of a market quote for the ramp. Therefore the screenshots on the second page of Exhibit C fall under the Fed. R. Ev. 803(17) exception to hearsay. By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshots for the purposes for which they are submitted.

### C.   Home Depot- Rubber Threshold Ramp

The third page of Exhibit C includes a screenshot from a webpage associated with Home Depot. It is clear from the website screenshots that the ramp is displayed along with a price quote for the purchase of the ramp. A person in the general public interested in purchasing such a ramp would rely upon the presented price. The screenshots are being presented as evidence of a market quote for the ramp. Therefore the screenshot on the third page of Exhibit C falls under Fed. R. Ev. 803(17) exception to hearsay. By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

### D.   Home Depot- No parking sign

The fourth page of Exhibit C includes a screenshot from a webpage associated with Home Depot. It is clear from the website screenshot that the sign displayed is being presented as available for purchase and can be shipped. A person in the general public interested in purchasing such a sign would rely upon the presented price. The screenshots

are being presented as evidence of a market quote for a parking sign. Therefore the screenshot on the fourth page of Exhibit C falls under Fed. R. Ev. 803(17) exception to hearsay. By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

### E.   My Parking Sign

The fourth page of Exhibit C includes a screenshot from a webpage associated with Myparkingsign.com. It is clear from the website screenshot that the enamel post displayed is being presented as available for purchase and can be shipped. A person in the general public interested in purchasing an enamel post would rely upon the presented price. The screenshots are being presented as evidence of a market quote for an enamel sign. Therefore the screenshot on the fourth page of Exhibit C falls under Fed. R. Ev. 803(17) exception to hearsay. By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

### F.   Fix Asphalt

The fifth page of Exhibit C includes a screenshot from a webpage associated with fixasphalt.com. It is clear from the website screenshot that Fix Asphalt is providing market quotations for line striping and other parking lot services. A person in the general public interested in purchasing restriping services would rely upon the presented price. The screenshots are being presented as evidence of a market quote for line stripes and other parking lot prices. Therefore the screenshot on the fifth page of Exhibit C falls

under Fed. R. Ev. 803(17) exception to hearsay.  By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

### G.   Angie's List

The seventh page of Exhibit C includes a screen shot from a webpage associated with Angie's list. Angie's list is a market directory, and the information in the screen shot purports to be a compilation of market prices regarding the cost for a new sidewalk.  A person in the general public interested in purchasing a new sidewalk would rely upon the presented price estimates. Therefore the screenshot on the seventh page of Exhibit C falls under Fed. R. Ev. 803(17) exception to hearsay. By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

### H.   Home Depot-Entry Lever

The eighth page of Exhibit C includes a screenshot from a webpage associated with Home Depot.  It is clear from the website screenshot that the entry lever displayed is being presented as available for purchase and can be shipped. A person in the general public interested in purchasing such a lever would rely upon the presented price. The screenshots are being presented as evidence of a market quote for an entry lever. Therefore the screenshot on the fourth page of Exhibit C falls under Fed. R. Ev. 803(17) exception to hearsay.  By stating that this is a true and correct copy of the website, the Hansmeier Declaration is sufficient to authenticate the screenshot for the purposes for which it is submitted.

## CONCLUSION

Heartwood's motion to strike should be denied.

DATED:  January 21, 2016        /s/ Paul R. Hansmeier
                                Paul R. Hansmeier (MN Bar # 387795)
                                CLASS JUSTICE PLLC
                                100 South Fifth Street, Suite 1900
                                Minneapolis, MN 55402
                                E-mail: mail@classjustice.org
                                Phone: (612) 326-9801
                                *Counsel for Plaintiffs*