```
1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     Disability Support Alliance,   )  File No. 15-CV-529
4    on behalf of its members, and  )          (PAM/FLN)
     Eric Wong,                     )
5                                   )
             Plaintiffs,            )  Saint Paul, Minnesota
6                                   )  January 25, 2016
     vs.                            )  11:00 a.m.
7                                   )
     Heartwood Enterprises, LLC,    )
8                                   )
                                    )
9            Defendant.             )
     ------------------------------------------------------------
10
              BEFORE THE HONORABLE PAUL A. MAGNUSON
11             UNITED STATES DISTRICT COURT JUDGE
                       (MOTIONS HEARING)
12
     APPEARANCES
13    For the Plaintiffs:        CLASS JUSTICE PLLC
                                 PAUL R. HANSMEIER, ESQ.
14                               100 5th Street South
                                 Suite 1900
15                               Minneapolis, Minnesota 55402

16    For the Defendant:         WINTHROP & WEINSTINE
                                 JOSEPH M. WINDLER, ESQ.
17                               Suite 3500
                                 225 South Sixth Street
18                               Minneapolis, Minnesota
                                 55402-4629
19
     Court Reporter:            CARLA R. BEBAULT, RMR, CRR, FCRR
20                               316 North Robert Street
                                 Suite 146 U.S. Courthouse
21                               Saint Paul, Minnesota 55101

22

23

24       Proceedings recorded by mechanical stenography;
     transcript produced by computer.
25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4  THE COURT:  Good morning.  We have the matter of

5  Disability Support Alliance versus Heartwood Enterprises on

6  Defendant's Motion to Strike and Motion for Summary

7  Judgment.

8  Do you want to proceed, Mr. Windler?

9  MR. WINDLER:  Good morning, your Honor.

10  THE COURT:  Good morning.

11  MR. WINDLER:  Would the Court prefer that I break

12  the arguments into two separate or one total?

13  THE COURT:  Go right through it.  I think I can

14  figure that out.

15  MR. WINDLER:  Okay, your Honor.  Well, I guess

16  I'll start very briefly with the Motion to Strike.  This is

17  not a typical lawsuit at the summary judgment stage, your

18  Honor.  Plaintiffs faced a meritorious summary judgment

19  motion by my client Heartwood and they were stuck in the

20  predicament of they had not conducted any discovery.  They

21  did not issue an expert report.  They did not depose or

22  conduct any expert discovery of Heartwood's expert.

23  So they opposed Heartwood's Motion for Summary

24  Judgment with the Declaration of Peter Hansmeier.  The Peter

25  Hansmeier Declaration is the only evidence that Plaintiffs

1    have submitted that relates to all of the proposed barrier

2    removal or the readily achievableness of the same at the

3    Heartwood Offices location that's the subject of this

4    lawsuit.

5          Now, Plaintiffs bear the burden of proof on all

6    elements of their claim and it's axiomatic that they can

7    only defeat summary judgment with admissible evidence.  So

8    Plaintiffs bear the burden of proof that they must submit

9    admissible evidence that the proposed removal of any

10   architectural barriers at Heartwood are readily achievable;

11   and that, under the ADA, can be easily accomplished without

12   any undue expense.

13         Now, the problem is on the Motion to Strike Peter

14   Hansmeier was never disclosed in Plaintiffs' initial

15   disclosures.  He was never disclosed in interrogatories that

16   directly asked for the identification of all witnesses.  He

17   was never disclosed as an expert.  Under Rule 37(a)(1) of

18   the -- excuse me -- (c)(1) of the Federal Rules of Civil

19   Procedure, the Court should strike Mr. Hansmeier's

20   Declaration and not allow him to testify at trial or his

21   Declaration to be considered in connection with this summary

22   judgment motion.

23         Rule 37 says:  "If a party fails to disclose a

24   witness or evidence, it is not allowed to supply that

25   evidence at a motion or at a hearing or at trial unless the

1    failure was substantially justified or harmless."  It is

2    simply not possible that the failure was substantially

3    justified or harmless.

4         Setting aside the familiar relationship between

5    Mr. Hansmeier and Plaintiffs' counsel, Plaintiffs' responses

6    to Defendant's interrogatory responses were due in July of

7    2015.  Their initial disclosures were due months before

8    that.  Defendant submitted their expert report -- even

9    though they didn't bear the burden of proof they submitted

10   their expert report on the first expert disclosure deadline

11   so there would not be any question that the Plaintiffs would

12   have the opportunity to respond.  So on September 1

13   Heartwood submitted its expert report.  Nothing from the

14   Plaintiffs.

15        And further, the Court's pretrial order clearly

16   states that, "Any evidence or response to discovery requests

17   that has not been disclosed by the trial date except for

18   good cause shall be excluded."  This is the exact situation

19   that was before the various courts in the cases cited in

20   Heartwood's Motion to Strike.  It was the exact situation

21   before your Honor in *Fu v. Owens* which we cited to the

22   Court.  Mr. Hansmeier's Declaration should be stricken.

23   This is the trial by ambush that the federal rules

24   specifically aims to prevent.  Heartwood has been

25   prejudiced.  They have not been able to conduct discovery.

1          Further, even if the Court were to consider the

2     Declaration in the first instance, it should still be

3     stricken because it contains documents that were never

4     produced in discovery and that are unquestionably

5     inadmissible hearsay that have not been authenticated.

6     Exhibit C to the Declaration of Peter Hansmeier is made up

7     of a collection of generic printouts that by their own

8     concession -- excuse me -- Plaintiffs concede were conducted

9     with about five seconds of Google searching.  That's a quote

10    from their opposition.

11          Now, Plaintiffs try to get around the inevitable

12    conclusion that those documents are inadmissible and cannot

13    impede summary judgment by throwing a couple of Hail Marys

14    at the Court.  The first one is that Mr. Hansmeier is not

15    providing testimony.  He is just authenticating documents.

16          First, that's facially wrong when you look at

17    Mr. Hansmeier's Declaration which says that the barrier

18    removal estimates for barrier removal of the architectural

19    barriers at 889 Grand Avenue.  That's testimony.  That's

20    connecting pieces of paper that have no bearing on the case

21    to the case.  They need someone to be able to do that.

22          One way to think about this is at trial how would

23    those documents be presented to the Court?  Somebody has to

24    say what they are, and somebody has to connect them to the

25    case.  Without that, they are just documents.  So he's

1    clearly providing testimony.

2          Further, website printouts are clearly

3    inadmissible hearsay unless someone can authenticate them or

4    get them into an exception.  The fact that Mr. Hansmeier

5    Google searched them and says, This is what happens when I

6    conducted a Google search, does not get them into evidence.

7    If that was the case, website printouts would always be

8    admissible because presumably the person who did the Google

9    search could come and say, This is what I did.

10          These are the exact type of documents that were

11    excluded in the *FTC* case, in the *Jackson* case, and the cases

12    that are cited by Heartwood in their Motion to Strike.  They

13    are documents that on their face say something and they are

14    being offered for the truth of the matter asserted.  Here,

15    Plaintiffs are saying these documents contain estimates and

16    the work at Heartwood can be performed for about that cost.

17    That is classic hearsay.

18          Further, the case law that Plaintiffs cite in

19    response is not even remotely close to analogous.  The

20    *Specht* case, *Specht v. Google,* that was an analogy or,

21    excuse me, they actually excluded websites in that case.

22    They struck them from the record.  And the one that they

23    didn't was a website that contained information that the

24    Plaintiff in fact alleged in their complaint.  And then the

25    Plaintiff turned and during discovery said I don't like that

1    evidence and moved to strike the website that contained it.

2    And the Court said, No, you pled that in your complaint.

3    You're stuck with it.  Completely different.

4         And further, the *Arthur* case cited by Plaintiffs

5    is not remotely close either.  In that case the Plaintiff

6    sued Bank of America, I believe it was -- no, excuse me, P&C

7    Bank for breach of contract and consumer fraud and a number

8    of other allegations related to P&C Bank's conduct in a loan

9    that was provided, a home mortgage that was provided to the

10   Plaintiff.  And P&C Bank essentially marched up or offered

11   up an affidavit of a vice president of lending as a document

12   custodian saying these are our business records.  We rely on

13   these in the ordinary course of business and hit that

14   exception.  You can't just pull documents off the Internet

15   and say I found them on the Internet.  That's not how it

16   works.

17        And then lastly, your Honor, the exception of

18   803(17) still doesn't work.  Under 803(17), "market

19   quotations, lists, directories, or other compilations that

20   are generally relied on by the public or by persons in

21   particular occupations," can get around the hearsay

22   exceptions or are subject to a hearsay exception.  Outside

23   of the Plaintiffs' counsel's argument that because they are

24   on the Internet the public must generally rely on them,

25   there's not any testimony in the record that establishes

1    that these are the types of documents that are relied on by

2    the public or anyone else.  That's the *Crane* case that's

3    cited in Heartwood's moving papers.  It's directly on point.

4           In that case they rejected the contention that

5    803(17) applied because appellee "made no showing and

6    offered no foundation that the exhibit is generally used or

7    relied upon by the public or persons in legal or other

8    professions."

9           So for those reasons, as well as the other reasons

10   cited in our papers, your Honor, we respectfully request

11   that the Court strike the Declaration of Peter Hansmeier or,

12   at a minimum, Exhibit C to Mr. Hansmeier's Declaration and

13   award Heartwood its fees and costs associated in bringing

14   this motion.

15           THE COURT:  Counsel, you might as well go ahead on

16   the subject of the fees and costs.

17           MR. WINDLER:  Yes, your Honor.  Specifically with

18   the Motion to Strike, the Court obviously has its inherent

19   authority to award attorney's fees, and under Rule 37, if

20   there's a discovery violation and it's not substantially

21   justified, which we don't believe this is remotely close to

22   being, the Court has in its authority to enter fees and

23   costs in a reasonable amount to the moving party.  And we

24   respectfully request the Court to do so.

25           Heartwood -- this is a little bit of an odd

1    situation because I think it's technically a non-dispositive

2    motion but it's after the close of discovery and we're

3    before the Article III Judge, but I went through the step

4    anyway from requesting from Plaintiffs' counsel that they

5    voluntarily withdraw the Hansmeier Declaration but they

6    refused, so we were forced to bring this motion and incur

7    these fees.

8              So the Court has in its inherent authority to

9    award a reasonable amount, which I'm sure the Court knows

10   what that would be.  But in any event, Heartwood would be

11   happy to separately submit an affidavit of fees and costs or

12   brief the issue, whatever the Court would like on that

13   issue.

14             THE COURT:  Okay.  Why don't you go into your

15   summary judgment motion.

16             MR. WINDLER:  Now, your Honor, because we're

17   essentially flowing from one to the other, it's worth

18   pointing out, and this is kind of jumping ahead farther

19   along into the motion, but if Mr. Hansmeier's Declaration is

20   stricken or Exhibit C is stricken, summary judgment -- I

21   hesitate to say must be granted because I hesitate to tell

22   the Court it must do anything.  But I would submit to the

23   Court that there is not any admissible evidence in the

24   record, if you consider it or if you don't consider it, as

25   to the readily achievableness of the barrier removal of the

1    barriers at Heartwood Offices.

2            Anticipating one potential argument -- and backing

3    up to a little bit of back story, the original complaint and

4    Plaintiffs' interrogatory answers, I believe it's

5    Interrogatory Answer Number 5 which has been submitted to

6    the Court -- states, Just install a ramp.  Approximate cost

7    $10,000.  That's all we want.  That should cure all removal

8    issues.  That was before Plaintiffs conducted their site

9    investigation.  That was before Defendant hired an expert.

10   Those types of things.

11           Those interrogatory answers were never

12   supplemented, okay?  There was never a plan submitted to the

13   Defendant.  There was never a -- any discovery conducted or

14   analysis that connects Plaintiffs -- or excuse me,

15   Defendant's financial situation or the specifics of the

16   building to a proposed remedial plan.

17           But in any event, Mr. Wong, one of the Plaintiffs,

18   and the only Plaintiff -- the only individual Plaintiff on

19   which standing could be based, executed Plaintiffs'

20   responses to interrogatories.  I deposed Mr. Wong and on

21   pages, I believe, 64 and 65 of his deposition transcript,

22   which was attached to my supplemental declaration, your

23   Honor, he admitted he has no firsthand knowledge or personal

24   knowledge to testify regarding the installation of a ramp or

25   where the $10,000 estimate came from.  He said, "I got that

1    from my attorney."  As we all know, argument of counsel is

2    not evidence.  So that cannot be evidence either.

3          Now, taking a step back and looking at the bigger

4    picture of Plaintiffs' case, Americans with Disabilities Act

5    in the context of a place, a public accommodation, which for

6    the ADA Heartwood will concede it is because it offers --

7    our tenants are medical professionals.  For the MHRA we do

8    not concede that, and there's no evidence that we are.  It

9    requires that an individual with a disability not be treated

10   differently because of their disability.  They have to be

11   provided equal access as able-bodied individuals if the

12   disability is related to, for instance, a wheelchair.

13         Plaintiffs' case is built on the false premise

14   that every building that is not wheelchair accessible and

15   does not provide public accommodation is subject to a

16   lawsuit, and that every single case can be fixed with a

17   wheelchair ramp.  That is not the law.

18         Now, we're sitting in federal court in St. Paul.

19   Heartwood Offices address is 889 Grand Avenue.  It's

20   approximately two or three buildings west of Bread and

21   Chocolate on Grand Avenue.  It is an over 100-year-old home

22   that has been converted to office space and all of its

23   tenants are appointment only.  Okay?  There's three or four

24   steps from the public sidewalk up; and then a 25-foot walk,

25   approximately, your Honor; and then three or four steps up

1    to the front porch.  It has a beautiful front porch.  Then

2    it has an exterior entrance with a buzzer and you need to

3    buzz in your specific tenants.

4         And if you have an appointment, the tenant buzzes

5    you in and you walk into the foyer and into the building.

6    If you do not have an appointment, you do not get into the

7    building.  Whether you're Mayor Coleman, whether you're in a

8    wheelchair, whether you're a ten-year-old, none of these

9    people get in.  That's the undisputed record on summary

10   judgment.  It's all in the Bluhm affidavit, your Honor.

11        It is undisputed that Mr. Wong never made an

12   appointment with any of Heartwood Offices tenants.  And,

13   again, a little bit of background even farther -- and I

14   don't want this to be lost in the legal argument -- but even

15   if Heartwood would install a ramp and go through the immense

16   expense of running a ramp 114 feet through its front yard,

17   zigzagging so it can have the right angle from the public

18   sidewalk, that would get Mr. Wong up to the front door.  He

19   still would have to make an appointment, which he conceded

20   he never has, and he still hasn't identified what tenants he

21   wants to see.

22        And if he did make that appointment and he did

23   buzz in and he was buzzed up, he'd run into the problem that

24   Plaintiffs have not addressed at all.  He couldn't get in

25   the front door.  The foyer is too small to allow a

1    wheelchair.  That's undisputed.  That's in the Declaration

2    of Ms. Quarve-Peterson at paragraphs 7 and 8.

3              THE COURT:  I think I should tell you, I live two

4    blocks from Grand Avenue.  I'm pretty familiar with the

5    architecture of the facilities on Grand Avenue.

6              MR. WINDLER:  So even if you got in, your Honor,

7    the interior doorways are too small for wheelchair access.

8    That's not addressed anywhere in the record, okay?

9              And lastly, your Honor, the only tenants on the

10   first floor, there's two tenants:  A neurosurgeon.  He uses

11   one office to store boxes of documents and a second office

12   to conduct research and he doesn't see any tenants, that's

13   in the record; and an eyebrow waxing studio.

14             If Mr. Wong wants to see the mental health

15   professional that he has pled in his complaint, answered in

16   his interrogatory answer that he's interested in seeing,

17   those are all on the second floor.  That requires an

18   elevator.  The undisputed record is that that would cost in

19   excess of $300,000.  And Plaintiffs have not conducted any

20   analysis as to whether that's feasible for Heartwood, nor

21   have they submitted a proposal under *Colorado Cross*, under

22   the *Gathright* case and under *Speciner*.  Their speculative,

23   conclusory statement that "just put in a ramp" is not good

24   enough on summary judgment.

25             Further, your Honor, on the standing issue, we

1    believe that disability -- or the *Association* case out of

2    the Southern District of Florida, your Honor, in which a

3    Plaintiff not that similar from Mr. Wong and Disabilities

4    Support Alliance, the president of a nonprofit who was

5    wheelchair bound and the nonprofit's stated goal is to

6    protect the rights of the disabled, filed suit against Pro

7    Player Stadium, which is where the Dolphins and the Miami

8    Marlins played.  And he filed a lawsuit saying there's not

9    enough wheelchair accessible seating here.

10          And the Court dismissed some of his claims -- or

11   excuse me -- dismissed some of his allegations and didn't

12   dismiss others.  But one of the incidents in his case was to

13   a sold-out Dolphins game.  And on summary judgment the

14   Court -- it came out he never attempted to purchase a ticket

15   to a sold-out game.  And the Court said we're not going to

16   allow that to succeed because an able-bodied individual

17   walking up to the front door of a stadium, to a sold-out

18   stadium, could not get in.  So you are not being treated any

19   differently than a non-disabled person.

20          That's the same as the *Resnick-Cruise* case that

21   Plaintiffs actually rely upon.  In that case Mr. Resnick,

22   who is the same plaintiff as in the Miami Dolphins case,

23   went on the internet and looked at a picture of a cruise

24   ship and said, I don't think I can get on that cruise ship,

25   and then sued the cruise company.  And the Court said, You

1    didn't even try to get on.  You didn't purchase a ticket.

2    You didn't try to go on a trip.  You don't have standing.

3           So for those reasons, your Honor, we believe that

4    the Plaintiffs do not have standing.  It's also worth

5    pointing out that some of Plaintiffs' own cases that they

6    rely on hint at when the right case is presented where a

7    Plaintiff has not met the prerequisites to service, if you

8    will, they may not have standing.

9           In the *Sawczyn v. BMO Harris* case, which I believe

10   was before Judge Kyle -- in this District nonetheless --

11   Mr. Sawczyn filed a number of lawsuits around the country

12   essentially under the -- or under the ADA that essentially

13   ATMs throughout the country were not accessible because they

14   did not have voice activation and they were not -- didn't

15   have the braille on the keys.  And the Court held that

16   because an ATM is something that people just go to, you

17   know, when they are walking by and decide they need cash,

18   you don't need to actually have a stated plan to go back.

19   But in the right case that may happen.

20          And in the *Parr* case that the Plaintiffs rely on,

21   it was the same thing.  That is a drive-through fast food

22   restaurant.  And they said, Yeah, people drive by so we're

23   not going to hold the Plaintiffs to the *Lujan* -- United

24   States Supreme Court in *Lujan* -- standard of this

25   particularized -- they must state when specifically they are

1    going to go back.  But in situations in which appointments

2    may be necessary, where reservations need to be made, there

3    needs to be that plan to go back.

4          Further, your Honor, Heartwood believes that

5    summary judgment is appropriate because once the Court

6    establishes that barrier removal is not readily achievable,

7    we are not -- Heartwood's position is not that Mr. Wong or

8    any other disabled patron cannot access the services of the

9    Heartwood Offices tenants.  Before this lawsuit even started

10   they could.

11         What would happen is they would call and make an

12   appointment and/or go to the website, and Heartwood has an

13   alternative location three blocks away which is roughly

14   across from The Wedding Shop, your Honor, that is fully

15   wheelchair accessible, fully accessible on the inside.

16   Undisputed in the record, by the way, that it's fully

17   accessible.  That's paragraph 8 of the Quarve-Peterson

18   Declaration.  And all of the tenants of the offices at 889

19   Grand Avenue, to the extent they have a disabled customer,

20   have access to a conference room on the first floor of that

21   building to provide services.  Okay?  It's available today.

22   Therefore, the injunctive relief is not necessary.

23   Therefore, the claim has been moot.

24         And lastly, your Honor, we believe that the bias

25   offense, even if somehow the ADA and MHRA claims survive,

1   which the MHRA claim if the ADA claim survives should be

2   dismissed because Plaintiffs have not provided any

3   admissible evidence that Heartwood Offices is a place of

4   public accommodation and under the statute is not a default

5   place of public accomodation.

6           That somehow if the bias offense survives or the

7   other two survive, the bias offense should be dismissed

8   because under 611A.79 of the Minnesota Statutes, a bias

9   offense requires bias.  It requires that you be treated

10  badly because of...whatever your characteristic is.  It's

11  the *Seivers versus the City of Minneapolis* case.  It's the

12  *La Crosse* case.

13          And Plaintiffs will argue that no, no, no, a lot

14  of human rights claims have "because of".  But this statute

15  is worded differently.  This requires that conduct that

16  would constitute a crime, which it's not a strict liability

17  offense to start with, and was committed because of the

18  victim's actual or perceived disability.  If there was a

19  strict liability offense, there would be no need for a

20  "perceived" in the statute, your Honor.  What could a

21  Defendant perceive?  It wouldn't matter.  It would only be

22  actual.

23          So for all of those reasons, your Honor, we

24  believe that summary judgment is appropriate.  That this

25  case stop.  The trial is unnecessary.  And that, again, we

1    respectively request under the ADA and the Court's inherent

2    authority that the Court consider awarding Heartwood its

3    fees and costs.  Under the ADA often the Plaintiffs seek

4    fees and costs, but under the statute it's a prevailing

5    party statute.  So we believe if summary judgment is

6    granted, Defendant should be awarded their fees and costs.

7            Thank you, your Honor.

8            THE COURT:  Okay.  Thank you very much,

9    Mr. Windler.

10           Sir.

11           MR. HANSMEIER:  Good morning, your Honor.  May it

12   please the Court:

13           Like the Defendants, I'll start with the Motion to

14   Strike.  I'll touch on that relatively briefly and then I'll

15   move towards the substance of the Defendant's Motion for

16   Summary Judgment.

17           With respect to Defendant's Motion to Strike, I

18   want to clarify one point that the Defendant misrepresented

19   to the Court.  Defendant suggested to the Court that the

20   Plaintiffs took no discovery whatsoever.  And they said that

21   categorically and unequivocally.  And that is simply false.

22   The Plaintiffs conducted -- what we do is in every case that

23   we file, the Plaintiffs in the case is filed when they bring

24   a claim under the Americans with Disabilities Act, the

25   Minnesota Human Rights Act and other statute statutes, they

1    conducted a site inspection.  During that site inspection,

2    they took measurements.  They took focused measurements.  We

3    weren't measuring everything on that premises but we

4    measured the steps, we measured the path of travel which was

5    alleged in the complaint.  We produced dozens upon dozens of

6    photographs of that site inspection and all of those

7    photographs were produced to Defendants during discovery.

8              A point that Defendants gloss over in their Motion

9    to Strike is that there's that exception to the Rule 37

10   standard of identifying witnesses during initial disclosures

11   or during discovery and that's the question of prejudice.

12   What Defendants have not explained to this Court, what

13   Defendants have not explained in their briefing, is what

14   prejudice have they suffered by not getting the site

15   inspection photos authenticated by Angela Van Den Hemel, who

16   was disclosed during initial disclosures, versus Peter

17   Hansmeier --

18             THE COURT:  Counsel, get to the subject matter.

19   That's not the subject matter.

20             MR. HANSMEIER:  So the subject matter is there's

21   no prejudice, and we have not seen the Defendants make a

22   showing of prejudice.

23             And finally, with respect, the request that

24   Defendants made in this case is overbroad.  If the Court is

25   inclined to strike whether it's Exhibit C or some other

1    aspect of the Hansmeier Declaration, there is no basis for

2    striking the photographs, for example, attached at Exhibit A

3    and Exhibit B to the Hansmeier Declaration as all of those

4    photographs were produced to Defendants during discovery.

5          Finally as for Defendant's arguments regarding the

6    hearsay nature of the website attachments to the Hansmeier

7    Declaration, the Hansmeier Declaration does not say I went

8    to Google, did a search, and then I pulled up this website.

9    What the Hansmeier Declaration has in substantive part is

10   printouts from online stores which the public is -- for

11   example, Home Depot -- which the public does rely on in

12   terms for flotations for prices for items that are sold by

13   those stores.

14         And those documents are sufficiently reliable to

15   determine what the price of, for example, a barrier

16   threshold removal ramp, or for that matter signage, or for

17   that matter a temporary ramp would be if you went to one of

18   the nation's leading retailers that sells these products.

19   So for the Defendant to blanketly assert that no website you

20   pull up, that no retailer you go to to pull up a price

21   constitutes an exception to the generalized rule against

22   hearsay is simply not consistent with the decisions that

23   Plaintiffs cited in their Motion to Strike Opposition.

24         And the final point I would emphasize is that

25   there's hardly any difference between the case that we

1    presented to the Court or the circumstances presented in

2    this case and the circumstances that were present in the

3    *Arthur Leonard* case that was cited from the District of

4    Massachusetts where the person who is not disclosed during

5    the initial disclosure is not being used to testify but is

6    instead being used to authenticate documents that were

7    provided to Defendants during discovery.

8             Turning to the substance of Plaintiffs' Summary

9    Judgment Motion, I think the key difference between

10   Plaintiffs and Defendants in this case is the understanding

11   of the parties of when barrier removal must occur.

12   Defendants have submitted evidence to this Court in

13   connection with their motion that says, Your Honor, we know

14   there are approximately $300,000 worth of barriers at the

15   premises that could be removed.  Some of them are very cheap

16   to remove.

17            For example, the one-and-a-half-inch threshold

18   described in the bid from the -- in connection with the ramp

19   bids, the Beyond Barriers bid, the $11,000 bid.  They said,

20   We know you have this one-and-a-half-inch change in level at

21   the main entrance.  Sure, we can put in the ramp but we're

22   not going to take care of that.

23            That's the sort of barrier that's very inexpensive

24   to remove as a matter of common sense and as the Hansmeier

25   Declaration establishes.  But then you have very expensive

1    barriers in the premises, for example, the elevator, which

2    would cost -- and we don't doubt that -- hundreds upon

3    hundreds of thousands of dollars.

4         Now, as you read Defendant's brief, what you are

5    left with the conclusion of is their interpretation of law

6    is to say, Well, if removal of every single barrier at the

7    premise is aggregate not readily achievable, then we don't

8    have to go through and remove a single barrier.  But that

9    position has no support in the law.  It has no support in

10   the U.S. Department of Justice technical guidance, and it

11   has no support in District Court opinions interpreting Title

12   38a as it applies to readily achievable barrier removal or

13   as it applies to what a Defendant is required to do.

14        Now the Defendant in this case is trying to

15   mischaracterize the basis for this suit.  When they describe

16   what we're bringing the suit under, they say you're bringing

17   the suit because we're not providing you equal access and

18   we're providing you equal access because you didn't make an

19   appointment, etcetera.  But the form of discrimination

20   Plaintiffs are alleging in this case is failure to remove

21   architectural barriers where that removal is readily

22   achievable.

23        Now, some of the barriers at Defendant's premises

24   cannot be removed in a readily achievable matter.  That

25   point has never been contested.  For example, Defendant

1    raises the red herring issue of the hallway is too narrow.

2    Well, nowhere in Plaintiffs' discovery, nowhere in

3    Plaintiffs' complaint do we say could you please widen that

4    hallway.

5            THE COURT:  You have to wait for that for the next

6    lawsuit, I suppose.

7            MR. HANSMEIER:  Absolutely not, your Honor.  That

8    clearly would not be readily achievable to take a

9    hundred-year-old building and widen the hallways.

10           But what Defendants are required to do in every

11   case, no matter what and without exception, is to take some

12   sort of inventory of the aspects of their facility that do

13   not conform to the accessibility guidelines drafted by the

14   United States Department of Justice and remove those where

15   removal is readily achievable.

16           Now, this is not a case where the Defendant has in

17   a good faith manner gone through and said, Well, look, we

18   got this doorknob and we can easily replace this doorknob.

19   That's 24 bucks.  Or we have a lack of signage at the

20   various entrances -- which, by the way, wasn't anything the

21   Plaintiffs demanded in their interrogatory responses.  We

22   could put up some signage saying go around to this door or

23   go over there.  Or where they have taken any measure beyond

24   simply saying, Well, it's too expensive to put an elevator

25   in; so therefore, we're not going to worry about the

1    doorknob, we're not going to worry about the signage, we're

2    not going to worry about the single step.  Not the three

3    steps from the sidewalk leading to the private sidewalk, but

4    the single step.  We're not going to worry about the cross

5    slope on that sidewalk that goes sideways.  We're not going

6    to worry about anything.  We're just going to do nothing and

7    say that it's too expensive to do everything.

8           This is a defense that I've heard several times in

9    the past that I have addressed several times in the past,

10   and that Plaintiffs have prevailed on every single time in

11   the past because there's no support in the law that stands

12   for the proposition of we'll just do nothing.

13          Now what the Defendant has done in this case is

14   say, Well, look, we've got this alternate location.  But the

15   law is very clear on when the alternate location solution is

16   acceptable.  The first step is you have to engage in

17   barrier -- every single barrier removal that you can, so

18   long an it's readily achievable.

19          Step two, if you want to get there -- and the only

20   way you do get there, by the way, your Honor, is if for some

21   reason the Defendant's premise for the public accommodation

22   would pose a substantial threat to the health or safety of

23   an individual, which there's no showing of in the record

24   here -- then you can make the alternate location accessible

25   or available.

1        But when you make the alternate location

2    available, you still -- it's not sufficient just to say

3    there's another place and leave it to people to guess that

4    there's this alternate location that's available.  And at

5    the outset of this suit there's no indication, whether it

6    was on Heartwood's website or whether it was at Heartwood's

7    premises in the form of signage or information or anything

8    else, that there was this alternate location available.

9        Now, Heartwood says, Well, you could have called

10   to make an appointment.  And potentially at that appointment

11   you could affirmatively disclose you have a disability,

12   explain your disability, and hopefully the tenant is aware

13   of the availability of this alternate location.  However,

14   that's not what the ADA allows for.  The ADA says if you're

15   going to have only one entrance that's accessible, then you

16   need signage.  And reasoning by extension, there needs to be

17   some indication at the premises that there is a suitable

18   alternative available location.  None of the signage that's

19   identified in Heartwood's brief or none of the other

20   indication -- indicating factors was provided at the outset

21   of the suit.

22       So you can imagine that a person like my client

23   Eric Wong going to the premises saying, Hey, this place is

24   entirely inaccessible to me, but maybe I should call and

25   make an appointment anyway.  It's an illogical way of

1    reading the ADA and would be something that would be very

2    easy for them to fix to put up appropriate signage in the

3    appropriate location, which is by the door and not below a

4    bush, so that people with disabilities -- if the alternate

5    location solution is the alternate way this case is

6    resolved, it's at least publicized enough in a way that is

7    reasonably calculated to allow people with disabilities to

8    understand that there is this alternative location.

9            Very briefly on the bias offense.  This is an

10   issue I have briefed many times.  I'm very familiar with all

11   the cases.  And I think just one of the points that

12   Defendants consistently gloss over with respect to the bias

13   offense is that there are crimes that are being -- that are

14   capable of being committed for reasons other than the

15   person's protected status, a person with a disability.  This

16   is not one of those crimes.  The Minnesota Human Rights Act

17   provides protection to people with disabilities at public

18   accommodations and a violation of the public accommodations

19   provision of the Minnesota Human Rights Act is a strict

20   liability violation of the law.  It is a misdemeanor much as

21   a violation of the Minnesota Building Code is a misdemeanor.

22           And the additional language in the Minnesota Human

23   Rights Act -- or I'm sorry -- the 611A.79 statute relating

24   to because of a person's status as a protected individual,

25   refers to cases where it is capable of being committed for

1    another reason.

2              And the key language I'd like the Court to focus

3    on in the *Seivers versus City of Minneapolis* case is where

4    Judge Doty describes how somebody -- or in that case how the

5    Plaintiff failed to establish the bias offense.  In that

6    case Judge Doty said the Plaintiff failed to establish the

7    bias offense because he failed to show evidence of animus,

8    which I think is what the Defendant is referring to here,

9    and because he failed to show that the crime was committed

10   because of the person's protected status.

11             So animus is not a requirement.  It's a

12   necessary -- or I'm sorry -- it's a sufficient but not

13   necessary showing that someone might make.

14             And finally, your Honor, just turning back to the

15   requirement that someone make an appointment.  There's no

16   support that I am aware of in any District Court decision

17   nationwide under the ADA that an appointment is required.

18   The *Resnick* case referred to by the Plaintiffs -- well,

19   there are two *Resnick* cases.  The first one is a case where

20   a Plaintiff was unable to get into a football game or a

21   baseball game because the game was sold out.

22             We are not suggesting that Mr. Wong be afforded

23   special treatment in this case.  What we are requesting is

24   that Mr. Wong be afforded the treatment that he is entitled

25   to under the ADA, which is that Defendant engage in all

1    readily achievable barrier removal.  Defendant's argument is

2    somewhat like a Plaintiff making an argument, Well, you had

3    the sufficient number of parking spaces in your parking lot

4    but they were full when I got there so, therefore, I'd like

5    you to have more.  That's not the argument we're making

6    here.  We're saying that Defendant has failed to remove

7    barriers where removal is readily achievable even in matters

8    where it's as simple as a doorknob.

9              And the other case cited by the Defendant is the

10   one that we cited with regard to the cruise ship.  And the

11   reason the Plaintiffs' case in that case failed was because

12   the website photographs were not sufficiently reliable to

13   serve as a substitute for actually visiting the cruise ship.

14   That's the reason that case failed; not because he didn't

15   make an appointment.  The District Court in that case fully

16   contemplated that not visiting a public accommodation in

17   lieu of seeing photographs and expert pictures and

18   measurements and everything else could be sufficient, but

19   the substitute knowledge of the premises has to be

20   sufficiently reliable.  And that's what that case stands

21   for.  Not that someone is required as a matter of law to

22   make an appointment.

23             And I've read a lot of ADA cases.  I've seen a lot

24   of ADA cases cited against my client and I've never seen a

25   Court require an appointment, particularly where the ADA

1    specifically provides that Plaintiffs are not required to

2    make a futile gesture in furtherance of bringing that ADA

3    claim.

4            Unless your Honor has any questions, my argument

5    is concluded.

6            THE COURT:  Thank you.

7            MR. WINDLER:  Your Honor, may I very briefly

8    respond?

9            THE COURT:  Sure.

10           MR. WINDLER:  One second.  Paul is a little bit

11   taller than I am.

12           Okay, your Honor.  I will be brief.

13           On the Motion to Strike, Plaintiffs first -- and I

14   want to correct the record because Mr. Hansmeier is 100

15   percent correct.  They did do a site inspection.  However,

16   they did not conduct typical discovery in the form of

17   interrogatories, documents, depositions.  I apologize for

18   that.

19           But the lack of prejudice is candidly a shocking

20   argument for Plaintiff to make.  We have a witness who has

21   never been disclosed attaching documents.  Exhibits C is the

22   one I'm going to focus on.  Exhibit C, not one page was

23   produced.  What more prejudice could there be in an ADA

24   disability case than when 100 percent of the evidence the

25   Plaintiffs have as to readily achievableness, the witness

1    wasn't disclosed and documents weren't produced, and no

2    expert report?  There's extreme prejudice.

3           And for Plaintiffs to claim that, Well, anybody

4    could have attached these documents, as an initial matter,

5    respectfully, it's not Heartwood's job to do Plaintiffs'

6    work.  Heartwood has a right to rely on initial disclosures

7    and interrogatory answers.  To the extent that the wrong

8    person signed a declaration, that is not Heartwood's

9    problem.

10           To the extent that Plaintiffs take issue with my

11    statement that essentially they are claiming that anybody

12    can run these Google searches and they are just website

13    printouts, from their brief, "It would take Heartwood's

14    counsel five seconds to conduct a similar Google search and

15    determine the documents in Exhibit C accurately reflect

16    the..."  Okay?

17           All these are are a simple Google search.  That is

18    not testimony that connects the parts and pieces and labor

19    estimates -- they are not even bids -- to the work that

20    needs to be performed.

21           Plaintiffs also do not in any way address the fact

22    that they attached Angie's List ads or printouts of laborers

23    in Indiana and Philadelphia for work that's purportedly

24    going to be done in St. Paul.

25           And lastly, your Honor, on the Motion to Strike,

1   Peter Hansmeier cannot say, or at least he didn't say, that

2   the information contained in the document is true and

3   correct.  That's what makes it hearsay.  He can say he ran

4   the piece of paper off his printer, but there's words on

5   that piece of paper.  That's what makes it hearsay.  He

6   can't attest to any of it.

7          On the Motion for Summary Judgment, Plaintiffs are

8   just -- they are wrong.  When it comes to -- they are

9   essentially suggesting that Heartwood must do everything

10  that's cheap, whether it gets Mr. Wong or any other

11  wheelchair -- person in a wheelchair closer to getting

12  services or not.  And then they have to open up the

13  alternative location.  That's not what happens.

14         Under the ADA if making the location available to

15  the disabled, removing the architectural barriers to make

16  sure that the Americans with Disabilities Act is followed,

17  meaning that disabled individuals have access to the

18  services inside, if that is not readily achievable, you can

19  have an alternative location.  We have one three blocks

20  away.  There's no evidence in the record there's anything

21  wrong with that facility.  The only evidence in the record

22  establishes that the removal of the barriers is not readily

23  achievable.

24         On that point I direct the Court to the *Speciner*

25  case.

1          THE COURT:  What case?

2          MR. WINDLER:  The *Speciner* case which is cited in

3     our brief.  I have it right here, your Honor.  It's out of

4     the District of Maryland.  And in the *Speciner* case a

5     wheelchair user wanted to get into a bank in an historic

6     building; and the Court found no ADA violation because the

7     bank provided disabled customers with a reasonable

8     alternative service accommodation including an alternative

9     location three blocks away.

10          Further, the Court found that Plaintiffs' proposed

11     ramp design was "merely conceptual.  There was no meaningful

12     cost estimates."  Further, even if the Plaintiff had met

13     their burden of production, the Defendant overcame it by

14     proving that it wasn't readily achievable.

15          So I think that case is directly on point to

16     respond to Plaintiff.

17          Further or lastly on the standing issue, your

18     Honor, I would direct the Court, it's a case cited in our

19     brief that is in accordance with the Dolphin stadium case,

20     *Gathright-Dietrich versus Atlanta Landmarks* out of the

21     Northern District of Georgia.  And basically what that case

22     is is a movie theater case and a wheelchair case in the

23     sense for not having enough wheelchair seating.

24          And the Court says -- would allow the Plaintiff to

25     go forward but we want to be real clear you're going to have

1    to develop evidence in the record to establish whether is

2    there enough seating in each theater because there's not

3    enough seating under the ADA, or is it because all the

4    wheelchair seats are sold out and you can't get in.  Meaning

5    you couldn't get a wheelchair ticket inside.  It's the same

6    thing.  You need -- if there's a prerequisite, you got to

7    meet the prerequisite.

8         On the bias offense, I believe Mr. Hansmeier made

9    my argument.  What he said was those cases, if there can be

10   another reason for the conduct, there is here.  You need an

11   appointment.  That's the reason you didn't get in.  Okay.

12   In the *Seivers* case, I believe it was the *Seivers* case, it

13   was a drug dealer who brought an excessive force charge

14   against the City of Minneapolis and claimed it was because

15   he was African-American.  And the Court said no, it was

16   because or you were arrested and you were treated the way

17   you were because you were fighting the police when they

18   arrested you for dealing drugs.  The same here.  You didn't

19   get in because you didn't have an appointment.

20        Mr. Hansmeier's comment that Judge Doty held that

21   animus is sufficient but not necessary begs the question as

22   to sufficient for what?  If it's strict liability, that

23   wouldn't have even been an issue.  To put it in that case,

24   if the Plaintiff, who was the drug-dealing defendant was

25   African-American, he would automatically have a bias

1    offense.  They wouldn't have looked at the police officer's

2    animus at all.

3         Lastly, your Honor, my client has acted in good

4    faith every step along the way.  They have unfortunately

5    been forced to incur thousands of dollars in legal fees and

6    expert costs for standing up for their behavior and not just

7    caving.  And enough is enough.  They have done the right

8    thing.  It hurts them to be accused of discriminating

9    against those that are disabled.  They have done everything

10   they can to make sure that all of their tenants provide

11   services to the disabled.  And enough is enough.  It's time

12   for this case to end.  The undisputed and admissible

13   evidence establishes that summary judgment is appropriate.

14        Thank you, your Honor.

15        THE COURT:  Thank you.

16        Counsel, with respect to this matter, the

17   Defendant's Motion to Strike will be granted.  The

18   Defendant's Motion for Summary Judgment will be granted.  I

19   will issue an opinion with respect to those matters.  It

20   will not be inconsistent with this statement.  I would

21   invite from the Defendant an appropriate affidavit in

22   support of attorney's fees and costs.

23        And with that, the matter is concluded.

24        (Court adjourned at 11:44 a.m.)

25                    *    *    *

```
 1

 2

 3              I, Carla R. Bebault, certify that the foregoing is

 4      a correct transcript from the record of proceedings in the

 5      above-entitled matter.

 6

 7

 8              Certified by:   s/Carla R. Bebault
                                Carla Bebault, RMR, CRR, FCRR
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```