## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Disability Support Alliance
and Eric Wong,                                      Case No. 15-cv-529 (PAM/FLN)

               Plaintiffs,

v.                                                          **MEMORANDUM AND ORDER**

Heartwood Enterprises, LLC,

               Defendant.

_____

      Plaintiffs Disability Support Alliance ("DSA") and Eric Wong brought this action against Heartwood Enterprises, LLC ("Heartwood") alleging that Heartwood violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A .01, et seq., by failing to make its office building wheelchair accessible.  This matter is before the Court on Heartwood's Motion to Strike and Motion for Summary Judgment.  For the reasons that follow, Heartwood's Motions are granted.

## BACKGROUND

      Defendant Heartwood owns an office building located at 889 Grand Avenue in St. Paul ("889 Grand").  (Bluhm Decl. ¶ 3.)  Heartwood is the building's landlord—it does not provide any goods or services at 889 Grand.  (Id. ¶ 3.)  Originally, when it was built in 1910, 889 Grand was used as a residence.  (Id. ¶ 5.)  It was later converted to an office building.  (Id.)  According to Heartwood, the City of Saint Paul enacted a new zoning designation for Grand Avenue to preserve the street's "historic charm."  As a result,

residences on Grand Avenue could be converted to businesses, but the properties could not be changed significantly on the outside.  889 Grand has several tenants, all of whom see patrons by appointment only.  (Id. ¶ 12.)  The building's main doors are kept locked, and patrons must use the building's intercom to gain entry.  (Id.)

The DSA is a Minnesota nonprofit corporation whose members are people with disabilities.  (Wong Decl. ¶ 16.)  Plaintiff Eric Wong is legally disabled and is a DSA member.  (Id.)  Wong must use a wheelchair outside of his home.  (Id. ¶¶ 3, 7.)  On December 3, 2014, Wong visited 889 Grand to meet with tenant Dr. Jeffrey Raich to learn about his therapy practice.  (Windler Decl. Ex. B (Wong Dep.), 59:5-60:7.)  However, Wong did not have an appointment and had not contacted Dr. Raich or any other tenant businesses at 889 Grand.  (Windler Decl. Ex. A at Interrog. Answer No. 4.)

When Wong arrived at 889 Grand, he discovered that the building does not have any accessible entrances or signage indicating an alternate accessible entrance.  (Wong Decl. ¶ 9.)  Four steps, each one approximately seven inches deep, lead to the main entrance.  (Id. ¶ 8.)  Additionally, there was a seven-inch step separating the public sidewalk from the private sidewalk leading to the building's main entrance.  (Id.)  Wong did not attempt to enter the building—he stayed in a car parked on the street outside of 889 Grand.  (Id., Ex. B.)  Wong says that he plans to return to 889 Grand in the future, but currently cannot enter the building's main entrance.  (Wong Decl. ¶ 12, 13.)

The first time Wong communicated with Heartwood was on December 4, 2014, when he sent Heartwood a letter asserting that 889 Grand was inaccessible in violation of the ADA.  (Bluhm Decl. ¶ 15.)  The next time Heartwood heard from Wong was when he

and the DSA commenced this action on January 23, 2015.  (Id. at ¶ 19.)  Plaintiffs seek

(1) a declaratory judgment that 889 Grand's facilities are not compliant with the ADA or

MHRA, (2) a permanent injunction ordering Heartwood to make "all readily achievable

alterations to its facilities" to remove architectural barriers at 889 Grand, (3) civil

penalties payable to the state under the MHRA, (4) damages payable to Plaintiffs under

the MHRA, and (5) costs and attorney's fees.  (Compl. (Docket No. 1-1).)

After receiving Wong's letter, Heartwood solicited bids for a wheelchair-

accessible ramp at 889 Grand from three different contractors.  (Bluhm Decl. at ¶ 20.)

The bids ranged from $11,987 to $22,621.  (Id. Exs. B-D.)  Heartwood's expert testified

that Heartwood would have to incur additional costs not reflected in the bids, including,

for example, installing proper footings on the proposed ramps and creating an accessible

route to the ramps.  (Quarve-Peterson Decl., ¶ 5.)  Heartwood's expert estimated that a

ramp located behind 889 Grand would cost $35,000, and a ramp at the front of the

building would cost over $100,000.  (Id. at ¶ 6.)  Heartwood claims that it has lost money

every year for the last six years, and that based on these estimates, making 889 Grand

fully wheelchair accessible is much too expensive to be feasible.  (Id. at ¶ 7.)

Heartwood adds that the tenant spaces would remain inaccessible even if it

installed a ramp, because the entry vestibule and internal doorways are too small for a

wheelchair, there is no bathroom on the main level, and there is no elevator access to the

other two levels, which are the only levels that house mental health professionals.  (Id.)

For this reason, Heartwood has for the last several years used an alternative location

where any tenant of 889 Grand can see disabled patrons.  (Bluhm Decl. ¶ 24.)  That space

is located approximately three blocks away from 889 Grand, and is fully wheelchair accessible.  (Id.)  A sign outside 889 Grand informs patrons that this space is available. (Id.)

## DISCUSSION

### A.    Motion to Strike

Heartwood first moves to strike the Declaration of Peter Hansmeier, brother of Plaintiffs' counsel Paul Hansmeier.  When they submitted their Rule 26(a)(1) disclosures, Plaintiffs did not disclose Peter Hansmeier as a witness.  (Docket No. 34, ¶ 2 & Ex. 1.) During discovery, Heartwood specifically requested Plaintiffs' evidence of the feasibility of making 889 Grand accessible under the ADA.  In response to Heartwood's discovery requests, Plaintiffs stated that the architectural modifications they propose would cost approximately $10,000.    After  discovery  closed,  Plaintiffs  filed  their  response  to Heartwood's Motion for Summary Judgment, including in their response the alleged feasibility evidence in the form of Hansmeier's Declaration and the documents attached to it.

The exhibits attached to Hansmeier's Declaration include pictures and screenshots from contractor websites, retailers, and the website Angie's List, which rates service providers.  Plaintiffs have not described how they obtained the printouts, nor have they established that the pictures and website printouts reflect work that can be performed at 889 Grand.  Moreover, Plaintiffs have not indicated that the contractors identified in the printouts would perform the modifications for the amount estimated in the Declaration.

Under FRCP 26(a)(1) each party must, without waiting for a discovery request, provide to the other party "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Where a party fails to make such a disclosure or to supplement an earlier response, it may not "supply [that] evidence on a motion, at a hearing, or a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Eighth Circuit has held that "a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the court's pretrial orders, and such a ruling will be reversed on appeal only for abuse of discretion."  Brooks v. Union Pac. Rd. Co., 620 F.3d 896, 899 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted).  This Court's own Pretrial Scheduling Order warns the parties that evidence "responsive to a discovery request that has not been disclosed before the trial date, except for good cause shown, shall be excluded from evidence at trial."  (Docket No. 12)

Heartwood argues that the Declaration should be stricken because Peter Hansmeier was never disclosed as a fact witness or an expert witness in Plaintiffs' initial disclosures, or in response to Heartwood's interrogatories or production requests. Plaintiffs had until November 1, 2015 to supplement discovery responses, but did not. Heartwood asserts that even if the Court does not strike the Declaration, the evidence attached to it is inadmissible hearsay and lacks authentication and foundation.

Heartwood also requests that the Court award its costs and attorney's fees.  Under Rule 37, "the court, on motion and after giving an opportunity to be heard: (A) may order

payment of the reasonable expenses, including attorney's fees, caused by the failure."
Fed. R. Civ. P. 37(c)(1).  Heartwood argues that Plaintiffs' failure to disclose Peter was
unjustified and extremely prejudicial toward Heartwood.  If Plaintiffs had followed the
requirements set out in the Rules, Eighth Circuit precedent, and this Court's scheduling
order, Heartwood contends, Heartwood would not have been compelled to file its Motion
to Strike.

Heartwood is right.  Plaintiffs' Initial Disclosures and discovery responses were
due over six months ago.  Plaintiffs did not disclose Hansmeier as a potential witness
during discovery, nor did they supplement their responses.  Plaintiffs have given the
Court no reason to believe that their failure to disclose Hansmeier as a witness was
substantially justified or harmless, especially in light of the fact that Heartwood has not
had the opportunity to depose Hansmeier.  Therefore, Plaintiffs may not rely on the
Hansmeier Declaration to defeat summary judgment.  Heartwood's Motion to Strike is
granted, and Plaintiffs shall pay Heartwood's costs and attorney's fees associated with
bringing its Motion to Strike.

**B.**     **Motion for Summary Judgment**

**1. Standing**

Heartwood first argues that Plaintiffs lack standing to bring this action, and
therefore the Court lacks jurisdiction and need not address the merits of their claims.
"[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."
Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc., 424 F.3d 840, 843 (8th Cir.
2005) (quoting Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002)).

6

"Therefore, a standing argument implicates Rule 12(b)(1)." <u>Faibisch</u>, 304 F.3d at 801. As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing that they have standing to litigate their claims. <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992). "The existence of standing is determined as of the date suit is filed." <u>Moyer v. Walt Disney World Co.</u>, 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000) (citing <u>Lujan</u>, 504 U.S. at 569 n. 4).

To establish standing, Plaintiffs must show that (1) they suffered an injury in fact, that is "concrete and particularized," not "conjectural" or "hypothetical," (2) Heartwood's actions caused Plaintiffs' injury, and (3) "that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 560-61 (citations omitted) (internal quotation marks omitted). Because Plaintiffs seek injunctive relief, they must also demonstrate a "real and immediate threat of future injury." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983).

### i.    Wong's Standing

Heartwood argues that Wong cannot show any injury in fact because, first, he has not presented evidence that he visited 889 Grand and was unable to access it because of known architectural barriers that Heartwood had no intention of remedying. Wong does not contend that he attempted to enter 889 Grand—he observed the building from the street. Wong also did not have an appointment with Dr. Raich and could not have entered the building even if he was able-bodied, because individuals who appear at 889 Grand unannounced are denied entry. Second, Heartwood argues, Wong is not entitled to injunctive relief because he cannot prove that he will visit 889 Grand in the immediate

future if the architectural barriers are removed, and he has not alleged that he has any definite plans to return to the building.

As a person with a disability, Wong is not required to "engage in a futile gesture" by attempting to approach or enter 889 Grand if he "has actual notice" that Heartwood "does not intend to comply with [the ADA]."   42 U.S.C. § 12188(a)(1); see also Sawczyn v. BMO Harris Bank Nat'l Ass'n, 8 F. Supp. 3d 1108, 1112-13 (D. Minn. 2014) (Kyle, J.) ("Plaintiffs are not required to make futile attempts at using noncompliant public accommodations in order to sue under the ADA, . . . nor should they be required to do so for standing purposes.").   Wong uses a wheelchair and could see from the street that architectural barriers would prevent him from approaching and entering 889 Grand. Based on the pleadings and the record, for the purposes of the ADA, Wong has demonstrated that he attempted to access 889 Grand and has standing to bring a claim under the ADA.

Because Wong did not actually attempt to approach or enter 889 Grand, to demonstrate standing to seek injunctive relief, Wong "may demonstrate an 'injury in fact' by establishing his intent to return to the noncompliant public accommodation." Id. at 1111.   Based on the record before it, the Court concludes that Wong is deterred from visiting 889 Grand until architectural barriers are removed, and because he testified that he wishes to visit the building in the future, he has suffered an injury in fact.  "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."   Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1137 (9th Cir. 2002).  Wong has standing to bring this action.

8

ii.     **DSA Standing**

Heartwood contends that aside from Wong, no other DSA member has standing to maintain this suit, because only Wong asserts a desire to visit 889 Grand, so only Wong could potentially have standing.  According to the Supreme Court, where an organization itself has not suffered any direct and palpable injury, it still has standing to sue on behalf of and as a representative of its members when

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Washington State Apple Adv'g Comm'n, 432 U.S. 333 (1977).

Plaintiffs have provided very little information about the DSA and its members. Plaintiffs simply state that the DSA "is a Minnesota nonprofit corporation," that "[i]ts members are people with disabilities," and that "[i]ts mission is to eliminate [disability] discrimination."  (Pls.' Opp'n Mem. 6.)  The DSA fails to meet the third prong.  "To meet standing requirements for associational standing, the participation of individual members of the organization must not be required."  Cmty. Stabilization Project v. Cuomo, 199 F.R.D. 327, 333 (D. Minn. 2001) (Montgomery, J.) (citing Hunt, 432 U.S. at 343).  At this stage of the proceedings, after discovery has closed, the Court knows no more about the DSA and its members than it did before discovery began.  The extent of injury to individual DSA members requires individualized proof, because some disabled people may be able to access 889 Grand without the need for removal of architectural barriers.  Plaintiffs have not asserted that all DSA members depend on a wheelchair for

mobility, nor whether all members are physically disabled, rather than disabled in some other way that does not affect mobility.  The DSA has failed to meet the requirements for associational standing, and therefore has no right to sue Heartwood.

## 2. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## 3. Feasibility of Removing Architectural Barriers

Title III of the ADA, 42 U.S.C. § 12181, et seq., prohibits entities providing a public accommodation from discriminating against individuals with a disability.  Claims

under the ADA and the MHRA are analyzed in the same fashion.  Wong v. Muddy Pig, Inc., No. 14cv3334, 2015 WL 225231, at *1 (D. Minn. Jan. 16, 2015) (Kyle, J.).[1]  Title III defines actionable discrimination as failing to "ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . unless the entity can demonstrate that taking such steps would . . . result in an undue burden."  42 U.S.C. § 12182(b)(2)(A)(iii).  The ADA also defines discrimination as "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable;" or, if removal is not readily achievable, "failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."  Id. § 12182(b)(2)(A)(iv)-(v).  889 Grand is an "existing facility" under the ADA.

To avoid summary judgment and meet their burden of production, Plaintiffs must "make a sufficient showing that barrier removal is readily achievable."  Gathright-Dietrich v. Atlanta Landmarks, Inc., 435 F. Supp. 2d 1217, 1226 (N. D. Ga. 2005).  Title III defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  A number of factors should be considered in determining whether an accommodation is "readily achievable" for a business, including:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such

---

[1]    The plaintiff in Wong v. Muddy Pig, Inc. is the same Eric Wong in this action. Wong is a frequent litigant in this Court regarding ADA accessibility.

facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Colorado Cross Disability Coal. v. Hermanson Family L.P. I, 264 F.3d 999, 1002 (10th Cir. 2001) (citing § 12181(9)(A)-(D)).  The MHRA similarly takes into consideration "the cost, nature of needed alteration, available resources, and other analogous factors to determine whether a place of public accommodation can readily make 'reasonable accommodation' for disabled persons."  Wong, 2015 WL 225231 at *3 (citing Minn. Stat. § 363A.11, subd. 1(2)).

If Plaintiffs present evidence "tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances," Heartwood then "bears the ultimate burden of persuasion that barrier removal is not readily achievable."  Colorado Cross Disability, 264 F.3d at 1002-03.  Modifications that are "unreasonably expensive and aesthetically destructive" are not readily achievable, nor is barrier removal that "would threaten or destroy the historic significance of the Building." Speciner v. Nationsbank, N.A., 215 F. Supp. 2d 622, 630, 631 (D. Md. 2002).  "Cost and economic and operational impact" also factor in.  Gathright-Dietrich, 435 F. Supp. at 1227.  Accordingly, to carry their burden, Plaintiffs "must present evidence of: (1) a specific design to remove the barriers alleged; (2) the cost of removal or the proposed remedy; and (3) the effect on the finances and operation of the facility."  Id.  "[N]on-

12

specific, conceptual proposals that [do] not provide any detailed cost analysis" are insufficient.  Id. at 1274.

Plaintiffs have not presented any specific plans, cost estimates, or evidence regarding Heartwood's financial position or the effects that the modifications might have on Heartwood's operations.  Plaintiffs disagree, contending that Peter Hansmeier's declaration shows that building a ramp and making other specific modifications are readily achievable.  However, as discussed above, Peter Hansmeier's declaration and its exhibits have been stricken from the record.  Even if it had remained in evidence, the Declaration lacks any of the detail described in Gathright-Dietrich.  Thus, Plaintiffs have failed to prove that the modifications they propose are readily achievable and Heartwood is entitled to summary judgment.

### 4.  MHRA Bias Claim

Under Minnesota Statutes Section 611A.79, "[a] person who is damaged by a bias offense has a civil cause of action against the person who committed the offense."  Minn. Stat. § 611A.79, subd. 2.  A "bias offense" is "conduct that would constitute a crime and was committed because of the victim's or another's actual or perceived . . . disability as defined in section 363A.03 . . . ." Minn. Stat. § 611A.79, subd. 1.  Plaintiffs claim that Heartwood committed an unfair discriminatory act, a misdemeanor.

The MHRA provides:

It is an unfair discriminatory practice:

(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . disability . . . ; or

13

(2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

Minn. Stat. § 363A.11, subd. 1(a).

Simply put, Heartwood has not committed a crime. Plaintiffs contend that Heartwood discriminated against them by failing to remove architectural barriers where such removal is readily achievable. As discussed above, removal of architectural barriers at 889 Grand is not readily achievable, therefore Plaintiffs' MHRA claim fails.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Heartwood's Motion to Strike (Docket No. 35) is **GRANTED;**

2. Plaintiffs will pay Heartwood's costs and attorney's fees associated with bringing the Motion to Strike; and

3. Heartwood's Motion for Summary Judgment (Docket No. 13) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>February 24, 2016</u>

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge

14