UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members, and ERIC WONG,<br><br>Plaintiffs,<br><br>v.<br><br>HEARTWOOD ENTERPRISES, LLC,<br><br>Defendant. | No.: 15-cv-529 PAM/FLN<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS** |

Defendant Heartwood Enterprises, LLC ("Heartwood") respectfully submits this Memorandum of Law in Support of its Motion for Attorneys' Fees and Nontaxable Costs.

## **INTRODUCTION**

This lawsuit is one of more than 120 lawsuits filed by attorney Paul Hansmeier on behalf of Eric Wong ("Wong") and/or the Disability Support Alliance (collectively "Plaintiffs") or its members. In each of these lawsuits, the allegations are substantially the same: Plaintiffs contend they attempted to visit a business, the business was inaccessible for some reason, Plaintiffs would like to return "someday" but for the inaccessibility, the inaccessibility can be easily remedied, and therefore the ADA and Minnesota Human Rights Act have been violated. However, in this case the architectural barrier was not easily removable, as Plaintiffs claimed, and Plaintiffs were informed of this fact as early as the 26(f) conference, which was more than eight months before

1

Heartwood was forced to bring its meritorious, and ultimately successful, summary judgment motion.

Plaintiffs ignored the legal requirements for their own claims and Heartwood's defenses, conducted no discovery, and then, at the last moment, when their back was against the wall, attempted to improperly introduce surprise evidence through a surprise witness that was never disclosed during discovery. Plaintiffs abused the legal system and the result in this case was that Heartwood was forced to litigate a case that never should have been pursued. Heartwood requests that this court award Heartwood $79,081.73, which represents its attorneys' fees and costs which it needlessly incurred in this matter. Heartwood further requests an award of the costs that it has incurred in bringing this Motion.

## FACTUAL BACKGROUND

### I. PLAINTIFFS COMMENCE THIS LAWSUIT WITHOUT ANY EVIDENTIARY SUPPORT THAT REMOVAL OF THE ARCHITECTURAL BARRIERS WAS "READILY ACHIEVABLE."

Heartwood owns and operates an office building located at 889 Grand Avenue, St. Paul, MN ("Heartwood Offices"). (ECF No. 18 at p. 3) Heartwood Offices was built as a residence in 1910 and converted to an office building sometime before 1990, though much of the original floor plan remains. (*Id.*) Heartwood Offices consists of three floors of office space that may be accessed by an internal staircase. (*See id.* at p. 4) Heartwood Offices is located in an area zoned as B-2C, which is a unique zoning classification created just for Grand Avenue, in an effort to preserve the street's historic charm. (*Id.*) Unbeknownst to Heartwood, on or about December 3, 2014 Plaintiff Wong ("Wong")

traveled to the Heartwood Offices in order to "evaluate the services of mental health professionals who are tenants of the Heartwood Offices building for the purpose of a DSA member services initiative." (*Id.* at pp. 5-6)  On December 5, 2014, Wong sent a letter to Heartwood asserting that Heartwood Offices were inaccessible in violation of the Americans with Disabilities Act ("ADA"). (*Id.* at pp. 6-7)

Without any further communication from Wong, Plaintiffs commenced this action on January 23, 2015, asserting claims under 42 U.S.C. §§ 12101 *et seq.*, Minn. Stat. Chapter 363A, and Minn. Stat. § 363A.11. (*Id.* at p 7; January 23, 2015 Compl.)  The basis of Plaintiffs' Complaint was that "[u]pon arrival, Plaintiff Wong could not find an accessible entrance. . . . The front entrance was located at the top of a set of four steps [and] [a]ccessing the rear entrance also required climbing a set of four steps." (*Id.* at ¶ 13)  Plaintiffs claim that "[c]ompliance with the ADA standards, the ADAAG, and the MHRA is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers." (*Id.* at ¶ 31)  Plaintiffs asserted that "Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Wong and other members of Disability Support Alliance, even though removing the barriers is readily achievable.  Removal of the architectural barriers would neither fundamentally alter the nature of the business nor result in an undue burden to defendant." (*Id.* at ¶ 39)

## II.   HEARTWOOD NOTIFIES PLAINTIFFS THAT REMOVAL OF THE ARCHITECTURAL BARRIERS IS NOT "READILY ACHIEVABLE."

After receiving Wong's letter in December, Heartwood promptly began analyzing options for remedying the purported architectural barriers. (ECF No. 18 at p. 7)

3

Heartwood contacted several contractors to provide estimates for installing a wheelchair-accessible ramp at the Heartwood Offices. (*Id.*) Heartwood received bids from three businesses. (*Id.*) These bids range from $11,987 to $22,621, with an average estimated cost of approximately $16,000. (*Id.*) All of these bids would require additional costs, including, but not limited to, proper footings for the proposed ramps and providing an accessible route to the ramps, and none of the bids addressed potential variances or approvals required by the City. (*Id.*) These bids were provided to Plaintiffs' counsel on September 1, 2015 as exhibits to the expert report prepared by Julee Quarve-Peterson. (Declaration of Joseph M. Windler ("Windler Decl."), Exhibit E at Exhibit E)

The parties' attorneys conducted a meet and confer conference on March 25, 2015 as required by Fed. R. Civ. P. 26(f) and a Rule 16 conference with the Court on May 27, 2015. (ECF Doc. 10 at p. 1) During these meetings, and before any significant activity in the case, Heartwood's attorney clearly identified for Plaintiffs' counsel that removal of the purported architectural barriers was not readily achievable because of the excessive cost of removal and Heartwood's limited resources. (Windler Decl., at ¶ 19) Heartwood's defense in this regard was incorporated into the Joint Rule 26(f) Report. (ECF Doc. 10 at p. 2)

### III. HEARTWOOD WAS NEEDLESSLY FORCED TO CONDUCT DISCOVERY, BRING A MOTION FOR SUMMARY JUDGMENT, AND A MOTION TO STRIKE.

As Plaintiffs refused to withdraw their claims, Heartwood was forced to move forward with discovery. Heartwood served Plaintiffs with Interrogatories and Document Requests on June 10 and September 23, 2015. (Windler Decl., at ¶ 21) Despite Plaintiffs

4

being on notice of Heartwood's defenses, ***Plaintiffs conducted no discovery***, save for a single site inspection. (*Id.*, at ¶ 22) On September 1, 2015, Heartwood served Plaintiffs with the expert report of Julee Quarve-Peterson (the "Expert Report"). (*Id.*, at ¶ 23) The Expert Report incorporates the three prior bids that Heartwood received for installing a wheelchair accessible ramp, as well as explained the additional costs attributable to the removal of additional architectural barriers. (*Id.*, at Exhibit E) Heartwood's expert opined as follows:

> In my opinion, Heartwood has not violated the Americans with Disabilities Act ("ADA") or Minnesota Human Rights Act ("MHRA"). While architectural barriers exist at Heartwood's 889 Grand Ave. location, removal of such barriers is not "readily achievable" and installing an exterior walkway (ramp) as Plaintiffs propose would not make the goods or services offered at 889 Grand Ave. accessible. As removal of an architectural barrier must be "readily achievable" for an ADA violation to exist, Heartwood has not violated the ADA. Heartwood has provided a nearby alternative location for its 889 Grand Ave. tenants so that they can provide their services to those that need wheelchair or other mobility device access.[1] As a result of the foregoing, Heartwood has not violated the ADA.

(*Id.*, at p. 2) Plaintiffs did not issue a rebuttal expert report or conduct any expert discovery (Windler Decl. at ¶ 22).

On November 6, 2015, Heartwood continued its discovery efforts when it took the deposition of Wong. (*See* ECF Doc. 19, Exhibit B)

On November 13, 2015, Heartwood filed its Notice of Hearing and Motion for Summary Judgment followed by its Memorandum of Law in Support of Summary Judgment on December 8, 2015. (ECF Docs. 13 and 14) Belatedly recognizing that they had made no effort whatsoever to meet its evidentiary burdens, Plaintiffs opposed summary judgment through presentation of surprise evidence in the form of a declaration

5

from a surprise witness−their attorney's brother, Peter Hansmeier ("Hansmeier Declaration").  (ECF Doc. 37 at pp. 1-2)  The Hansmeier Declaration contains pictures and screenshots from the websites of various out-of-state contractors, big box retailers, and Angie's List.  (*See* ECF Doc. 29)  None of the barrier removal estimates contained in the Hansmeier Declaration were produced in response to Heartwood's discovery requests, and Peter Hansmeier was never disclosed as a potential witness.  (ECF Doc. 37 at pp. 3-4)  Plaintiffs' improper submission of the Hansmeier Declaration forced Heartwood to bring a Motion to Strike the Declaration of Peter Hansmeier ("Motion to Strike").  (ECF Docs. 35-38)

## IV. HEARTWOOD'S SUMMARY JUDGMENT MOTION AND MOTION TO STRIKE ARE GRANTED IN THEIR ENTIRETY.

On February 24, 2016, Plaintiff's Motion to Strike was granted and Plaintiffs were ordered to pay Heartwood's costs and attorneys' fees associated with bringing its Motion to Strike.[1]  (ECF Doc. 47 at pp. 6, 14)  Furthermore, this Court granted Heartwood's Motion for Summary Judgment in its entirety.  (*Id.* at p. 14)

In doing so, the Court stated that "to carry their burden, Plaintiffs 'must present evidence of: (1) a specific design to remove the barriers alleged; (2) the cost of removal or the proposed remedy; and (3) the effect on the finances and operation of the facility.'" (*Id.* at pp. 13-14) (internal citations removed)  In particular, the Court found that

---

[1] The parties reached an agreement regarding the amount that Plaintiffs owed to Heartwood for the costs and attorney's fees that it incurred in bringing its Motion to Strike.  This amount totaled $10,774.35.  Heartwood respectfully requests that the Court issue an order confirming the parties' agreement and ordering Plaintiffs to pay Heartwood $10,774.35 within fourteen days of the Court's Order.

6

"Plaintiffs have not presented any specific plans, cost estimates, or evidence regarding Heartwood's financial position or the effects that the modifications might have on Heartwood's operations . . . Plaintiffs have failed to provide that the modifications they propose are readily achievable and Heartwood is entitled to summary judgment." (*Id.* at p. 14)

Despite being notified at least as early as May 2015, at the 26(f) conference and in the 26(f) Report, that removal of the architectural barriers was not "readily achievable" Plaintiffs did not conduct any discovery as to plans, cost estimates, and, importantly, never conducted a single inquiry into Heartwood's financial position. If Plaintiffs would have conducted such an inquiry they would have discovered that, in the last six years Heartwood has not made any profit and that barrier removal was not readily achievable. (ECF Doc. 37 at pp. 3-4; ECF Doc. 20 at ¶ 22) In particular, in 2014, Heartwood lost over $115,000. (*Id.*)

Plaintiffs knew that removal of the architectural barriers was not "readily achievable" yet it opted to ignore such information and improperly proceeded forward with this case. Therefore, an award of attorneys' fees and costs is appropriate.

## V.   ATTORNEYS' FEES AND COSTS.

From commencement of this litigation on January 23, 2015 through yesterday's date, Heartwood has incurred attorneys' fees in the amount of $76,919.75, $5,448.00 of

7

which relates to the preparation of this Motion.[2] In addition, Heartwood has incurred in costs in the amount of $2,161.98 during the same time period.[3]

## ARGUMENT

### I. HEARTWOOD IS ENTITLED TO RECOUP ITS ATTORNEYS' FEES AND COSTS FROM PLAINTIFFS.

#### A. Legal Standard.

42 U.S.C. § 12205 and Minn. Stat. § 363A.33, subd. 7 permit a discretionary award of attorneys' fees to a prevailing party in an action brought pursuant to the Americans with Disabilities Act ("ADA") and Minnesota Human Rights Act ("MHRA"), respectfully. 42 U.S.C. § 12205; Minn. Stat. § 363A.33, subd. 7. In 1978, the Supreme Court interpreted Title VII of the Civil Rights Act of 1964's fee-shifting statute, holding that a prevailing defendant should be awarded attorneys' fees when the court determines that the plaintiffs' claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). However, the action does not need to have been brought in "subjective bad faith" to justify such an award. *Little v. Ford Motor Co.*, 97-1292-CV-W-4, 1999 WL 485025, at *1 (W.D. Mo. May 20, 1999). The standard for a prevailing defendant set out in *Christianburg* has been subsequently applied to requests for costs and fees in other civil rights cases, including

---

[2] Such calculations excluded all attorneys' fees and costs Heartwood incurred in bringing its Motion to Strike, as well as certain attorneys' fees that Heartwood is not seeking to collect from Plaintiffs.

[3] The Declaration of Joseph M. Windler and the exhibits attached thereto set forth the detailed information and support for the attorneys' fees and costs incurred by Heartwood in litigation of this case.

8

ADA cases. *E.E.O.C. v. Hibbing Taconite Co.*, 740 F. Supp. 2d 1052, 1054 (D. Minn. 2010). Because the ADA incorporates by reference Title VII's attorney fee provision, courts routinely look to Title VII cases when resolving fee motions under the ADA. *Id.*; *see also Hall v. Hormel Foods Corp.,* 8:98CV304, 2000 WL 1062103, at *10 (D. Neb. July 10, 2000). Furthermore, the *Christiansburg* standard also applies to an award of attorneys' fees under the MHRA. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 722 (Minn. 1986); *Quasius v. Schwan Food Co.*, CIV. 08-575 JNE/JJG, 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010).

Courts have stated that the "frivolousness" standard strikes the appropriate dual policy considerations of discouraging unreasonable, groundless, or vexatious claims while encouraging the enforcement of federal civil rights. *Id.* (quoting *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers,* 26 F.3d 842, 853 (8th Cir. 1994)). Courts have stated that "even when the action is reasonable at the time it was instituted, fees may still be addressed against the plaintiff where he continued to litigate after it clearly became unreasonable and without foundation." *Little*, 1999 WL 485025 at *1 (citing *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers,* 26 F.3d 842, 853 (8th Cir. 1994)). In order for a prevailing defendant to be awarded attorneys' fees it must be able to show that the plaintiff's case is meritless. *See Bergeron v. NW. Publications, Inc.*, CIV. 3-94-1124, 1996 WL 210789, at *8 (D. Minn. Jan. 12, 1996).

Courts in the Eighth Circuit, including the District of Minnesota, have found that when a plaintiff has provided no evidence to support its claims, or similarly refute

9

defendant's defenses, plaintiff's claims are frivolous and a defendant is entitled to an award of attorneys' fees under 42 U.S.C. § 12205. *Bergeron*, 1996 WL 210789 at *9; *Little*, 1999 WL 485025 at *3.

In *Bergeron*, plaintiff Bergeron claimed that he was disabled by his diabetes, and that his employer, Northwest Publications, Inc. ("Northwest"), had failed to accommodate his disability in violation of the ADA. *Bergeron*, 1996 WL 210789 at *1. In particular, Bergeron's work schedule was changed from 10:00 a.m. - 5:00 p.m. to 11:00 a.m. - 6:00 p.m. *Id.* Bergeron claimed that this shift change was a violation of the ADA because he is diabetic and "needs to maintain a consistent schedule and have rhythmic insulin shots at set intervals." *Id.* However, Bergeron provided no evidence to support the claim that the one hour change in his schedule impacted his ability to have insulin shots at regular intervals. *Id.* at *1-*4. Furthermore, Northwest gave Bergeron multiple opportunities to dismiss his claims based on his lack of evidentiary support. *Id.* Finally, Northwest was forced to bring a summary judgment motion. *Id.* at *4.

As the Court stated, "[i]n opposing the Motion for Summary Judgment, Plaintiff did not provide the Affidavit of any medical provider to substantiate his claim that assignment to the 10 to 5 shift was medically required, nor any Affidavit to support his claim that the change of assignment to the 11 to 6 shift was medically impermissible, or caused medical harm." *Id.* The court found that Bergeron never had any "medical evidence to support his assertion that Bergeron's disability required him to maintain the 10 to 5 shift, nor that he would suffer medically if he did not maintain the shift." *Id.* at *10. Bergeron did not have such evidence when he filed the complaint, when

Northwest's attorney requested that he dismiss the Complaint, or at the time of summary judgment. *Id.* at *10-*11. The court determined that "Bergeron's claims are frivolous, unreasonable, and without foundation" and that "Defendant is entitled to Judgment against Joseph T. Bergeron and his attorney Michael A. Pinotti for costs, expenses and attorneys' fees . . ." *Id.* at *10, *12.

Similarly, in *Little v. Ford Motor Co.*, plaintiff Jessie Little brought claims under the ADA and the Missouri Human Rights Act , based on "Little's allegation that he has asthma and an allergy to cigarette smoke and that Ford purportedly failed to place him in a smoke-free environment as an accommodation." *Little*, 1999 WL 485025 at *1. Little's claims "were based on his contention that he was substantially limited in the major life activity of breathing. Both Little and his purported expert allergist admitted, however, that his breathing was substantially impaired only while he was at work at Ford." *Id.* The court found that even if his breathing was impacted as he contends, such a condition did not constitute a disability under the ADA. *Id.* In addition, the most that Little's purported expert could offer in support of Little's claim was that Little had a physical impairment in the environment set forth by Ford. *Id.* at *3. The Court found that because Little "could go about life without any significant limitations due to his asthma or alleged sensitivity to smoke, he could not show that his condition substantially limits a major life activity and could not present a claim under the ADA." *Id.* at *4. Furthermore, the court held that "the evidence at trial clearly reflected Little's claim of disability discrimination lacked a foundation in either the governing law or the applicable

facts. Accordingly, Ford as a prevailing party, is entitled to its reasonable fees and costs incurred in defending this meritless claim." *Id.* at *1.

Similar to Bergeron and Little, Plaintiffs never had any evidence to support their contention that removal of the architectural barriers at Heartwood Offices was readily achievable. Therefore, Heartwood is entitled to its costs and attorneys' fees.

### B.    Plaintiffs' Claims Were Frivolous and Heartwood Is Entitled to Its Attorneys' Fees.

Plaintiffs' claims are frivolous because they never had any evidentiary support for their claim that removal of the architectural barriers was "readily achievable." As a result, Heartwood is entitled to its attorneys' fees and costs under 42 U.S.C. § 12205 and Minn. Stat. § 363A.33, subd. 7.

Plaintiffs asserted in their Complaint that removal of the architectural barriers was readily achievable, but never provided any support for such a contention. (January 23, 2015 Compl. at ¶¶ 31, 39) To prove that architectural barriers are readily achievable Plaintiffs needed to provide evidence of: (1) a specific design to remove the barriers alleged; (2) the cost of removal of the proposed remedy; and (3) the effect on the finances and operation of the facility." *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1226 (N. D. Ga. 2005). However, Plaintiffs did not conduct any discovery or obtain an expert to support **any** of these factors. Most importantly, Plaintiffs never requested any financial information from Heartwood. It was frivolous for Plaintiffs to move forward with their claims without such evidentiary support on a necessary element of their claims.

Furthermore, Heartwood told Plaintiffs at the 26(f) conference that removal of the barriers was not "readily achievable" and Plaintiffs were provided with detailed information in this respect in Heartwood's expert report. At the very latest, Plaintiffs should have dismissed their claims after they received Heartwood's expert report in September 2015. However, Plaintiffs heedlessly moved forward without any evidentiary support for its claims. Finally, Heartwood was forced to bring a summary judgment motion and a subsequent motion to strike. This Court stated in its Order granting summary judgment that "Plaintiffs have not presented **any** specific plans, cost estimates, or evidence regarding Heartwood's financial position or the effects that the modifications might have on Heartwood's operations . . . Plaintiffs have failed to provide that the modifications they propose are readily achievable and Heartwood is entitled to summary judgment. (ECF Doc. 47 at p. 14) (emphasis added) Therefore, this Court clearly stated that Plaintiffs did not have any evidence to support its claim that removal of the barriers was readily achievable. *Id.*

Both *Bergeron* and *Little* make it abundantly clear that it is frivolous conduct for an ADA plaintiff to assert claims, and continue forward with such claims, without any evidentiary support. *Bergeron*, 1996 WL 210789 at \*10, \*12; *Little*, 1999 WL 485025 at \*1. Similar to Bergeron and Little, Plaintiffs **never** had evidence to support their claims and did not take any action to acquire such evidentiary support. As a result, Heartwood was forced to litigate this frivolous action and in doing so accumulated $79,081.73, in attorneys' fees and costs. This Court should award such attorneys' fees and costs to

13

Heartwood because it was a successful defendant and Plaintiffs' claims were frivolous and without foundation.

## II. HEARTWOOD IS ENTITLED TO RECOUP ITS ATTORNEYS' FEES AND COSTS FROM ATTORNEY PAUL HANSMEIER.

### A. Legal Standard.

In addition to seeking an award of attorneys' fees and costs from Plaintiffs, Heartwood alternatively seeks an award of such fees and costs from Plaintiffs' attorney, Paul Hansmeier ("Hansmeier"), under 28 U.S.C. § 1927.  28 U.S.C. § 1927 states that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 "Sanctions are proper under § 1927 when the attorney's conduct, viewed objectively manifests either intentional or reckless disregard of her duties to the Court." *Quasius v. Schwan Food Co.*, 2010 WL 3218591 at *2  (Defendant sought attorneys' fees pursuant to 42 U.S.C. § 12205 and sought to hold counsel personally liable under 28 U.S.C. § 1927); *see also Anderson v. Indep. Sch. Dist. No. 97,* CIV. 98-2217 JRT/RLE, 2003 WL 328043, at *3 (D. Minn. Feb. 10, 2003) (An award of attorneys' fees under 28 U.S.C. § 1927 requires "at least a finding of objective bad faith").

In *Bergeron*, in addition to seeking an award under 42 U.S.C. § 12205, the defendant also sought an award of its attorneys' fees and costs under 28 U.S.C. § 1927. *Bergeron*, 1996 WL 210789 at * 9.  The court stated that attorneys' fees and costs are

appropriate from the attorney "[w]here a refusal to dismiss compounds the misconduct in bringing a claim . . .." As detailed above, the court found that Bergeron, and his attorney, refused to dismiss their Complaint despite not having any evidence to support the claims contained therein. *Id.* at 9-11.[4] Therefore, the court determined that an award of attorneys' fees was also appropriate against Bergeron's attorney. *Id.* at *12.

Similarly, in *Deretich v. City of St. Francis*, the plaintiff brought a civil rights action under 42 U.S.C. § 1983. *Deretich*, 650 F. Supp. 645, 647 (D. Minn. 1986). The court found that "[d]espite ample opportunity to conduct the in depth discovery required for litigation of this magnitude, however, plaintiff never deposed any defendant and never produced any facts supporting his claims." *Id.* at 648. The court determined that plaintiff's counsel should have been alerted to the weaknesses in the case when discovery failed to provide any supporting facts. *Id.* at 648-49. The court held that "Plaintiff's counsel assisted plaintiff in pursuing this litigation after it had clearly become frivolous. In doing so, she multiplied the proceedings unreasonably and vexatiously and abused the judicial process." *Id.* at 649. The court ordered plaintiff's attorney to pay one-third of approximately $148,000 in fees and $15,000 in costs. *Id.*

Hansmeier's conduct unnecessarily multiplied the proceedings and vexatiously abused the judicial process. Therefore, this Court should grant Heartwood an award of attorneys' fees and costs against Hansmeier personally.

---

[4] Similar to Hansmeier, Bergeron's attorney also had a history of bringing baseless claims and had judgments entered against him in the past. *Id.* at *10-*11.

### B. Attorney Hansmeier's Conduct Unnecessarily and Vexatiously Multiplied the Proceedings.

Heartwood is entitled to a grant of attorneys' fees against Hansmeier because Hansmeier's conduct unnecessarily multiplied the proceedings in this case. In particular, Hansmeier failed to conduct any discovery to support Plaintiffs' claims. He ignored the statements by Heartwood's counsel that removal of the architectural barriers was not "readily achievable." Furthermore, he completely ignored Heartwood's expert report which provided clear evidence that removal of the barriers was not "readily achievable." Similar to *Bergeron*, Hansmeier proceeded forward with Plaintiffs' claims despite having absolutely no evidence to support its claims. Then in a desperate, and improper, attempt to provide evidentiary support for Plaintiffs' claims, Hansmeier improperly introduced new evidence and a new witness that had not been properly disclosed during the course of discovery. By failing to dismiss Plaintiffs' claims, Hansmeier unnecessarily multiplied the proceedings, which resulted in Heartwood incurring substantial attorneys' fees and costs. Heartwood requests against Attorney Hansmeier an award for its attorneys' fees and costs in the amount of $79,081.73

### III. HEARTWOOD'S ATTORNEYS' FEES AND COSTS ARE REASONABLE AND APPROPRIATE.

Minnesota courts have long held that attorneys' fees are recoverable if specifically authorized by contract or statute. *Horodenski v. Lyndale Green Townhome Ass'n, Inc.* 804 N.W.2d 366, 371 (Minn. Ct. App. 2011); *Van Vickie v. C.W. Scherer & Sons, Inc.*, 556 N.W.2d 238 (Minn. Ct. App. 1986). There is no dispute that 42 U.S.C. § 12205 and

Minn. Stat. § 363A.33, 28 U.S.C. § 1927 permit an award of attorneys' fees to Heartwood. There is also no dispute that Heartwood is the prevailing party.

In determining the reasonableness of the fees, the Court may examine several factors including:

> (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

*Westendorp v. Independent School District No. 273*, 131 F. Supp.2d 1121, 1125 (D. Minn. 2000); *see Cieslukowski v. Norton Motors Int'l, Inc.*, No. 99-1056, 2001 WL 31045846 at *11 (D. Minn. Sept. 10, 2002) (stating that among factors to be considered in determining the reasonableness of attorneys' fees are "time and effort required, value of the interest involved, and results secured at trial.") (citation omitted); *State by Head v. Paulson*, 188 N.W.2d 424, 426 (Minn. 1971).

In this case Heartwood did exactly what was required in order to defend the lawsuit filed against it. Heartwood filed two rounds of discovery, took the deposition of Wong, and obtained an expert opinion to determine whether removal of the architectural barriers was "readily achievable." Further, Heartwood filed a Motion for Summary Judgment and a Motion to Strike, which were both granted by the Court. Heartwood did not engage in any needless discovery or run up the costs of litigation. Rather, it took all necessary and appropriate steps to resolve the case.

This case also presented novel issues related to the ADA and MHRA, including analysis related to when barrier removal of architectural barriers is required. Indeed, this is believed to be the first case in which serial plaintiff Disability Support Alliance has lost on the merits.

Further, the hourly rates charged by Winthrop & Weinstine's attorneys on this matter range from $235.00 to $360.00 per hour and the paralegal on this matter was billed at a rate of $210 per hour. (Windler Decl. ¶ 9) These rates are comparable to other large firms in the Twin Cities. (*Id.* at ¶¶ 9-10) The lead attorney on this matter, Joseph Windler ("Attorney Windler"), billed at the rate of $350 in 2015 and $360 in 2016. (*Id.* at ¶ 9) Similar to Attorney Windler, Attorney Hansmeier also charges $350.00 per hour in civil rights related cases. (*Id.* at ¶ 12, Exhibit C, Exhibit D) Both Attorney Hansmeier and Attorney Windler attended the University of Minnesota Law School and both graduated in 2007. (*Id.* at ¶ 12) Attorney Windler also graduated *magna cum laude* and was named a "Rising Star" by Super Lawyers. (*Id.* at ¶ 2)

Finally, Winthrop & Weinstine is one of the larger firms in the Twin Cities. (*See id.* at ¶ 3) It is well-respected by the bar and the judiciary and was "highly recommended" firm by Benchmark Litigation in 2015. (*Id.* at ¶ 3) The attorneys that worked on the file on behalf of Heartwood were precluded from working on other matters during the time that they worked on the Heartwood matter. (*Id.*)

In light of the foregoing, the fees and costs incurred in this matter were reasonable. Accordingly, because Heartwood's attorneys' fees and costs are reasonable, it is entitled to an award of $76,919.75 in attorneys' fees and $2,161.98 in costs.

18

## IV. HEARTWOOD FURTHER REQUESTS AN AWARD FOR THE REASONABLE ATTORNEYS' FEES AND COSTS INCURRED TO BRING THIS MOTION.

As part of its motion for an award of attorneys' fees and nontaxable costs pursuant to 42 U.S.C. §12205, 28 C.F.R. § 36.505, and Minn. Stat. § 363A.33, subd. 7, Heartwood requests reimbursement for the attorneys' fees and costs incurred to bring this motion. The District of Minnesota has held that attorneys are entitled to seek the attorneys' fees and costs incurred in litigating its claim to attorneys' fees. *See Does 1-100 v. Dakota County, Minn.,* CIV. 4-84-378, 1986 WL 7554, at *5 (D. Minn. Jan. 8, 1986). As of yesterday's date, Heartwood incurred $5,448.00 and $16.68 in costs in connection with this motion. (Windler Decl., Exhibit F).

## CONCLUSION

Based on the foregoing, Heartwood respectfully requests that the Court grant its Motion for Attorneys' Fees and Nontaxable Costs and award Heartwood $76,919.75 in attorneys' fees and $2,161.98 in costs, including its fees and costs incurred in bringing this Motion.

Dated: March 25, 2016                **WINTHROP & WEINSTINE, P.A.**

By: <u>s/ Joseph M. Windler</u>
    Joseph M. Windler, #387758

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
Telephone:  (612) 604-6400
Email:  jwindler@winthrop.com

*Attorneys for Heartwood Enterprises, LLC*

11651949v1