UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and ERIC WONG,<br><br>      *Plaintiffs*,<br><br>v.<br><br>HEARTWOOD ENTERPRISES, LLC,<br><br>      *Defendant*. | Case No. 0:15-cv-0529-PAM-FLN |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S REQUEST FOR COSTS AND FEES**

Plaintiffs oppose Defendant Heartwood Enterprises, LLC's ("Heartwood") claim for costs and fees. Plaintiffs request that the Court deny Heartwood's claim because the prerequisites for an award for prevailing defendants under the applicable ADA standard have not been met: Plaintiffs were not frivolous, unreasonable, or without foundation in their action against Heartwood. Sanctions pursuant to 28 U.S.C. § 1927 are similarly unwarranted.

## I. FACTUAL AND PROCEDURAL HISTORY

This action began in January 2015 when Plaintiffs served a complaint alleging that Heartwood was violating Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12190, by failing to remove architectural barriers at its building located at 889 Grand Avenue. Plaintiffs complaint also alleged claims under the Minnesota

Human Rights Act ("MHRA"), Minn. Stat. § 363A.11, and Section 611A.79 of the Minnesota Statutes.

In December 2000, Heartwood filed a motion for summary judgment. (Docket # 18). In its motion, Heartwood argued that Plaintiffs lacked standing, that the case was moot and that barrier removal was not readily achievable. In its motion, Heartwood also sought its litigation costs and fees. Plaintiffs opposed Heartwood's motion.

During the pendency of the briefing on Heartwood's motion for summary judgment, Heartwood filed a motion to strike the declaration of Peter Hansmeier. (Docket # 35).

On February 24, 2016, this Court entered an order granting Heartwood's motions for summary judgment and to strike. (Docket # 47). In finding for Heartwood, this Court found that Plaintiff Eric Wong had standing, but that Plaintiffs had failed to meet their burden of showing that barrier removal was readily achievable. A final judgment issued on February 24, 2016. (Docket # 48). The Court also awarded Heartwood the costs and fees it incurred in connection with the motion to strike. The Court did not award Heartwood costs and fees for the entire litigation.

After the Court issued its order, Plaintiffs reached out to Heartwood's counsel to address the discovery cost award, and the parties have reached a resolution of that issue. Heartwood's counsel originally attempted to extract $20,000 from Plaintiffs for the motion to strike briefing. Heartwood's counsel significantly reduced his demand after

2

Plaintiffs asked him for substantiation.

Now, Heartwood has filed a renewed request for costs and fees incurred over the course of the litigation. (Docket # 55). In its request, Heartwood seeks an award of over $80,000 in costs and fees. Heartwood's request arises under the fee-shifting provision of the ADA and MHRA. Heartwood's request is also made pursuant to 28 U.S.C. § 1927.

On March 25, 2016, Plaintiffs filed a notice of appeal of the final judgment to the United States Court of Appeals for the Eighth Circuit.

## II. ARGUMENT

### A. Section 12205 of the ADA Governs Heartwood's Request for Costs and Fees.

Defendant seeks attorney fees and costs pursuant to 42 U.S.C. § 12205 and Minn. Stat. § 363A.33, subd. 7, which permit a discretionary award of attorney fees to a prevailing party in an action brought pursuant to the ADA and MHRA, respectively. *See Quasis v. Schwan Food Co.,* No. 08-cv-575 (JNE/JJG) (D. Minn. Aug. 13, 2010), at *2-3. A prevailing defendant in an ADA case is entitled to attorney fees "only in very narrow circumstances." *Id.* (quoting *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers,* 26 F.3d 842, 848 (8th Cir. 1994)); *see also Witzsche v. Jaeger & Haines, Inc.,* 707 F. Supp. 407, 407 n.2 (W.D. Ark. 1989) (noting the noting that the Eighth Circuit only awarded attorneys' fees to a prevailing defendant *once* in all the civil rights cases that the Eighth Circuit reviewed through 1989; and in that one case, the court only awarded a small portion of the fees claimed).

"[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Christiansburg standard applies to an award of attorney fees under the MHRA. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 722-23 (Minn. 1986).

### 1. The Christiansburg Standard Applies to a Request for Costs and Fees by Prevailing Defendant in an ADA Suit

The language of the ADA's fee-shifting statute is substantially similar to the fee-shifting statute found in title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(k)), and courts have held that fees should be awarded in the same or similar circumstances under both provisions. *Bruce v. Gainesville*, 177 F.3d 949, 951 (11th Cir. 1999); *No Barriers, Inc., v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 (5th Cir. 2001); *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 110 (2d Cir. 2001); *Bercovitch v. Baldwin School, Inc.*, 191 F.3d 8, 11 (1st Cir. 1999).

In 1978, the Supreme Court interpreted title VII's fee-shifting statute, holding that a prevailing defendant should not be awarded attorneys' fees and costs unless plaintiff's actions were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). The standard for a prevailing defendant set out in *Christiansburg* [hereinafter "the *Christiansburg* standard"], has been subsequently applied to requests for

costs and fees in other civil rights cases, including ADA cases. *See, e.g., Riddle v. Egensperber*, 266 F.3d 542, 547-48 (6th Cir. 2001) (*Christiansburg* standard applies to defendant's recovery of fees in civil rights case).

### 2. **Plaintiffs May Not Be Held Liable For Costs and Fees Pursuant to the ADA Because They Did Not Act Frivolously In Litigating This Suit**

To be deemed "frivolous" or "meritless" for purposes of assessing a prevailing defendant's attorney's fees, it is not enough that the plaintiff ultimately lost his case. *Chester v. St. Louis Housing Authority*, 873 F.2d 207, 209 (8th Cir. 1989). To determine whether a claim is frivolous, unreasonable or groundless, a court must determine the basis for the filing of the suit. *Id*. An action is only frivolous under § 12205 if an action lacks an <u>arguable</u> basis in law or in fact, or plaintiff continues to litigate after it becomes clear that action lacks factual substance. *Shutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1556 (D. Nev. 1997). "The strict nature of the *Christiansburg* standard is premised on the need to avoid undercutting Congress' policy of promoting vigorous prosecution of civil rights violations…." *Chester*, 873 F.2d at 209 (quoting *Miller v. Los Angeles County Board of Education*, 827 F.2d 617, 619 (9th Cir. 1987)).

Heartwood falls well short of the demanding *Christiansburg* standard.

First, Plaintiffs have filed a significant number of cases alleging violations of Title III of the Americans With Disabilities Act and related state law claims. This case represents the first time that Plaintiffs have lost in the manner they did here. In directly-

comparable cases, Plaintiffs have successfully defended against motions to dismiss, *See, e.g., Wong v. Muddy Pig, Inc.*, No. 14-cv-3334 (D. Minn. Jan. 16, 2015), have successfully brought motions for summary judgment and have prevailed at trial. *See, e.g.,* Findings of Fact, Conclusions of Law, and Order for Judgment, *Wong v. Chatterbox Enterprises, Inc.*, No. 27-cv-14-2417 (Henn. Cty. Dist. Ct. July 28, 2015) (entering judgment in plaintiff's favor following a bench trial). Although Plaintiffs were not successful in this case, Plaintiffs well-established history of bringing directly-comparable meritorious claims cuts against a finding of frivolousness in this case. *See Chester*, 873 F.2d at 209 (weighing plaintiff's past litigation success as a factor militating against a finding of frivolousness).

Second, Heartwood's inaction cuts against a finding of frivolousness. Had Heartwood sincerely believed that Plaintiffs' case was frivolous, then Heartwood should have demanded that Plaintiffs' counsel voluntarily withdraw the case, and failing that Heartwood could have brought a motion pursuant to Federal Rule of Civil Procedure 11. Heartwood took neither of these steps. Instead, Heartwood proceeded on the merits just as in any ordinary case. Plaintiffs are not aware of a case where prevailing defendant fees were awarded where neither the court nor the opposing party provided clear caution about proceeding further.

Heartwood's newfound frivolousness narrative arises only after Heartwood prevailed on the merits. Heartwood's reasoning is precisely the "post hoc reasoning by

6

concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation," that was rejected by the Supreme Court in *Christiansburg*. *Id.* at 421-22 ("This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success … the course of litigation is rarely predictable.").

     Third, with deference to the Court, there are legitimate issues for appeal. By way of one example, there is an open question in the Eighth Circuit regarding a plaintiff's initial burden on a "readily achievable" barrier removal showing. The Court applied the Tenth Circuit's approach from *Colorado Cross Disability Coalition v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 1999). Plaintiffs advocated for the Second Circuit's approach from *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363 (2nd Cir. 2008). Both the dissent in *Colorado* and the 2nd Circuit in *Roberts* criticized the Tenth Circuit's approach as asking too much of the typical plaintiff. As Judge Lucero reasoned, "If plaintiffs must all but present the court with a pre-approved construction contact for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim…." *Colorado*, 264 F.3d at 1011. Had the Court applied the *Roberts* standard, the outcome of this case may very well have been different. The presence of a legitimate issue on appeal cuts against a finding of frivolousness.

7

Finally, the fact that this Court granted Heartwood's summary judgment motion does not support a holding that Plaintiffs' claims were frivolous. If a plaintiff continues to litigate a case after discovery has concluded, and proceeds to summary judgment, a favorable ruling for defendant on the motion for summary judgment does not support the conclusion that a plaintiff's claims were frivolous. *Chester*, 873 F.2d at 207. In fact, even if claims lack sufficient evidence to go forward, or are determined to be precluded by legal precedent in this circuit or under state law, those claims are not necessarily completely without foundation. *Muzquiz v. WA Foote Memorial Hosp., Inc.*, 70 F.3d 422, 433 (6th Cir. 1995) (Plaintiff's claims were not frivolous even though they lacked sufficient evidence to go forward and were determined to be precluded by legal precedent).

Here, Plaintiffs acted in good faith by bringing their complaint. Plaintiff Eric Wong encountered a series of architectural barriers affecting his disability when he visited the Heartwood building. (Docket # 27). These barriers ranged from very simple issues, *e.g.*, non-compliant door hardware, to more complex issues, *e.g.*. the lack of a ramped entry. *Id.* It was reasonable for Plaintiffs to believe that Heartwood would be required to remediate these issues. Replacing door hardware, addressing other minor path of travel issues, and installing a ramp are all examples of modifications which the U.S. Department of Justice has identified as presumptively readily achievable. *Wong v. Muddy Pig, Inc.*, No. 14-cv-3334 (D. Minn. Jan. 16, 2015) ("Federal law suggests that installing

a ramp may be a readily achievable modification."). Further, even if installing a ramp was not readily achievable, then the law nevertheless required Heartwood to adopt alternative measures, such as deploying a removable "on demand" ramp or, in the worst case scenario, making its accommodations available at an alternative location. [1] In short, because Heartwood was apparently doing nothing to comply with the ADA, it was reasonable for Plaintiffs to expect that they would ultimately be required to do something.

After Plaintiffs brought suit, Heartwood voluntarily installed a sign at its premises advertising the existence of an alternative accessible location. (Docket # 27) (no sign during Wong's first visit). Heartwood also updated its website to advertise the availability of "disabled access." It would have been unusual for Heartwood to take voluntary remedial actions in response to a frivolous lawsuit.

During discovery, Heartwood produced an expert report prepared by Julee Quarve-Peterson. (Docket #56-5). The expert report concluded that it would cost $35,000 to install a ramp in the front lawn of the Heartwood building. (*Id.* at 4). As for a ramp starting at the rear of the Heartwood building, Heartwood received a bid from a contractor who would install such a ramp for $11,987. (*Id.* at 7).

---

[1] Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment ... of any place of public accommodation." 42 U.S.C. §12182(a). "Discrimination" is defined as "a failure to remove... barriers ... where such removal is readily achievable" or, "where an entity can demonstrate that the removal of a barrier ... is not readily achievable, a failure to make ... accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(iv)-(v).

This proposed ramp was acceptable to Plaintiffs. The cost of the ramp was well within the range of other improvements Heartwood had made to its various properties and was modest in relation to the value of Heartwood's real estate portfolio. (Dockets # 28-1 through 28-4). Ms. Quarve-Peterson's report identified four issues with the bid: three issues relating to regulatory approval and one issue relating to the need to install a concrete pad. (Docket # 56-5, at 6). None of these issues included a concern that the ramp was too expensive. Based on Ms. Quarve-Peterson's expert report, ramp installation appeared to meet all of the requirements of readily-achievable barrier removal. The other issues Plaintiffs encountered, *e.g.*, non-compliant door hardware, were associated with very modest remedial costs and it was certainly readily-achievable to remove these barriers.

Notably, the expert report made no finding that installing a ramp starting at the rear of the Heartwood building was not readily-achievable. Instead, the report concluded that bringing the entire Heartwood building into strict conformity with the ADAAG was not readily achievable, as it would cost upwards of $300,000. (*Id.* at 9). Yet, Plaintiffs never demanded and the law does not require strict ADAAG conformity in buildings that were built or last-modified prior to 1992. Instead, the law only requires "readily achievable" barrier removal. The fact that older public accommodations may be associated with ongoing architectural barriers is one of the tradeoffs the drafters of the ADA were forced to make.

It was only in Ms. Quarve-Peterson's declaration in support of Heartwood's motion for summary judgment that cost of ramp installation escalated dramatically. According to the declaration, the cost of a ramp in Heartwood's front yard was now $100,000 and the cost of a ramp starting from at the back of the Heartwood building was now $35,000. (Docket # 21, ¶ 6). Plaintiffs were surprised that Ms. Quarve-Peterson so dramatically altered her estimates. Yet, it can hardly be said to be frivolous for Plaintiffs to have relied on Defendant's own expert report.

In sum, the Plaintiffs' initiation and litigation of the case against Heartwood was reasonable and with substantial legal merit. Because of the danger that assessing costs and fees against unsuccessful plaintiffs will discourage plaintiffs from asserting their civil rights, it is rarely appropriate to do so. *Riddle*, 266 F.3d at 547-48 (award of fees to prevailing defendant is limited to truly egregious cases of misconduct by plaintiff). It is beyond cavil that this case does not involve the type of egregious misconduct that warrants an award of costs and fees. As such, Heartwood cannot demonstrate that the Plaintiffs' actions were frivolous, unreasonable, or without foundation. Therefore, Heartwood may not recover costs and fees incurred in litigating this case.

### 3.   Heartwood's Arguments On The Merits Are Premised On A Misstatements Of Fact And Law

Heartwood's principal argument in support of its request for costs and fees is premised on its contention that Plaintiffs literally took no discovery in this case.[2]

---

[2] Heartwood Memorandum, at 2 ("Plaintiffs … conducted no discovery"); 5 ("***Plaintiffs***

11

Heartwood's contention is false. In addition to receiving and reviewing the discovery that Heartwood was required to produce as a matter of course, Plaintiffs conducted a site inspection of Heartwood's premises. This site inspection was noticed and Heartwood's counsel attended it. Beyond this, Plaintiffs conducted substantial research which did not require formal discovery, including, for example, reviewing publicly-available records relating to the Heartwood building. It is truly egregious for Heartwood's counsel to repeatedly state that Plaintiffs did not conduct any discovery in this case, when Heartwood's counsel knows very well that this assertion is untrue. Because the factual underpinning of Heartwood's argument is false, Heartwood's argument must fail.

Heartwood relies heavily on two cases in its brief, both of which were decided before the turn of the century. Far from demonstrating that an award of costs and fees is appropriate in this case, these two cases demonstrate just how egregious the facts must be before an award of costs and fees is appropriate.

In *Little v. Ford Motor Co.*, 97-1292-CV-W-4, 1999 WL 485025 (W.D. Mo. May 20, 1999), Little filed a lawsuit alleging that he had asthma and an allergy to cigarette smoke and that Ford failed to place him in a smoke-free environment as an accommodation. On April 8, 1999, a jury found in Ford's favor both on Little's disability discrimination claim and his claim for retaliation. Ford moved for reasonable attorneys' fees on the grounds that Little's claim was frivolous and unreasonable. The district court awarded Ford $15,161.25

---

*conducted no discovery*, save for a single site inspection) (emphasis in original); 12 ("Plaintiffs did not conduct any discovery"); 16 ("Hansmeier failed to conduct any

for reasonable attorneys' fees and costs. The court found that Little "provided no evidence to show that this alleged impairment substantially limits his ability to work generally." A Ford surveillance video had shown "Little sitting at a table at the bar for approximately an hour with patrons and employees smoking cigarettes and cigars very near him. Rather than suffering any discomfort or allergic reaction, Little was shown to be enjoying himself a great deal. He also testified that he frequents the river boat casinos where smoking is permitted." The *Little* case involved blatant fraud. This case does not.

The other case discussed in Heartwood's brief is *Bergeron v. NW. Publications, Inc.*, 165 F.R.D. 518 (D. Minn. 1996). In the *Bergeron* case, the Court imposed sanctions and awarded fees because, *inter alia*, Plaintiff "filed rambling, confusing and contradictory motions." *Id.* at 522. Further, in his briefing Plaintiff's counsel made "an improper and incomprehensible reference to the 1995 bombing of the Alfred Murrah Federal Building in Oklahoma City, Oklahoma," which the court interpreted "as a veiled threat to the court," and which in any event was "disrespectful to the victims of that atrocity." *Id.* Indeed, the overall case was characterized by motions that did "not comply with the Federal Rules of Civil Procedure." *Id.* at 520. The conduct of the plaintiff's counsel in the *Bergeron*, case was so egregious that it ultimately resulted in his suspension from the practice of law. The facts in *Bergeron* are far more egregious than the facts in this case.

### B.     Sanctions Under 28 U.S.C. § 1927 Are Not Warranted.

Heartwood also seeks to hold the undersigned personally liable for the costs and

---

discovery…").

fees it incurred pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney … who so multiples so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are proper under § 1927 when the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of her duties to the Court. *Lee v. First Lenders Ins. Servs., Inc*., 236 F.3d 443, 445 (8th Cir. 2001). The standard for the imposition of sanctions under 28 U.S.C. § 1927 should be interpreted to be at least as rigorous as the standard set forth in 42 U.S.C. § 12205, "lest [the statute] be used to thwart Congress's intent." *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995) (requiring that the Rule 11 standard merges with the Title VII prevailing defendant standard lest litigants use the Rule 11 standard as an "end run" around the prevailing defendant standard established by Congress).

     For all of the same reasons that an award of costs and fees pursuant to § 12205 is unwarranted, an award of costs and fees pursuant to § 1927 is also unwarranted. The only unique case discussed by Heartwood in the § 1927 section of its brief is a case from three decades ago: *Deretich v. City of St. Francis*, 650 F. Supp. 645, 647 (D. Minn. 1986).[3] In *Deretich*, an attorney filed a civil rights action against twenty-one defendants, alleging a conspiracy among the defendants to deprive him of property rights. *Id.* The district judge cautioned plaintiff and his counsel "that they must establish that each individual

---

[3] Heartwood's inability to cite a more recent decision is a strong indicator of just how rarely these sorts of requests are granted.

defendant was a knowledgeable member of the conspiracy and participated in some of it." *Id.* at 649. The plaintiff repeatedly assured the court that additional discovery would uncover supportive facts, although none did. *Id.* at 648. At the bottom, *Deretich* was a case that gave the district court significant pause from the outset. The district court repeatedly cautioned the plaintiff and his counsel against proceeding in the absence of supportable facts. The plaintiff did so anyways, and his counsel was sanctioned for one-third of the litigation costs, *i.e.* those costs that arose after it was abundantly clear that the case was frivolous. Thr extreme circumstances present in *Deretich* are not present in this case.

A much more germane case is Judge Ericksen's decision in *Quasis v. Schwan Food Co.,* No. 08-cv-575 (JNE/JJG) (D. Minn. Aug. 13, 2010). In *Quasis*, the plaintiff alleged violations of the ADA and MHRA. On summary judgment, the court dismissed the MHRA claims as time-barred. In a later summary judgment motion, the court dismissed the ADA claims on the back of requests for admissions that were deemed admitted. The defendants then moved for costs and fees as prevailing defendants and under § 1927. The defendants repeatedly requested that plaintiffs' counsel voluntarily dismiss the claims throughout the litigation. Notwithstanding that the plaintiffs' MHRA claims were time-barred, and notwithstanding that plaintiff continued to litigate the ADA claims after they were effectively ended by admissions, the court denied all of the fee requests. The court reasoned that the challenged conduct bore "little resemblance" to the

extreme conduct present in cases where an award of costs and fees was appropriate.

The instant case has far more similarities to *Quasis*, than to any of the cases involving the extreme litigation misconduct cited in Heartwood's brief. Heartwood's requests for costs and fees pursuant to the ADA, MHRA and § 1927 must be denied.

### III.  CONCLUSION

Heartwood has not met its burden of showing it is entitled to costs and fees based on the fee-shifting standard applicable to the ADA, which requires that Heartwood prove that Plaintiffs' actions were frivolous, unreasonable, or without foundation.  Heartwood is not entitled to costs and fees because Plaintiffs were substantially justified in bringing and maintaining an action against Heartwood.  For the foregoing reasons, Heartwood's motion for costs and fees should be denied.

DATED:  April 4, 2016                    /s/ Paul R. Hansmeier
                                         Paul R. Hansmeier (MN Bar # 387795)
                                         CLASS JUSTICE PLLC
                                         100 South Fifth Street, Suite 1900
                                         Minneapolis, MN 55402
                                         E-mail: mail@classjustice.org
                                         Phone: (612) 326-9801
                                         *Counsel for Plaintiffs*